## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
### (Atlanta Division)

| | |
|---|---|
| **KEDDRICK BROWN,** individually and on behalf of a class of similarly situated persons as defined herein, ) ) ) | |
| ) | **CIVIL ACTION NO.** |
| **Plaintiff,** ) | |
| ) | **3:21-cv-00175-TCB** |
| **v.** ) | |
| ) | |
| **PROGRESSIVE MOUNTAIN INSURANCE COMPANY and MITCHELL   INTERNATIONAL, INC.** ) | |
| **Defendants.** | |

---

## FIRST AMENDED CLASS ACTION COMPLAINT

---

Plaintiff Keddrick Brown (hereafter, "Plaintiff"), individually and on behalf of a class of similarly situated persons as defined herein, files this First Amended Class Action Complaint against Defendants Progressive Mountain Insurance Company (hereafter "Progressive") and Mitchell International, Inc. ("Mitchell"), and based upon his information and belief, investigation and due diligence by his counsel, and his personal knowledge, hereby alleges as follows:

## I.     INTRODUCTION

1.      Progressive, in determining vehicle settlement values for total loss claims throughout Georgia, contracts with Mitchell to value automobile property damage loss claims.

2.      In this putative class action, Plaintiff asserts claims surrounding Progressive's systematic and uniform practice of taking unexplained and arbitrary "Project Sold Adjustment" deductions when determining vehicle settlement values for total loss claims throughout Georgia. These deductions are arbitrary, unsupported, and inconsistent with the realities of today's used vehicle market. As described herein, Progressive's settlement of total loss claims based on valuation reports containing the challenged "Projected Sold Adjustment" deductions results not only in a breach of Progressive's standard form policies with insureds, but also violates governing Georgia law that requires insurers to pay the *actual cost* for the insured to purchase a comparable automobile when total loss claims are settled. Progressive's uniform use of "Projected Sold Adjustment" deductions in paying total loss claims runs directly afoul of Georgia law governing total loss claims practices and procedures.   Further, Progressive and Mitchell use of "comparable" cars hundreds of miles away and in rural areas does not comport with what is required by Georgia law and the Plaintiff's policy with Progressive.

3.     Mitchell works with more than 300 insurance companies, including the majority of the top 25 insurance payers, and more than 30,000 collision repair facilities. Mitchell's products are currently in use across the Americas, Europe, and Asia. Mitchell is headquartered in San Diego, California and has over 2000 employees.  https://www.mitchell.com/company/about-mitchell

4.      Defendants' conduct as described herein is not random or isolated, but rather is part of a systematic and uniform protocol followed when total loss claims are settled and paid in the State of Georgia. Because of the uniform nature of the Defendants' conduct, Plaintiff seeks class action status on behalf of a class of similarly situated Progressive insureds as defined herein.

5.     Further, Mitchell's common policy and general business practice of including arbitrary and unexplained adjustments in its valuation reports for Progressive in order to improperly reduce insureds' total loss valuations and claims payments is in violation of Georgia law.

## II.     PARTIES, JURISDICTION, AND VENUE

6.     Plaintiff Keddrick Brown is an adult resident citizen residing in Griffin, Georgia. At all times material to this Complaint, Plaintiff was insured under a policy of insurance underwritten by Progressive that provided first-party comprehensive and collision coverage to Plaintiff's vehicle. At all times material to this Complaint,

Plaintiff's vehicle that was the subject of the Progressive policy was principally garaged in, and kept in, Griffin, Georgia.

7.     Defendant Progressive Mountain Insurance Company is an Ohio Corporation licensed to market, underwrite, and sell insurance and insurance-related services in the state of Georgia. Progressive maintains its registered agent and offices in Gwinnett County, Georgia.  Progressive's registered agent in Georgia is CT Corporation System located at 289 South Culver Street, Lawrenceville, Georgia 30046-4805.   Upon information and belief, Progressive Mountain Insurance Company conducts business in this state, at times, under the name "Progressive Group of Insurance Companies." Upon information and belief, "Progressive Group of Insurance Companies" includes various Progressive subsidiaries and affiliates providing auto coverage throughout the state of Georgia.

8.     Defendant Mitchell International, Inc. is a Delaware Corporation that has its corporate headquarters in San Diego, California and, at all relevant times hereto, was engaged in the business of providing automobile valuation services to companies operating in the State of Georgia.  Mitchell regularly conducts business in Georgia and its registered agent in Georgia is CT Corporation System located at 289 South Culver Street, Lawrenceville, Georgia, 30046-4805.

4

9.     Jurisdiction is proper in this Court in that the parties are minimally diverse and the requisite amount in controversy is satisfied pursuant to 28 U.S.C. §§ 1322(d). Further, venue is proper in this district in that Defendants conduct business in this district, maintains insurance agents and offices in this district, and maintains its registered agent in this district.

## III.   FACTUAL BACKGROUND

10.     Plaintiff owned a 2014 Dodge Charger insured through Progressive. The Progressive insurance policy covering Plaintiff's vehicle provided first-party comprehensive and collision damage coverage.  A copy of Plaintiff's auto insurance policy with Progressive is attached hereto and incorporated herein as Exhibit 1.  At all times material to this Complaint, Plaintiff's vehicle was principally garaged in, and kept in, Griffin, Georgia.

11.     On or about May 10, 2021, Plaintiff was involved in an accident that badly damaged his vehicle.

12.     Plaintiff promptly presented his claim to Progressive, which determined Plaintiff's vehicle to be a total loss. Mitchell, through its contractual relationship with Progressive, performed a valuation of Plaintiff's car.

13.     In accordance with his policy and governing Georgia law, Plaintiff sought, and Progressive was contractually obligated to provide, insurance benefits

constituting a cash amount based upon the actual cost, less any deductible, to purchase a comparable automobile by the same manufacturer, same model here, with similar body style, similar options, and mileage, including all applicable taxes, license fees, and other fees. *See* GA ADC 120-2-52.06. http://rules.sos.ga.gov/GAC/120-2-52-.06?urlRedirected=yes&data=admin&lookingfor=120-2-52-.06

14. To determine this settlement amount, Progressive utilized a "Vehicle Valuation Report" prepared by Mitchell. Mitchell is a third-party vendor that provides vehicle valuations to Progressive and its Georgia subsidiaries/affiliates pursuant to a contract between "Progressive Group of Insurance Companies" and Mitchell.

15. Further, under Georgia law, Mitchell is an adjuster and/or an independent adjuster as the same is defined pursuant to O.C.G.A. 33-23-1.

16. Upon information and belief, Mitchell provides valuations all over the United States and is familiar with the legal requirements for performing valuations.

17. Upon information and belief, over at least the last six (6) years, Progressive and all its Georgia subsidiaries and affiliates have utilized and relied upon vehicle valuation reports generated by Mitchell to determine market values for its insureds' vehicles that have been declared a total loss.

6

18.    The Mitchell report provided by Progressive to Plaintiff, which Progressive claims supports the market value of Plaintiff's total loss vehicle, is attached hereto and incorporated herein as Exhibit 2.

19.    As previously stated, under governing Georgia law, namely, GA ADC 120-2-52-.06, an insurer paying a cash equivalent settlement for a total loss claim must base the amount on the *actual cost*, less any deductible, to purchase a comparable automobile by the same manufacturer, same model year, with similar body style, and similar options and mileage. In determining the "Base Value" for Plaintiff's total loss vehicle, the Mitchell report utilized by Progressive looked to, and used, four (4) comparable vehicles that are or were currently offered for sale on certain internet/web listings, including cars.com and autotrader.com. (Exhibit 2).

20.    For each comparable vehicle utilized in the Mitchell report, a deduction was made from each vehicle's list price for what Mitchell/Progressive calls a "Projected Sold Adjustment." As shown on the Mitchell report, comparable vehicle number 1 had a $762 deduction from its list price for the "Projected Sold Adjustment," comparable vehicle number 2 had a $725 deduction from its list price for the "Projected Sold Adjustment," comparable vehicle number 3 had a $722 deduction from its list price for the "Projected Sold Adjustment," and comparable

vehicle number 4 had a $1,113 deduction from its list price for the "Projected Sold Adjustment." (Exhibit 2).

21.     These unverifiable and unexplained downward deductions for a purported "Projected Sold Adjustment" off the list price for each of the four comparable vehicles resulted in the "Base Value" (i.e., what the average of the four comps show as the value) for Plaintiff's vehicle being $830.50 lower than had the "Projected Sold Adjustment" deductions not been taken.

22.     Upon information and belief, Progressive's uniform and systematic practice when adjusting total loss claims in Georgia is to obtain a "Vehicle Valuation Report" from Mitchell, and then use and rely upon that valuation to determine the settlement benefits payable to the insured.

23.     Neither Progressive nor Mitchell provide any explanation, illustration, or data in its valuation reports that legally support or justify any "Projected Sold Adjustment" deduction, and certainly no support for the specific downward adjustments used in Plaintiff's valuation report. Rather, the only explanation or mention of the "Projected Sold Adjustment" is buried on the last page of the report, stating: "Projected Sold Adjustment – an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)." (Exhibit 2).

24.     Upon information and belief, there is no support for the downward "Project Sold Adjustment" deductions. Upon information and belief, the downward "Projected Sold Adjustment" deductions are illusory, unsupported, wholly arbitrary, and utilized by Progressive and Mitchell simply to save Progressive dollars in the settlement of first-party total loss claims. Further, nothing in the Plaintiff's policy or Georgia law allows such a deduction.

25.     Neither Mitchell nor Progressive have any information on the condition of the advertised vehicles listed online. Nor do they have information on any dealers' willingness to negotiate price reductions on those vehicles and no information on the insured's negotiation abilities. Despite the vehicles advertised on the internet having significantly different list prices, Progressive and Mitchell deduct high dollar amounts off the comparable vehicles' list price for its "Project Sold Adjustment" deduction. These "Project Sold Adjustment" deductions are not calculated to, and do not result in, values that approximate actual sales prices or actual costs, but rather uniformly and intentionally result in a "Base Value" that is less than the actual cost to purchase a comparable automobile.

26.     As shown on the Mitchell report utilized by Progressive to establish the value of Plaintiff's total loss vehicle, each of the four comparable vehicles come from an internet-based listing such as cars.com and autotrader.com. (Exhibit 2).  In

today's digital era, the used car market and its pricing is heavily driven by the internet and the availability of immediate comparison shopping, as shown by Mitchell's own use of, and reliance on, online prices. Because today's used car market relies heavily on the internet and the immediate availability of comparison shopping, list prices by sellers on the internet are priced-to-market to reflect the intense competition in the context of internet pricing and comparison shopping. A "Project Sold Adjustment" or a negotiated price discount on a used vehicle's internet list price does <u>not</u> reflect the reality of today's used car market in the digital era. It would be uncommon and atypical for a deduction of this nature to be taken from the list price of a vehicle offered for sale online. Simply stated, downward "Projected Sold Adjustment" deductions from list prices made online are not common in today's used car market, which is driven heavily by the internet and the immediate availability of comparison shopping.

27.   Additionally, in taking deductions for the purported "Projected Sold Adjustment," Progressive and Mitchell are simply guessing, with no supporting or verifiable data, what a comparable vehicle may sell for in the future. As stated, applicable Georgia law requires that insurers pay a cash equivalent settlement based upon the *actual cost* to purchase a comparable vehicle. Georgia law does not authorize insurers to guess, speculate, or "project," particularly with no supporting

or verifiable data, what a comparable vehicle might sell for at some point in the future.

28.     As previously alleged, Progressive and Mitchell provide no explanation as to how it arrived at the "Projected Sold Adjustment" deductions. Rather, Progressive and Mitchell self-servingly take illusory and arbitrary deductions that are not adequately specified nor explained and cannot be verified. Progressive's use of these arbitrary, unexplained, and unverified "Projected Sold Adjustments" to reduce the value of comparable vehicles artificially reduces the valuation of the loss vehicle to the benefit of the insurer at the expense of the insured. Progressive's actions and improper valuations violate its contractual obligations and Georgia law applicable to insurance settlement practices.

29.     Upon information and belief, Progressive and Mitchell's "Projected Sold Adjustment" deduction is a blanket, across-the-board percentage reduction of the selling price of a comparable vehicle based on the listing price. The "Projected Sold adjustment" deduction is arbitrarily applied as an across-the-board percentage reduction to any vehicle in a given price range, rather than basing the adjustment on any tangible features of the available vehicle which may relate to consumer negotiations. This shows the arbitrary and capricious nature of the downward "Projected Sold Adjustment" deductions. To further illustrate the arbitrary,

unsupported, and improper nature of these deductions, it is telling that Progressive does not instruct Mitchell to apply "Project Sold Adjustments" to comparable vehicles in all states in which Progressive or its affiliates operate.

30.    Mitchell has facilitated Progressive's practice of undervaluing its insureds' total loss claims by providing valuation reports that include Projected Sold Adjustments that are arbitrary, nonitemized, and unexplained, violating Georgia law and artificially reducing the valuation of Progressive insureds' total loss claims.

31.    By contracting to provide valuation reports to Progressive, an insurance company that operates in Georgia, and by providing valuation reports for first-party total loss claims that occur in Georgia, Mitchell has shown that it is or should be aware of Georgia law. Despite this, Mitchell furnishes these violative reports to Progressive for its benefit and to the detriment of Progressive's insureds.

32.    By aiding Progressive's violation of Georgia law and its breach of its contractual duties with its insureds, Mitchell has interfered with the contractual relationship between Progressive and Progressive's insureds and has engaged in a civil conspiracy with Progressive to artificially reduce the claims payments to Progressive insureds.

33.    As a result of the arbitrary and improper downward deductions for the "Projected Sold Adjustment," the "Base Value" in Plaintiff's valuation report, as in

other class members' valuation reports, would have been greater, and the payment and settlement value by Progressive for Plaintiff's total loss vehicle would have been greater. Were it not for the improper downward adjustment, Plaintiff's settlement value would have been at least $830.50 greater before adding payments for taxes, license fees, and other fees required by Georgia law and deducting the insured's deductible.

34.     In addition to the improper deductions for the "Projected Sold Adjustment," the Mitchell report utilized by Progressive for determining settlement value of Plaintiff's total loss claim improperly used prices from comparable vehicles that were located hundreds of miles away from where Plaintiff's vehicle was principally garaged during the applicable period. For example, all four comparable vehicles relied upon in the Mitchell report were being sold from Florida locations that were hundreds of miles away from Griffin, Georgia, where Plaintiff's vehicle was maintained and principally garaged during the applicable time period. Progressive's use of out-of-state comparable vehicles to determine value in this manner is contrary to GA ADC 12-2-52-.06. Despite the out of state comparable vehicles being hundreds of miles away from the location where the Plaintiff's vehicle was maintained and principally garaged, the Mitchell Report falsely states that the vehicles were 53, 84, 90 and 97 miles away (see Exhibit 2, pg. 4).

## IV.   CLASS ACTION ALLEGATIONS

35.     Pursuant to Fed. R. Civ. Pro. 23(b)(2) and (b)(3), Plaintiff respectfully seeks certification of the following class:

> All individuals residing in the state of Georgia who, in the last six (6) years, were insured under a private passenger automobile insurance policy issued by Progressive Mountain Insurance Company or any other Progressive affiliate or subsidiary underwriting auto insurance in Georgia, and who received compensation for the total loss of their vehicle under their Progressive coverage, and who received a total loss valuation from Mitchell based upon the value of comparable vehicles where "Projected Sold Adjustment" deductions were made.

36.     Excluded from the proposed class are Defendants, any of Defendants' affiliated corporations or agents, any entity in which Defendants have a controlling interest, and any agents, employees, officers, and/or directors of Defendants or any other such entities and its representatives, heirs, successors, and/or assigns.

37.     **Numerosity.**  The class is so numerous that it would be impracticable to join all effected class members in a single action.

38.     **Existence and Predominance of Common Questions of Law and Fact.**  There are common questions of law and fact common and of general interest to the class.   These common questions of law and fact predominate over any questions effecting only individual members of the class.  Said common questions include, but are not limited to, the following:

14

a.    Whether Progressive breached policies of insurance with Plaintiff and other Georgia insureds by making downward adjustments for a purported "Projected Sold Adjustment" as described herein;

b.    Whether Progressive's total loss settlement practices as described herein violate governing Georgia law;

c.    Whether Progressive violated standard form contracts with Georgia insureds by virtue of the total loss settlement practices described herein;

d.    Whether Mitchell systemically applied Projected Sold Adjustments or substantially similar adjustments to calculate the value of total loss vehicles;

e.    Whether, through the above referenced practice, Progressive failed to pay its insureds the actual cash value of their loss vehicles, breaching its contract with its insureds;

f.    Whether, through the above referenced practice, Mitchell and Progressive violated Georgia Law, including but not limited to GA ADC 120-2-52.06;

g.    Whether, through the above referenced practice, Mitchell engaged in a civil conspiracy with Progressive;

h.    Whether, through the above referenced practice, Mitchell has engaged in an inducement of breach of contract;

15

    i.      Whether, through the above referenced practice, Mitchell breached it contract with Progressive of which Plaintiff and the Class are intended third party beneficiaries entitled to recover their damages;

    j.      Whether Plaintiff and the Class are entitled to declaratory and injunctive relief;

    k.      Whether Plaintiff and the Class are entitled to compensatory damages in the amount of the invalid Projected Sold Adjustments applied to Plaintiff's and each Class member's valuation;

    l.      Whether this case may be maintained as a class action.

    39.   **Typicality.**  The claims of the named Plaintiff are typical of the claims of the class. The claims arise out of the same standard form improper conduct perpetrated on members of the class.

    40.   **Adequate Representation.**  Plaintiff will fairly and adequately protect the interests of the members of the class and has no interest antagonistic to those of other class members.  Plaintiff has retained class counsel competent to prosecute class actions and is financially able to represent the class.

    41.   **Superiority.**  The class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of the class is impracticable.  The interest of judicial economy strongly

16

favors adjudicating the claims as a class action rather than on an individual basis because the amount of any individual's damages are too small to make it practicable to bring individual lawsuits.

42.     Class action treatment is proper, and this action should be maintained as a class action pursuant to Fed. R. Civ. Pro. 23(b)(3) because questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Further, class certification is appropriate pursuant to Fed. R. Civ. Pro. 23(b)(2) because Defendants' actions are generally applicable to the class as a whole, and Plaintiff seeks equitable remedies with respect to the class as a whole.

## COUNT I
## Breach of Contract

43.     Plaintiff adopts and incorporates all previous allegations in full.

44.     The Policy provides in pertinent part the following:

**INSURING AGREEMENT—COLLISION COVERAGE**

If **you** pay the premium for this coverage, **we** will pay for sudden, direct and accidental loss to a:
1.   **covered auto**, including an attached **trailer**; or
2.   **non-owned auto**;
and its **custom parts or equipment**, resulting from **collision**.

In further addressing what is paid for collision coverage, the Policy states:

**LIMITS OF LIABILITY**

1. The limit of liability for loss to a **covered auto**, **non-owned auto**, or **custom parts or equipment** is the lowest of:
   a. the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;
   b. the amount necessary to replace the stolen or damaged property reduced by the applicable deductible;
   c. the amount necessary to repair the damaged property to its pre-loss condition reduced by the applicable deductible; or
   d. the Stated Amount shown on the **declarations page** for that **covered auto**.

This section goes on to state "The actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs."

45.    The Policy also states:

**TERMS OF POLICY CONFORMED TO STATUTES**

If any provision of this policy fails to conform to the statutes of the State of Georgia, the provision shall be deemed amended to conform to such statutes. All other provisions shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the State of Georgia.

46.    Progressive has violated breached its contract with Plaintiff and class members by, among other things:

   a. improperly paying amounts on total loss claims by taking unexplained, arbitrary, and unverified "Projected Sold Adjustment" deductions as described herein;

18

b.  adjusting and paying total loss claims in a manner that is violative of governing Georgia law addressing total loss claims settlement practices;

c.  failing to pay total loss automobile values in accordance with its standard form policies and in accordance with Georgia law governing total loss claims;

d.  not adhering to the duty of good faith and fair dealing implied in every contract, to the extent discretion was to be exercised by Progressive;

e.  improperly taking unverified, unexplained, and arbitrary deductions for "Projected Sold Adjustments" from total loss vehicle valuates.

47.    Further, Plaintiff does not allege that it is bringing a private right of action pursuant to the Georgia regulations.   Rather, the cited regulations are instructions as to how Progressive is to evaluate total loss claims under the Policy. Additionally, the Policy states that it will conform to all Georgia statutes.  Georgia's statutes gives the state Insurance Commissioner the authority to promulgate regulations to implement the provisions of the Georgia Insurance Code.  Progressive,

among other breaches of their policy contract, failed to conform its policy to Georgia law by ignoring the clear dictates of the law as described herein.

48.    O.C.G.A. § 33-34-8 provides: "The Commissioner shall provide by rule or regulation procedures for the expeditious and efficient settlement of first-party property damage claims under personal private passenger motor vehicle policies. Such procedures may include, but shall not be limited to......(3) Determination of fair market value on total losses...."

49.    As a result of Progressive's breach of contract, Plaintiff and class members are entitled to recover compensatory damages available to them representing those amounts improperly deducted by Progressive from insureds' total loss settlement benefits based on "Projected Sold Adjustment" deductions.

## COUNT II

### Breach of Covenant of Good Faith and Fair Dealing

50.    Plaintiff adopts and incorporates all previous allegations in full.

51.    Implied in Progressive's insurance policies is a covenant that it will act in good faith and deal fairly with its insureds; that they will do nothing to interfere with their insureds' rights to receive the benefits of the policies; that they will not place their own interests before those of their insureds; that they will exercise diligence, good faith, and fidelity in safeguarding the interest of their insureds; and

that they will deal ethically with their insureds and will fairly and adequately inform them of the nature and scope of their insurance coverage (hereinafter referred to as "covenant of good faith and fair dealing").

52.    Progressive has breached the covenant of good faith and fair dealing by, inter alia: a. Intentionally applying Projected Sold Adjustment to undervalue comparable vehicles, and, in turn, insureds' total loss vehicles; b. Failing to pay insureds the actual cash value of their total loss vehicles; c. Interpreting the terms and conditions of their insurance policies in an unreasonable manner, which is inconsistent with applicable law, solely in an effort to understate the fair market value of total loss vehicles and avoid paying insureds the actual cash value on their total loss claims; and d. Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

53.    Progressive is in breach of the covenant of good faith and fair dealing and did the acts complained of herein, among others, for the purpose of undervaluing comparable and total loss vehicles and underpaying insureds' the actual cash value of their total loss claims.

54.    Progressive's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiff and the Class. Plaintiff's and proposed Class members'

damages include the amounts improperly deducted by Progressive from the insureds' payments on the basis of a Projected Sold Adjustment.

## COUNT III

## Interference with Contractual Relations

55.     Mitchell had knowledge of the contracts between Progressive and the Plaintiff and class members, and Mitchell acted intentionally in its actions and violations concerning the same.

56.     Mitchell knew, by virtue of contracting to provide valuation reports to Progressive for use in valuing first-party total loss claims that valid contracts existed between Progressive and its insureds, including the Plaintiff and potential class members.

57.     Further, Mitchell as both a major provider to insurance companies across the United States and as an adjuster under Georgia law, should be aware of Georgia's legal requirements and knew or should have known that their Projected Sold Adjustment and their failure to value total loss claims in accordance with Georgia law would breach Progressive's contractual relationship with Progressive's insureds.

58.     Despite this knowledge, Mitchell provided valuation reports to Progressive, reports that served as the basis for claims payments to insureds, that

22

violated Georgia law and constituted a breach of contract between Progressive and its insureds due to the use of Projected Sold Adjustment failed to itemize and explain deductions taken, and arbitrarily undervalued comparable vehicles when settling first-party automobile total loss claims.

59.    Plaintiff and the Class members were damaged by Mitchell's actions due to their vehicles being undervalued as a result of Mitchell's unlawful application of Projected Sold Adjustment in its valuation reports prepared for Progressive.

60.    By preparing and providing valuation reports to Progressive that violated Georgia law and constituted a breach of contract between Progressive and its insureds, Mitchell has injured Progressive's insureds and deliberately induced a breach of the contract between Progressive and its insureds.

61.    Mitchell's inducement of a breach of contractual relations between Progressive and its insureds has caused damage to Plaintiff and the Class. Plaintiff's and Class members' damages include but are not limited to the amounts illegally deducted for Projected Sold Adjustment by Progressive from the insureds' payments.

62.    Mitchell's actions were purposefully done in order to improperly lessen the valuations with the intent to injure the Plaintiff and potential class members.

**COUNT III**

**Breach of Contract Against Mitchell**
**Based on Plaintiff's Status as a Third-Party Beneficiary**

63.     Plaintiff adopts and incorporates all previous allegations in full.

64.     At all times relevant to this action, the Plaintiff and the putative class members were third-party beneficiaries of the contract between Progressive and Mitchell whereby Mitchell was to evaluate total loss claims for Progressive when claims for total loss were made by Progressive insureds under the Progressive insureds' private passenger automobile insurance policy.  Pursuant to the Agreement between Progressive and Mitchell, Mitchell was to evaluate the total loss claims of Progressive insureds, like the total loss claim of the Plaintiff and the putative class members, in a manner consistent with both Progressive's policy with its insureds and Georgia Law.

65.     As insureds for whom valuations were prepared under this Agreement and who received total loss payments from Progressive on the basis of the valuations prepared under this Agreement, Plaintiff and the Class are intended beneficiaries of the Agreement between Progressive and Mitchell, and are entitled to sue for breach of that Agreement.

66.     Mitchell's repeated breach of its Agreement to provide total loss valuations consistent with Progressive's policy with its insureds and with Georgia Law proximately caused damage to Plaintiffs.  Mitchell is, therefore, liable to

Plaintiff and the putative class members as intended third-party beneficiaries and Plaintiff and the putative class members are entitled to compensatory and consequential damages flowing from said breaches.

## COUNT IV

### Declaratory and Injunctive Relief

67.    Plaintiff adopts and incorporates all previous allegations in full.

68.    Plaintiff brings this cause of action for himself and the proposed class pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 seeking a declaration that, for those who maintain an auto insurance policy with Progressive in Georgia, it is a violation of Georgia law and the standard form Progressive policy for Progressive to base its valuation and payment of total loss claims on values of comparable vehicles that have been artificially reduced by arbitrary and unjustified "Projected Sold Adjustment" deductions.

69.    This Court has the power to declare the rights of Progressive policyholders and those who would be insured under Progressive policies in Georgia who may suffer similar losses in the future, as well as those who have suffered valuation-related losses.

70.    Plaintiff further seeks, on behalf of himself and the proposed class, injunctive relief to enjoin Progressive and Mitchell from the improper total loss settlement practices described in this Complaint.

## V.    PRAYER FOR RELIEF

71.    Plaintiff and members of the proposed class have been injured from Progressive's breach of contract and violation of Georgia law as described herein. As a result, Plaintiff and members of the proposed class are entitled to, and pray for, the following relief:

a.    an order certifying this action as a class action, including certifying each cause of action under the appropriate subsection of Federal Rule of Civil Procedure 23;

b.    an order appointing Plaintiff as the class representative, and appointing the undersigned counsel to represent the class;

c.    a judgment for compensatory damages against Progressive resulting from Progressive's breach of its obligations under the policy in the amount of the underpayment to those insureds in the proposed class as measured by the amount by which payments were reduced by the taking of "Projected Sold Adjustment" deductions;

       d.      a judgment for compensatory damages resulting from against Mitchell for their inducement to breach of contractual relations;

       e.      declaratory and injunctive relief consistent with the allegations in this Complaint;

       f.      a judgment for Plaintiff's attorney's fees and costs of suit;

       g.      post-judgment interest on the judgment at the rate provided by law from the date of judgment until paid;

       h.      and such other relief as being just and equitable.

## **JURY DEMAND**

PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL ISSUES IN THIS CASE.

Dated: December 27, 2021

                        /s/ R. Brent Irby
                        R. Brent Irby
                        Georgia Bar No.: 224232
                        **IRBY LAW, LLC**
                        2201 Arlington Avenue S
                        Birmingham, AL  35205
                        Email:      brent@irbylaw.net

/s/ William Gregory Dobson
William Greg Dobson
Georgia Bar No.: 237770
**LOBER & DOBSON, LLC**
1040 Fort Stephenson Road
Lookout Mountain, Georgia 30750
Email: wgd@lddlawyers.com

/s/ Michael J. Lober
Michael J. Lober
Georgia Bar No.:  455580
**LOBER & DOBSON, LLC**
1197 Canton Street
Roswell, Georgia 30075
Email: mjlober@lddlawyers.com

/s/ A. Danielle McBride
A. Danielle McBride
Georgia Bar No.:  800824
**LOBER & DOBSON, LLC**
830 Mulberry Street, Suite 201
Macon, Georgia 31201
Email: admcbride@lddlawyers.com

# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF GEORGIA
## (Atlanta Division)

| | | |
|---|---|---|
| **KEDDRICK BROWN,** individually and on behalf of a class of similarly situated persons as defined herein, | ) ) ) | |
| | ) | **CIVIL ACTION NO.** |
| **Plaintiff,** | ) ) | |
| | ) | **3:21-cv-00175-TCB** |
| **v.** | ) | |
| | ) | |
| **PROGRESSIVE MOUNTAIN INSURANCE COMPANY and MITCHELL   INTERNATIONAL, INC.** | ) | |
| **Defendants.** | | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of December, 2021, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will automatically send a copy to all attorneys of record.

/s/ A. Danielle McBride
A. Danielle McBride
Georgia Bar No.:  800824
**LOBER & DOBSON, LLC**
830 Mulberry Street, Suite 201
Macon, Georgia 31201
Email: admcbride@lddlawyers.com

29