IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

KEDDRICK BROWN,

     Plaintiff,

v.

PROGRESSIVE MOUNTAIN
INSURANCE COMPANY and
MITCHELL INTERNATIONAL,
INC.,

     Defendants.

CIVIL ACTION FILE

NO. 3:21-cv-175-TCB

## O R D E R

This case comes before the Court on the motions [22, 23] of

Defendants Progressive Mountain Insurance Company and Mitchell

International, Inc. to dismiss for failure to state a claim.

As an initial matter, this Court previously ordered [37] that,

following a ninety-day jurisdictional discovery period, the parties were

to submit briefs addressing whether the Court has subject-matter

jurisdiction over this case. Following the jurisdictional discovery period,

the three parties each submitted briefs [40, 41, 42] suggesting that the Court does have subject-matter jurisdiction over the case under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

"[Federal district] courts are courts of limited jurisdiction. They are 'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton,* 30 F.3d 1365, 1367 (11th Cir. 1994)). "Once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Id.* at 410.

"A necessary corollary to the concept that a federal court is powerless to act without jurisdiction is the equally unremarkable principle that a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings." *Id.* "Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Id.*

Because this is a putative class action, Brown alleges jurisdiction under CAFA, which gives federal courts original jurisdiction if (1) there is minimal diversity among the parties; (2) the proposed class is greater than one hundred members; and (3) the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d).

After jurisdictional discovery, the parties all contend that this Court has subject-matter jurisdiction.

Progressive makes three points in support of its argument that this Court has subject-matter jurisdiction. First, members of the proposed class have a different citizenship from Progressive because Progressive is an Ohio corporation whose principal place of business is in Ohio, and Brown is a Georgia citizen who "seeks to represent a class of Georgia residents." [41] at 5. Thus, Progressive argues there is minimal diversity, as Brown and Progressive are citizens of Georgia and Ohio, respectively.

Second, Progressive contends that the putative class exceeds one hundred members because Progressive settled 51,599 first-party total loss claims in Georgia using comparable vehicle valuation reports from

Mitchell during the putative class period. *See id.* at 5–6. Progressive

determined during jurisdictional discovery that it also settled 236 other

claims in Georgia "using other report types—dual-source reports and

specialty reports"—that may also include PSAs. *Id.* (citation omitted).

Progressive explains that its adjuster took a one-hundred-count

sample of the putative first-party total-loss claim files to review and

"determine whether the claim was settled on the basis of a Mitchell

valuation report" and "whether a PSA was applied to any comparable

vehicle in the applicable report." *Id.* at 6–7 (citing [41-2] ¶¶ 2, 3).

Progressive determined that 95 of the one hundred claim files "settled

on the basis of a Mitchell valuation report that included at least one

comparable vehicle to which a PSA was applied." *Id.* at 7 (citing [41-2]

¶¶ 5, 7). Progressive ultimately argues that the proposed class is

"sufficiently numerous" because it is nearly certain that at least six of

the remaining 51,835 claims were "settled on the basis of a Mitchell

valuation report." *Id.* at 8.

Third, Progressive asserts that the amount in controversy meets

the $5,000,000 minimum required by CAFA. The average impact of

PSAs applied in the 95-claim sample was $622.38 per claim. *Id.* at 9 (citing [41-2] ¶ 6). Progressive explains that based on that amount, the class size required to meet the jurisdictional threshold would have to be 8,034 insureds. *Id.* As stated, there are potentially 51,835 affected insureds. Thus, based on the one-hundred-claim sample, "it is more likely than not that the amount in controversy exceeds $5,000,000." *Id.* at 10 (citing *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010)).[1]

Based on the assertions in the parties' briefs, this Court finds that it has subject-matter jurisdiction over this dispute. At least one member of the proposed class has a different citizenship than one of the Defendants, the putative class exceeds one hundred members, and the amount in controversy exceeds $5,000,000. Thus, CAFA's elements are satisfied, and this Court has subject-matter jurisdiction.

---

[1] Defendant Mitchell incorporates Progressive's assertions in its brief. *See* [42] at 2. Brown likewise references the review Progressive conducted. *See* [40] at 2–4. The average amount of the PSA stated in Brown's brief is $695.00, which is $73.42 more than the average amount of the PSA in Progressive's brief. The Court will presume Progressive's calculations represented in its brief are the accurate figures. Regardless, the difference is inconsequential because either amount, when multiplied by the proposed class's number of claims, exceeds the $5,000,000 minimum.

Having found that it has subject-matter jurisdiction, the Court now turns to the merits of the Defendants' motions to dismiss.

## I.     Background

Plaintiff Keddrick Brown owned a 2014 Dodge Charger insured by Progressive. In May 2021, he was involved in an accident after which Progressive deemed his car a total loss. Under the insurance policy, upon a total loss Progressive was required to pay Brown the "actual cash value" of the vehicle at the time of the loss. The "actual cash value" was to be determined by various factors including market value, age, and condition of the vehicle.

In determining the value of Brown's car, Progressive relied on a valuation report prepared by Mitchell. Progressive contracts with Mitchell to determine market values of vehicles that Progressive insures.

To determine the value of Brown's car, Mitchell used four comparable vehicles for sale on internet listings. For each comparable vehicle, Mitchell made adjustments to the listed price to account for differences in mileage, features, and equipment. Mitchell also made an

adjustment to each vehicle's value for what Defendants call a "Projected Sold Adjustment" ("PSA"). The PSA is intended to reflect consumer purchasing behavior, namely negotiating a lower price than the listed price. Brown alleges that because of the application of the PSA, his settlement was $830.50 less than what he should have received.

On October 11, 2021, Brown filed this action, alleging that application of the PSA in arriving at the cash value of his vehicle constituted a breach of the insurance policy and was contrary to Georgia law on motor vehicle accident reparations and the regulations promulgated thereunder. He seeks compensatory damages as well as declaratory and injunctive relief, asking the Court to enjoin application of the PSA in future total loss settlements.

He brings this action as a putative class action under Rule 23 of the Federal Rules of Civil Procedure. He argues that there are hundreds of Georgia policyholders affected by Defendants' practices and that common questions of fact and law predominate.

On January 10, 2022, Defendants filed their motions to dismiss. They argue that Brown has failed to state a claim for breach of

contract—and thus cannot state a claim for the breach of the duty of good faith and fair dealing—and that he is not entitled to declaratory or injunctive relief. Further, Defendants argue that Brown brings claims under statutes and regulations that do not give rise to a private cause of action. Finally, Mitchell argues that Brown has not sufficiently pled a claim against it for tortious interference with Brown's contractual rights.

## II. Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" This pleading standard does not require "detailed factual allegations," but it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

To survive a 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Chandler v. Sec'y of*

*Fla. Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012) (quoting *id.*). The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Iqbal*, 556 U.S. at 678 (citation omitted) (quoting *Twombly*, 550 U.S. at 556); *see also Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324–25 (11th Cir. 2012).

Thus, a claim will survive a motion to dismiss only if the factual allegations in the complaint are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56 (citations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted). While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011), the Court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations, *Iqbal*, 556 U.S. at 678.

Accordingly, evaluation of a motion to dismiss requires two steps: (1) eliminate any allegations in the pleading that are merely legal conclusions, and (2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## III.   Discussion

### A.     Breach of Contract

Progressive argues that Brown fails to allege that it breached any particular provision of the insurance policy. It argues that beyond calling the PSA "unverifiable," "unexplained," and "arbitrary," Brown does not specifically tie the allegedly improper application of the PSA to any particular policy provision and thus Brown cannot allege a breach of the policy. [22] at 2 (quoting [19] ¶ 24).

Brown responds that he has adequately stated a plausible common law breach of contract based on the standard form policy language. He asserts that the application of the PSA breached the policy's language that requires Progressive to pay for damage to a covered vehicle and sets the limit of liability at the actual cash value of

the vehicle. Further, Brown argues that applying the PSA contravenes the language of the policy which dictates how to calculate the actual cash value of the covered vehicle.

The policy specifies liability limits for loss to a covered vehicle. One such limit is "the actual cash value of the [vehicle] at the time of the loss reduced by the applicable deductible." [29] at 12 (quoting [19] ¶ 44). The policy defines "actual cash value" as "determined by the market value, age, and condition of the vehicle at the time the loss occurs." *Id.* (quoting [19] ¶ 44).

Progressive correctly asserts that the liability limitation itself does not obligate Progressive to pay any particular sum but merely sets the outer bounds on the amount that can be awarded. That said, Progressive used—and allegedly misapplied—the "actual cash value" portion of the policy in determining how much to pay Brown. Its use of PSAs to reduce the value of comparable cars based on consumer behavior and negotiation at least plausibly conflicts with the policy's definition of "actual cash value," which includes just "market value, age, and condition of the vehicle."

Accordingly, Brown has plausibly alleged a claim for common law breach of contract, and Progressive's motion to dismiss will be denied as to that claim.

## B.   Total-Loss Regulation

Progressive further asserts that Brown's claims should be dismissed because (1) he cannot make out a breach of contract claim predicated on the policy's conformity clause—which requires any nonconforming provisions be deemed amended to conform with Georgia law—and (2) the Georgia Total Loss Regulation, Ga. Comp. R. & Regs. 102-2-52-.06, does not provide a private right of action.

Brown responds that if the "actual cash value" provisions are amended to conform with the Total Loss Regulation—as the conformity clause in the policy purportedly requires—then Progressive has breached the policy. Brown asserts that the Total Loss Regulation provides an additional—not the lone—predicate for his breach of contract claim.

Brown further states that he is not basing any cause of action solely on the violation of the Total Loss Regulation. Instead, he argues,

12

the policy's conformity *with* the Total Loss Regulation—after necessary and automatic amendment—has created the predicate for a breach of contract claim.

The Court agrees that Brown is using the Total Loss Regulation not as a standalone claim but rather as a necessary predicate for a breach of contract claim.

Thus, in order for Brown to succeed on his breach of contract claim, he must prove that (1) the policy did not conform with the Total Loss Regulation; (2) the policy should be deemed amended to conform with the Total Loss Regulation; and (3) Progressive's application of the PSA breaches the policy, as amended. The Court holds that Brown has not adequately alleged the necessary elements.

The Total Loss Regulation provides that an insurer may "elect to pay a cash equivalent settlement based upon the actual cost . . . to purchase a comparable automobile by the same manufacturer, same model year, with similar body style, [and] similar options and miles . . . ." Ga. Comp. R. & Regs. 102-2-52-.06(a).

13

Brown cannot point to a policy provision that conflicts with the Total Loss Regulation that would require application of the conformity clause. The policy provides that in the event of a total loss, Progressive's liability is limited to "the actual cash value" of the vehicle, which is determined by "the market value, age, and condition of the vehicle at the time the loss occurs." [29] at 12 (quoting [19] ¶ 44).

Nothing in the policy conflicts with the Total Loss Regulation's requirement that an insurer pay a cash settlement equal to the "actual cost . . . to purchase a comparable automobile." Ga. Comp. R. & Regs. 102-2-52-.06(a). A "Conformity with Statute clause . . . applies only where the contract and statutes are in conflict." *Gravely v. S. Tr. Ins. Co.*, 258 S.E.2d 753, 754 (Ga. Ct. App. 1979) (citation omitted). Because the policy does not conflict with the Total Loss Regulation, there are no grounds for conforming the policy.

To the extent that Brown is bringing a breach of contract claim based on Progressive's *conduct* in relation to the policy *as written*, he may do so. But to the extent that he is bringing a breach of contract claim based on the policy, necessarily amended to conform to the Total

Loss Regulation, such a claim fails. Because the policy as written is not at odds with the Total Loss Regulation, it cannot serve as the basis for conforming the policy.[2]

Accordingly, Progressive's motion to dismiss will be granted as to the breach of contract claims predicated upon conforming the policy to comply with the Total Loss Regulation.

---

[2] Progressive is also correct that the Total Loss Regulation itself cannot serve as the basis for a breach of contract claim unless it is referenced or incorporated in the policy. Thus, unless compliance with the regulation is an express condition precedent in the policy, it cannot give rise to a breach of contract claim. *See Bates v. JP Morgan Chase Bank, NA*, 768 F.3d 1126, 1131–32 (11th Cir. 2014) ("to the extent that a regulation is incorporated by reference into a contract, including as a condition precedent, it must be referenced in a way that establishes a 'reasonably clear and ascertainable meaning.'" (quoting *Bowman v. Walnut Mountain Prop. Owners Ass'n, Inc.*, 553 S.E.2d 389, 393 (Ga. Ct. App. 2001))). Because the Total Loss Regulation is not incorporated or referenced into the policy, compliance therewith cannot be deemed a condition precedent.

Further, Progressive correctly notes that the Total Loss Regulation does not give rise to a private cause of action. *See State Farm Mut. Auto. Ins. Co. v. Hernandez Auto Painting & Body Works, Inc.*, 719 S.E.2d 597, 601 (Ga. Ct. App. 2011) (holding that the specific language of the MVARA—the statute pursuant to which the Total Loss Regulation was promulgated—did not create a private right of action because "the absence of language in [the statute] creating a right of action strongly indicates the legislature's intention that no such cause of action be created by said statute." (quotation omitted)). Thus, Brown cannot bring an independent claim for violation of the Total Loss Regulation.

### C.    Good Faith and Fair Dealing

Progressive contends that Brown cannot allege a breach of the implied duty of good faith and fair dealing because he cannot prove a breach of contract claim. It asserts that a breach of contract is a necessary predicate to bringing a good faith and fair dealing claim and because Brown cannot prove a breach of contract, he cannot maintain a claim for breach of the implied duty.

"The 'covenant' [of good faith and fair dealing] is not an independent contract term." *Alan's of Atlanta, Inc. v. Minolta Corp.*, 903 F.2d 1414, 1429 (11th Cir. 1990) (citation omitted). "It is a doctrine that modifies the meaning of all explicit terms in a contract, preventing a breach of those explicit terms *de facto* when performance is maintained *de jure*." *Id.* (citations omitted). "But it is not an undertaking that can be breached apart from those terms." *Id*; *see also Tiller v. State Farm Mut. Auto. Ins. Co*, 549 F. App'x 849, 857 (11th Cir. 2013) (finding that alleging a breach of contract "is required under Georgia law in order to state a claim for breach of the implied duty of good faith and fair dealing." (citing *Alan's of Atlanta*, 903 F.2d at 1429)); *Stuart Enters.*

16

*Int'l, Inc. v. Peykan, Inc.*, 555 S.E.2d 881, 884 (Ga. Ct. App. 2001) (holding that where no breach of contract was found, a "verdict based solely on a claim for the breach of the covenant of good faith in the performance of that contract" "cannot stand.").

That said, because the Court found, *supra*, that Brown has plausibly alleged a claim for common law breach of contract, it follows that he can plausibly allege a breach of the implied duty of good faith and fair dealing. *See Johnson v. Citimortgage, Inc.*, 351 F. Supp. 2d 1368, 1381 (N.D. Ga. 2004). In *Johnson*, this Court held that where the plaintiff plausibly alleged a breach of contract, he could maintain a claim for breach of the implied duty.

Like in *Johnson*, "taking [Brown]'s allegations as true, i.e., [Progressive] breached its contract with [Brown], [Brown] states a claim for breach of the covenant to perform in good faith." *Id*.

Accordingly, Progressive's motion to dismiss count two of the amended complaint for breach of the implied duty of good faith and fair dealing will be denied.

17

### D.   Tortious Interference

Mitchell argues that Brown's claim against it for tortious

interference with Brown's rights in the policy should be dismissed

because he fails to allege that Mitchell is a "stranger" to the contract

between Brown and Progressive. Further, Mitchell argues that Brown

has not adequately averred that it acted maliciously or purposefully

with an intent to injure Brown.

A claim for tortious interference consists of:

(1) improper action or wrongful conduct by the defendant
without privilege; (2) the defendant acted purposely and
with malice with the intent to injure; (3) the defendant
induced a breach of contractual obligations or caused a party
or third parties to discontinue or fail to enter into an
anticipated business relationship with the plaintiff; and (4)
the defendant's tortious conduct proximately caused damage
to the plaintiff.

*Dalton Diversified, Inc. v. AmSouth Bank*, 605 S.E.2d 892, 897–98 (Ga.

Ct. App. 2004) (quoting *Blakey v. Victory Equip. Sales*, 576 S.E.2d 288,

292 (Ga. Ct. App. 2002)).

Additionally, "[a]fter proving the existence of a contract, it is

essential to a claim of tortious interference . . . that the plaintiff

establish that the defendant is a 'third party,' i.e., a 'stranger' to the

18

contract with which the defendant allegedly interfered." *Atlanta Mkt. Ctr. Mgmt. Co. v. McLane*, 503 S.E.2d 278, 282 (Ga. 1998). "One is not a stranger to the contract just because one is not a party to the contract." *Id*. In fact, "in order to be liable for tortious interference, one must be a stranger to both the contract at issue and the business relationship giving rise to and underpinning the contract." *Id*. at 283 (citing *Renden v. Liberty Real Est.*, 444 S.E.2d 814, 818 (Ga. Ct. App. 1994)). "In other words, all partys [sic] to an interwoven contractual arrangement are not liable for tortious interference with any of the contracts or business relationships." *Id*. (citing *Jefferson-Pilot Commc'ns Co. v. Phx. City Broad., Ltd. of Atlanta*, 421 S.E.2d 295, 299 (Ga. Ct. App. 1992)).

The Court has no trouble concluding that Mitchell is not a "stranger" to the policy between Progressive and Brown. Progressive and Mitchell have a "contractual relationship," which Brown avers in his amended complaint. [23] at 14 (quoting 19 ¶ 12). Mitchell prepared Brown's total loss valuation—including the PSA—pursuant to its contractual relationship with Progressive.

19

Mitchell clearly benefits from the policy between Progressive and Brown. "Those who . . . would benefit from a contract with which they are alleged to have interfered . . . are not strangers to the contract and cannot have tortiously interfered." *Mabra v. SF, Inc.*, 728 S.E.2d 737, 740 (Ga. Ct. App. 2012) (citing *Atlanta Mkt. Ctr.*, 503 S.E.2d at 283).

Accordingly, because Mitchell is not a stranger to the contract between Brown and Progressive, Mitchell cannot have tortiously interfered with Brown's interest in that contract, and the Court need not undertake the full tortious interference analysis. Mitchell's motion to dismiss will be granted as to Brown's tortious interference claim against it.

## E.    Intended Beneficiary

Mitchell also argues that Brown cannot state a claim against it for any alleged breach of contract because he is not an intended third-party beneficiary of the agreement between Mitchell and Progressive. This is so, Mitchell argues, because the agreement does not include a third-party beneficiary provision, nor does the agreement reflect an intent to benefit Brown.

"The third-party beneficiary need not be specifically named in a contract; the dispositive issue is whether the parties' intention to benefit the third party is shown on the face of the contract." *Dillon v. Reid*, 717 S.E.2d 542, 548 (Ga. Ct. App. 2011) (quoting *Northen v. Tobin*, 585 S.E.2d 681, 686 (Ga. Ct. App. 2003)).

Because this case is before the Court on Defendants' motions to dismiss, the Court is to accept as true all well-pleaded facts and construe them in a light most favorable to Brown. That said, Brown has alleged *no* facts that indicate that he—or other Progressive policyholders—were intended beneficiaries of the contract between Progressive and Mitchell such that they would have standing to sue to enforce that contract.

Beyond simply asserting that "Plaintiff and the Class are intended beneficiaries of the Agreement between Progressive and Mitchell" because they are "insureds for whom valuations were prepared under . . . and who received total loss payments from Progressive," [19] ¶ 65, Brown avers no facts that reflect an intent—on the face of the

agreement between Progressive and Mitchell—to benefit himself or the putative class members.

Further, were the Court to find that Brown has standing to enforce the contract between Progressive and Mitchell, it would confer standing to "an unreasonably broad group of beneficiaries, who might benefit or only incidentally benefit from the contract, which is insufficient for third party beneficiary status." *Roland v. Shreve*, 958 F. Supp. 2d 1361, 1368 (M.D. Ga. 2013) (internal quotations and citations omitted). Progressive's evidence found that virtually all of its valuations were provided by Mitchell. This would open the door up to thousands of potential plaintiffs seeking to enforce a contract to which they are not a party. "Non-parties to a contract cannot claim third party beneficiary status if they are members of an unreasonably broad group of beneficiaries." *Id.* at 1367 (quoting *Martinez v. Rycars Constr., LLC*, No. CV410–049, 2011 WL 4625989, at *8 (S.D. Ga. Sept. 30, 2011)).

In addition to holding that Brown is not an intended beneficiary to the contract between Progressive and Mitchell, the Court holds that Brown cannot claim third-party beneficiary status because he is a

member of an "unreasonably broad group of beneficiaries." *Id.*

Accordingly, Mitchell's motion to dismiss will be granted as to the third-

party beneficiary claim against it.

### F.   Declaratory and Injunctive Relief

Defendants seek dismissal of Brown's claim for declaratory and

injunctive relief. As an initial matter, they assert that declaratory and

injunctive relief should not be brought as a standalone claim but rather

as a remedy for a separate, substantive claim.

Defendants are correct that injunctive relief is not a standalone

claim and is instead a remedy for substantive legal claims. *Alabama v.*

*U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005) ("Any

motion or suit for either a preliminary or permanent injunction must be

based upon a cause of action.").

Because Mitchell's motion to dismiss will be granted as to the

substantive counts, there is no underlying claim against Mitchell upon

which a prayer for injunctive relief can be based. Further, Brown's

declaratory relief claim appears to relate only to Progressive. *See* [19]

¶ 68 ("seeking a declaration that, for those who maintain an auto

insurance policy with *Progressive* in Georgia, it is a violation of Georgia law and the standard form *Progressive* policy for *Progressive* to base its valuation and payment of total loss claims on values of comparable vehicles that have been artificially reduced . . . ." (emphasis added)). Accordingly, Mitchell's motion to dismiss the declaratory and injunctive relief claims will be granted.

Because the Court found, *supra*, that Brown had adequately stated a claim against Progressive for common law breach of contract, it follows that declaratory and injunctive relief *could* be granted as to Progressive. Brown asks the Court to declare that Progressive's total loss settlement practices to be violative of Georgia law and to enjoin future improper practices.

Progressive argues that the claims should be dismissed because Brown and the putative class lack standing. It argues that Brown cannot allege any likelihood of future injury and therefore cannot bring a claim for declaratory or injunctive relief.

Claims for prospective relief must be based upon "a substantial likelihood that the plaintiff will suffer future injury: a 'perhaps' or

'maybe' chance is not enough." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (citing *City of L.A. v. Lyons*, 461 U.S. 95, 103 (1983)). The future injury must be "real and immediate." *Id.* (citation omitted).

Brown has not averred in his complaint any future injury warranting prospective relief. He has not alleged that he is still a Progressive policyholder, nor has he plausibly alleged that he will likely suffer another total loss accident and have a settlement issued based on a valuation report that includes a PSA. Accordingly, the Court holds he lacks standing to bring claims for declaratory and injunctive relief.

Progressive additionally argues that Brown's claims for equitable relief should be dismissed because he has an adequate remedy at law: money damages. The Court agrees.

"It is axiomatic that equitable relief is only available where there is no adequate remedy at law; cases in which the remedy sought is the recovery of money damages do not fall within the jurisdiction of equity." *Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1527 (11th Cir. 1994).

It is clear that money damages are the primary remedy sought by Brown and are all that is required to make him whole. He avers that the PSA resulted in him receiving $830.50 less than he should have received. As in *Rosen*, "[t]here is no indication in this case that a legal remedy would not be sufficient to vindicate [Brown's] rights since [he] seek[s] the payment of damages . . . ." *Id.* at 1527 n.14. Because Brown has an adequate remedy at law, his claims for equitable relief are due to be dismissed.[3]

## IV. Conclusion

For the foregoing reasons, Progressive's motion [22] to dismiss is granted in part and denied in part. It is granted as to Brown's claim for breach of contract based on conformity with the Georgia Total Loss

---

[3] Progressive also argues that Brown's declaratory judgment claim is duplicative of his breach of contract claim and is due to be dismissed for this additional reason. "It is common in the Eleventh Circuit for District Courts to dismiss requests for declaratory judgment when a plaintiff asserts a corresponding claim for breach of contract." *Aria Dental Grp., LLC v. Farmers Ins. Exch.*, 528 F. Supp. 3d 1359, 1363 (M.D. Ga. 2021) (citation omitted). "A petition seeking a declaratory judgment that alleges breach of duties and obligations under the terms of a contract and asks the court to declare those terms breached is nothing more than a petition claiming breach of contract. This is true even in the class action context." *Id.* (internal citations omitted). As in *Aria Dental*, Brown "merely seeks for the Court to declare that Defendants breached their contracts. Thus, the declaratory judgment claim must be dismissed as duplicative of the breach of contract claim." *Id.* at 1363–64.

Regulation. It is also granted as to Brown's claims for equitable relief and a declaratory judgment. It is denied as to all other counts of the amended complaint.

Additionally, Mitchell's motion [23] to dismiss is granted in full. The Clerk is directed to terminate Mitchell as a party to this action.

IT IS SO ORDERED this 15th day of August, 2022.

_____
Timothy C. Batten, Sr.
Chief United States District Judge