## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
### (Atlanta Division)

| | |
|---|---|
| **KEDDRICK BROWN,** individually and on behalf of a class of similarly situated persons as defined herein, )<br><br>**Plaintiffs,** )<br><br>**v.** )<br><br>**PROGRESSIVE MOUNTAIN INSURANCE COMPANY** )<br><br>**Defendants** ) | **CIVIL ACTION CONSOLIDATED CASE NO.**<br><br>**3:21-cv-00175-TCB** |

**MICHELLE BOST**,
individually and on behalf of all
others similarly situated,

         Plaintiffs,

    vs.

**PROGRESSIVE PREMIER
INSURANCE COMPANY OF
ILLINOIS**,

         Defendant.

## AMENDED CONSOLIDATED CLASS ACTION
## COMPLAINT

Plaintiffs Keddrick Brown ( "Brown") and Michelle Bost ("Bost"), by and

through undersigned counsel, pursuant to the Court's Order consolidating the above-styled actions and files this Amended Consolidated Class Action Complaint, individually and on behalf of all others similarly situated, against Progressive Premier Insurance Company of Illinois ("Progressive Premiere") and Progressive Mountain Insurance Company (hereafter "Progressive Mountain") and alleges as follows:

## INTRODUCTION

1.      This is a consolidated class action on behalf of Plaintiffs Brown and Bost (jointly "Plaintiffs") and all other similarly situated claimants in Georgia who received a payment for the loss of a totaled vehicle from Defendants Progressive Premiere and Progressive Mountain (jointly "Defendants" or "Progressive"), where Defendants improperly and illegally used valuation reports prepared by Mitchell International, Inc. ("Mitchell") to determine the actual cash value ("ACV") of the loss vehicles.  Through Mitchell's valuation, Defendants systemically thumb the scale when calculating the ACV of claimants' loss vehicles by applying so-called "Projected Sold Adjustments" that are: (a) arbitrary; (b) contrary to appraisal standards and methodologies; (c) not based in fact, as they are contrary to the used car industry's market pricing and inventory management practices; (d) not applied by the major competitor of Defendants' vendor Mitchell; (e) contrary to law and the policy contract; and (f) on information and belief, not applied by Defendant and Mitchell to insureds in other states like California and Washington.

2.      In the event of a "total loss" to an insured vehicle—*i.e.*, where repair of the vehicle is impossible or uneconomical—Defendants' uniform insurance policies with Plaintiffs and all putative members of the Class (defined below) promise to pay for the loss, limited to the ACV of the vehicle. Attached as Exhibit A is a copy of Brown's Policy ("Policy") with Progressive Mountain and as Exhibit "B" is a copy of Bost's policy with Progressive Premiere, which are materially identical to the policy for all members of the putative Class.

3.      When valuing total loss claims for vehicles, it is improper for an automobile insurance company, such as Defendants, to undervalue and underpay the claims by manipulating the data used to determine the ACV of the vehicles. Specifically, under its insurance policy terms and applicable Georgia law, Defendants have a duty to pay, and represents that it will pay, the ACV of a loss vehicle when adjusting total loss claims.

4.      Notwithstanding these obligations and representations, Defendants fail to fulfill its obligations by taking advantage of a valuation process that employs improper adjustments to reduce the value of comparable vehicles specified in the valuation reports, in turn reducing the valuation of the total loss vehicles and the corresponding claim payment to the insured or claimant.

5.      Specifically, Defendants, through Mitchell, systemically apply a so-called "Projected Sold Adjustment" that results in a significant downward adjustment to the base values of the comparable vehicles used to calculate the ACV

3

of Plaintiffs' and Class members' total loss vehicles. This reduction is contrary to appraisal standards and methodologies and is not based in fact, as it is contrary to the used car industry's market pricing and inventory management practices. The adjustment is applied to each of the "comparable vehicles" on top of adjustments for differences such as mileage, options, and equipment. The only purported explanation for the downward adjustment appears on the last page of the valuation reports (See Exhibit "C" Brown valuation report and Exhibit "D" Bost Valuation Report) and is a general, nondescript statement claiming that the reduction is to "reflect consumer purchasing behavior (negotiating a different price than the listed price)." Exhibit D at p. 8.

6.      "Project Sold Adjustment" deductions are used by Defendants when determining vehicle settlement values for total loss claims throughout Georgia. These deductions are arbitrary, unsupported, and inconsistent with the realities of today's used vehicle market. As described herein, Progressive's settlement of total loss claims based on valuation reports containing the challenged "Projected Sold Adjustment" deductions results not only in a breach of Progressive's standard form policies with insureds, but also violates governing Georgia law that requires insurers to pay the *actual cost* for the insured to purchase a comparable automobile when total loss claims are settled. Progressive's uniform use of "Projected Sold Adjustment" deductions in paying total loss claims runs directly afoul of the policies as written.

7.     Neither Progressive nor Mitchell has ever conducted any study or research to determine whether such "consumer purchasing behavior" exists and impacts ACV in the modern used-car market. Worse than this complete lack of curiosity is that Defendants thumbs the scale by discarding vast amounts of relevant data that contradict applying a Projected Sold Adjustment. For example, until July 2021, Defendants, through its vendors, simply threw out all data where the list price equaled or exceeded the sold price. And to this day, Defendants persist in excluding from Projected Sold calculations some data where the list price equaled sold price and all data where the sold price exceeds the list price, even though examples abound of dealerships that charge more than advertised price to customers purchasing a vehicle with cash—*i.e.* not providing the dealer the opportunity to profit through financing the sale or acquiring a trade-in—which is particularly relevant to the inquiry of determining a vehicle's actual ***cash*** value. Defendants fail to control for whether the vehicle was purchased with cash, or whether there were ancillary purchases or transactions that may influence the "sales price" but not the ACV (e.g., whether the customer traded in a vehicle at time of purchase, bought an extended warranty or service plan, or financed the purchase).

8.     Nevertheless, Defendants apply a Projected Sold Adjustment to the advertised (or listed) price of comparable vehicles when calculating the ACV of total-loss vehicles. For Plaintiffs Brown, "Projected Sold Adjustment" off the list price for each of the four comparable vehicles resulted in the "Base Value" (i.e.,

what the average of the four comps show as the value) for Plaintiffs' vehicle being $830.50 lower than had the "Projected Sold Adjustment" deductions not been taken.

9. For Plaintiffs Bost, the Projected Sold Adjustment was approximately 8.8% of each comparable vehicle's value prior to adjustments.

10. To arrive at the Projected Sold Adjustment amount, however, Defendants, through third-party vendors, and as set forth above, categorically excludes transactions that undermine its flawed thesis: for example, transactions where the sold price exceeds list price, transactions from dealerships who market themselves as "no-haggle" dealerships, and every transaction where the sold price equaled the advertised price.

11. As explained herein, the used auto market is such that, given the ubiquity of Internet advertising and shopping and developments in sophisticated pricing software, car dealerships simply do not negotiate off of Internet advertised prices. Any difference between a list and sales price does not reflect a negotiation of the vehicle's *cash* value, but rather that a dealer shifted its profits to other components of the transaction: for example, profits made through financing or trade-in or ancillary products described above, or that the dealer applied a generally unavailable discount to the cash value of the vehicle (such as employee discount, loyalty discount, military discount, or friends/family discount). But Progressive ignores these market realities and is content with paying insureds and claimants below-market prices for their totaled vehicles.

12.     To arrive at its conclusion that consumers negotiate down the advertised price, Defendants, through its vendors, intentionally distorts the data, excludes transactions that undercut its false hypothesis, and ignores market realities, all for the purpose of applying a capricious and unjustified Projected Sold Adjustment so as to artificially deflate the value of total-loss vehicles.

13.     Neither Progressive nor Mitchell provide any explanation, illustration, or data in its valuation reports that legally support or justify any "Projected Sold Adjustment" deduction, and certainly no support for the specific downward adjustments used in Plaintiffs' valuation report. Rather, the only explanation or mention of the "Projected Sold Adjustment" is buried on the last page of the report, stating: "Projected Sold Adjustment – an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price).

14.     This pattern and practice of undervaluing comparable and total loss vehicles when paying automobile total loss claims through these arbitrary, unsupported, unjustified adjustments, which benefits the insurer at the expense of the insured, violates Defendants' policies with its insureds. Defendants' conduct as described herein is not random or isolated, but rather is part of a systematic and uniform protocol followed when total loss claims are settled and paid in the State of Georgia. Because of the uniform nature of the Defendants' conduct, Plaintiffs seeks class action status on behalf of a class of similarly situated Progressive insureds as defined herein

15.     Upon information and belief, there is no support for the downward "Project Sold Adjustment" deductions. Upon information and belief, the downward "Projected Sold Adjustment" deductions are illusory, unsupported, wholly arbitrary, and utilized by Progressive and Mitchell simply to save Progressive dollars in the settlement of first-party total loss claims. Further, nothing in the Plaintiffs' policies or Georgia law allows such a deduction.

16.     Neither Mitchell nor Progressive have any information on the condition of the advertised vehicles listed online. Nor do they have information on any dealers' willingness to negotiate price reductions on those vehicles and no information on the insured's negotiation abilities. Despite the vehicles advertised on the internet having significantly different list prices, Progressive and Mitchell deduct high dollar amounts off the comparable vehicles' list price for its "Project Sold Adjustment" deduction. These "Project Sold Adjustment" deductions are not calculated to, and do not result in, values that approximate actual sales prices or actual cash value, but rather uniformly and intentionally result in a "Base Value" that is less than the actual cost to purchase a comparable automobile.

**PARTIES**

17.     Plaintiff Michelle Bost, at all relevant times, was a Georgia citizen. At all relevant times, Plaintiffs was contracted with Progressive Premiere for automobile insurance. On or about August 10, 2017, Plaintiffs was in a car wreck and Defendant deemed her vehicle to be a total loss.

18.     Plaintiff Brown was at all relevant times a Georgia citizen. At all relevant times, Plaintiffs was contracted with Progressive Mountain for automobile insurance. On or about May 10, 2021, Plaintiffs was in a car wreck and Defendant deemed his vehicle to be a total loss.

19.     Defendant Progressive Premier Insurance Company of Illinois is an Ohio company with its principal place of business in Ohio. Defendant Progressive Premier Insurance Company of Illinois provides insurance coverage throughout the United States for first-party property damage under collision and/or comprehensive coverage.

20.     Defendant Progressive Mountain Insurance Company is an Ohio company with its principal place of business in Ohio. Defendant Progressive Mountain Insurance Company provides insurance coverage throughout the United States for first-party property damage under collision and/or comprehensive coverage

## JURISDICTION AND VENUE

21.     Minimal diversity exists under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441(a)-(b), and 1453. Plaintiffs and the proposed class members are citizens of the State of Georgia. Defendants are both  Ohio Corporations and both have their corporate headquarters in Ohio, and, at all relevant times hereto, Defendants were engaged in the business of marketing and selling insurance policies and adjusting insurance claims in the State of Georgia.

22.     Plaintiffs estimate that there are more than 100 putative class members, and the aggregate compensatory damages (in the amount of the Projected Sold Adjustment that were deceptively deducted), claimed by Plaintiffs and the Class are estimated in good faith to exceed $5,000,000.00.

23.     Venue is proper in this District under 28 U.S.C. § 1391, as a substantial portion of the conduct giving rise to Plaintiffs' claims occurred in this District, and Defendants transact business in this District.

## FACTUAL ALLEGATIONS

### Defendants' Systemic Application of Projected Sold Adjustments

24.     On August 10, 2017, Bost was involved in a car wreck and sustained physical damage to her vehicle. At the time of the car wreck, Bost was contracted with Progressive Premiere.  On May 10, 2021, Brown was involved in a car wreck and sustained physical damage to his car.  At the time of this car wreck, Brown was contracted with Progressive Mountain.

25.     Like all members of the putative Class, Plaintiffs made property damage claims to Defendant.

26.     Pursuant to the same policies and procedures, Defendants declared Plaintiffs' vehicles to be a total loss and purported to pay the Plaintiffs the ACV of their loss vehicle, as it promised and represented it would under the uniform provisions of its insurance policies and Georgia law.

27.     When calculating its valuations and claims payments, Defendants systemically employs a routine "total loss settlement process." This process involves obtaining a "Vehicle Valuation Report" from Mitchell and relying upon the valuation provided by as the ACV amount owed under the policy. Defendants prepared a Mitchell Vehicle Valuation Report for Bost dated August 17, 2017, and for Brown dated May 25, 2021. *See* Exhibits C and D.

28.     The Mitchell Vehicle Valuation Reports used by Defendants during the relevant period followed the same process, provided and disclosed the same or substantially the same material information, and presented that material information in the same or substantially the same format. These valuation reports purport to contain values for comparable vehicles recently sold or for sale in the claimant's geographic area. The reports also contain a purported valuation for the loss vehicle based upon advertisements for comparable vehicles listed in the report. The report then adjusts the advertised prices of those comparable vehicles to account for differences in equipment, mileage, and vehicle configuration. Exhibit D at p. 8.

29.     In addition, however, the valuation reports used by Defendants make a further adjustment to each loss vehicle called a "Projected Sold Adjustment." For Plaintiff Bost, Projected Sold Adjustments in the amounts of -$884.00, -$751.00, and - $464.00 respectively, were applied to each of the three comparable vehicles. Exhibit B at pp. 5-7. For Plaintiff Brown, Projected Sold Adjustments in the amounts of -$726.00, -$725.00, -$722.00, and -$1,113.00 were applied to each of the

comparable vehicles.

30.    Defendants provides no data specific to the comparable vehicles or any explanation of industry practices in its valuation reports to support *any* Projected Sold Adjustment, much less the specific downward adjustments used in Plaintiffs' valuation reports. Instead, the *only* explanation is buried on the last page of each report, stating in full: "Projected Sold Adjustment – an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)." Exhibit D at p. 8.

31.    In truth, Defendants' Projected Sold Adjustments do not reflect market realities (the context in which "consumer behavior" occurs) and run contrary to customary automobile dealer practices and inventory management, where list prices are priced to market to reflect the intense competition in the context of Internet pricing and comparison shopping. Before the ubiquity of online advertising and shopping, "advertised" prices had very little to do with eliciting car buyers to particular dealerships—instead, car buyers generally went to their local used car dealership that had the desired vehicle in stock for sale. The "advertised" price was simply whatever price was listed on the physical window. And consumers could not, as they can now, easily compare that price to Internet advertisements of the same vehicle offered by competitors.

32.    As such, dealerships generally priced vehicles above market knowing that some consumers might be poor negotiators and they would realize an inflated

profit on those sales. This above-market "window" price obviously allowed for negotiation, and a downward negotiation would often occur.

33.     But during the Class Period, that is simply no longer how the used car market operates. Now, given the need for Internet advertising, the prevalence of Internet shopping and consumer behavior, developments in sophisticated pricing software universally used by car dealerships, and the ease with which consumers can compare the advertised prices of identical vehicles across multiple competing dealerships, used car dealerships no longer price vehicles above market with room for—and the expectation of—negotiation. Instead, car dealerships use sophisticated pricing software—which provides the advertised prices of all competitors; the average "turn" of a given year, make and model; the amount for which vehicles have sold during a given time-period; etc.—and now appraise vehicles before acquiring them to price them to market and do not negotiate from that price.

34.     This makes sense, because if a car dealership priced a vehicle above market with room for negotiation, consumers would simply not go to that dealership. This is because consumers can easily compare advertised prices, and, would seek out the vehicle priced to market, rather than the same vehicle priced at a higher amount (i.e., above market). And obviously, given the choice between paying less or paying more for an identical vehicle, consumers will choose to pay less.

35.     As such, a negotiated discount off the cash price is highly atypical and is not proper to include in determining ACV. The inclusion of this significant

downward adjustment purportedly to "reflect consumer purchasing behavior" is particularly improper in the context of this action—insureds who have suffered a total loss of their vehicle and need to procure a replacement have limited time to search out the illusory opportunity to obtain the below-market deal Defendant assumes always exists without any explanation or support.

36.    Defendants' Projected Sold Adjustments are contrary to appraisal standards. There are multiple generally recognized and acceptable methodologies for determining ACV, including use of comparable vehicles. Defendant begins the process of valuing loss vehicles using comparative methodology but improperly deviate from that process by thumbing the scales in against the insured. Defendant documents the loss vehicles and each comparable vehicle's mileage, options, and trim, which are compared in the report, and makes dollar adjustments accordingly. Plaintiffs does not challenge these documented adjustments. At this stage of the process, however, Defendant abandons the comparative methodology and applies adjustments that are contrary to proper appraisal methodologies for determining ACV. Appraisers use advertised prices and only make adjustments based on observed and verifiable data; appraisal standards do not permit arbitrary adjustments from the advertised price based upon undocumented and unverifiable projections.

37.    Defendant thumbs the scale by discarding vast amounts of relevant data that contradict applying a Projected Sold Adjustment and by failing to control for material variables, including whether there were ancillary purchases or transactions

that may influence what is recorded as the "sales price" but does not influence the ACV (e.g., whether the customer traded in a vehicle at time of purchase, bought an extended warranty or service plan, or financed the purchase).

38.     Until July 2021, Defendant excluded from the calculation of the Projected Sold Adjustment all transactions in which the list price of a vehicle equaled the sold price.

39.     Even after July 2021, Defendants still exclude some transactions in which the list price of a vehicle equals the sold price.

40.     Defendants has excluded and continues to exclude from the calculation of the Projected Sold Adjustment all transactions in which the sold price of a vehicle is greater than the list price.

41.     Without having performed any investigation or study, Defendants simply assume all such transactions are anomalies.

42.     Likewise, Defendants have not exercised even a modicum of curiosity to investigate whether market realities support the application of a Projected Sold Adjustment. Nor does Defendant or its vendors attempt to verify—even a single time—for those transactions where the advertised price exceeded sold price, whether the reason for the reduction was negotiation of the cash price of the vehicle and not some other (far more likely) reason, some of which are discussed herein.

43.     Neither Progressive's form Policy nor Georgia law permit reducing a vehicle's value for invented or arbitrarily assumed justifications.

44.    Moreover, the accuracy of Defendants' data is, at best, suspect, as it contains a significant number of transactions where the advertised date in the database comes *after* the sold date. As a matter of simply chronology, it makes no sense to advertise a vehicle after it is sold. But here, too, Defendant makes no effort to control for this obvious flaw in the data.

45.    These irremediable, and unjustifiable, errors, of course, skew the data in favor of Defendant to the detriment of the insureds.

46.    Moreover, examples abound demonstrating the glaring error of Defendants' cherry-picking practices.

47.    For example, related to the exclusion of sales prices greater than list prices, all advertised prices for comparable vehicles listed in Defendants' valuation reports are scraped from Internet sources—specifically Cars.com, Autotrader.com, Vast.com, and TrueCar.com.

48.    The advertised prices many dealerships publish on these websites include discounts for consumers who are financing and providing a trade-in. Thus, a consumer who was not financing the vehicle through the dealership or who was not trading in a vehicle—obviously, insureds who sustained a total loss almost certainly are not trading a vehicle when purchasing a replacement vehicle—would have to pay in cash *more* than the price listed on sources where Mitchell scrapes advertisements for comparable vehicles. In determining the actual **cash** value of Plaintiffs' and class members' totaled vehicles, there is no justification for

Defendant to have excluded those transactions from calculating the Projected Sold Adjustment, while only including transactions where the sold price was recorded as less than the list price.

49.    Simply put, there is no justification for Progressive to exclude such transactions as outliers or mistakes when justifying how it calculates the amount of the so-called Projected Sold Adjustment.

50.    Doing so serves only to skew the data to meet Defendants' unjustified, unsupported, and uninvestigated assumption that the list price of comparable vehicles should always be reduced to pay insureds and claimants less.

51.    Defendants further fail to control whether the vehicle was purchased with discounts unavailable to the public (e.g., employee discounts).

52.    Defendants also fail to control for whether the vehicle was purchased with cash, or whether there were ancillary purchases or transactions that may influence the recorded "sales price" but not the ACV (e.g., whether the customer traded in a vehicle at the time of purchase, bought an extended warranty or service plan, or financed the purchase).

53.    In these instances, the ACV of the vehicle remains its price to market; the dealership simply transferred the anticipated profit through either the sale of an optional ancillary product or by reducing what it would have offered in trade-in value.

54.    The impropriety and arbitrariness of Defendants' Projected Sold

Adjustments are further demonstrated by the fact that Mitchell's primary competitor in providing valuation reports to insurance companies—CCC Intelligent Solutions, Inc.—does not apply projected sold adjustments in this manner. Instead, CCC Intelligent Solutions uses list prices.

55.    On information and belief, the impropriety and arbitrariness of Defendants' Projected Sold Adjustments are further demonstrated by the fact that Progressive Group entities do not apply these adjustments when valuing total losses in California or Washington. There is no justification for applying these adjustments when valuing total losses in Georgia while not subjecting California and Washington claimants to the same negative adjustments.

56.    Plaintiffs and each member of the proposed Class were damaged by Defendants' application of these Projected Sold Adjustments because they were not paid the ACV they would have received had Defendants applied proper methodologies and appraisal standards.  Were it not for these improper adjustments, the "Base Value" in each valuation report would have been higher, resulting in a higher "settlement value" and in turn a higher payment by Defendants for ACV. Specifically, Specifically, for Plaintiff Bost, were it not for this improper adjustment, the payment of ACV by Defendant would have been $699.67 higher, before adding the related increase in payments for applicable sales taxes and for Plaintiff Brown, were it not for this improper adjustment, the payment of ACV by Defendant would have been $830.50 higher, before adding the related increase in payments for

applicable sales taxes.

## CLASS ACTION ALLEGATIONS

57.     Plaintiffs brings this action individually and as a class action under Fed.

R. Civ. P 23(a) and (b), on behalf of the following proposed Class:

> All Georgia citizens insured by Defendants who, from the earliest
> allowable time through the date an Order granting class certification is
> entered, received compensation for the total loss of a covered vehicle,
> where that compensation was based on a valuation report prepared by
> Mitchell and the ACV was decreased based upon Projected Sold
> Adjustments to the comparable vehicles used to determine ACV.

58.     Excluded from the Class are Defendants and any of its members,

affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns;

governmental entities; and the Judge(s) and Court staff assigned to this case and their

immediate family members.

59.     Plaintiffs reserves her right to amend the Class definition if discovery

and further investigation reveal that any Class should be expanded or narrowed,

divided into additional subclasses, or modified in any other way.

60.     **Numerosity.** The members of the Class are so numerous that individual

joinder of all members of the Class is impracticable. While Plaintiffs are informed

and believes that there are thousands of members in the Class, the precise number is

unknown to Plaintiffs but may be ascertained from Defendants' books and records.

Members of the Class may be notified of the pendency of this action by recognized

Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

61. **Commonality and Predominance.** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a. Whether Defendants systemically used Mitchell's Vehicle Valuation Reports in adjusting total loss claims to determine ACV;

b. Whether the Mitchell Vehicle Valuation Reports included Projected Sold Adjustments to the value of the comparable vehicles that reduced the base value, and thus the claim amount paid by Defendants for the ACV of Plaintiffs' and members of the Class total loss vehicles;

c. Whether Progressive breached policies of insurance with Plaintiff and other Georgia insureds by making downward adjustments for a purported "Projected Sold Adjustment" as described herein

d. Whether Progressive's total loss settlement practices as described herein violate governing Georgia law;

e. Whether Defendants' improper practices injured Plaintiffs and members of the Class;

f. Whether Defendants' acts violated its obligations under the policy of insurance;

g. Whether Plaintiffs and the Class are entitled to compensatory damages,

and if so, the calculation of damages; and

62. **Typicality.** The claims of the Plaintiffs, who are the representatives of the Class herein, are typical of the claims of the proposed Class, in that the claims of all members of the proposed Class, including the Plaintiffs, depend on a showing of the acts of Defendants giving rise to the right of Plaintiffs to the relief sought herein. There is no conflict between the individually named Plaintiffs and the other members of the proposed Class with respect to this action, or with respect to the claims for relief set forth herein.

63. **Adequacy of Representation.** Plaintiffs are an adequate representative of the Class because Plaintiffs' interests do not conflict with the interests of the other Class members whom she seeks to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

64. **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, such that it would be

impracticable for the members of the Class to individually seek redress for Defendants' wrongful conduct. Even if the members of the Class could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT 1
## BREACH OF CONTRACT

65.     Plaintiffs hereby repeats and realleges all preceding paragraphs contained herein.

66.     This claim is brought by Plaintiffs on behalf of the Class.

67.     Plaintiffs made claim for property damage on their Progressive insurance policies.

68.     At the time of their claims, and in the time since, Plaintiffs have performed all obligations under their policies of insurance and were entitled to the benefits they contracted for in their policies. The Policies provide in pertinent part the following:

**INSURING AGREEMENT—COLLISION COVERAGE**

If **you** pay the premium for this coverage, **we** will pay for sudden, direct and accidental loss to a:
1.   **covered auto**, including an attached **trailer**; or
2.   **non-owned auto**;
and its **custom parts or equipment**, resulting from **collision**.

In further addressing what is paid for collision coverage, the Policy states:

**LIMITS OF LIABILITY**

1.   The limit of liability for loss to a **covered auto**, **non-owned auto**, or **custom parts or equipment** is the lowest of:
     a.   the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;
     b.   the amount necessary to replace the stolen or damaged property reduced by the applicable deductible;
     c.   the amount necessary to repair the damaged property to its pre-loss condition reduced by the applicable deductible; or
     d.   the Stated Amount shown on the **declarations page** for that **covered auto**.

This section goes on to state "The actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs."

As such, Progressive has violated breached its contract with Plaintiff and class members by, among other things:

> a.   improperly paying amounts on total loss claims by taking unexplained, arbitrary, and unverified "Projected Sold Adjustment" deductions as described herein;
>
> b.   failing to pay total loss automobile values in accordance with its standard form policies and in accordance with Georgia law governing total loss claims;

23

c.  not adhering to the duty of good faith and fair dealing implied in every contract, to the extent discretion was to be exercised by Progressive;

d.  improperly taking unverified, unexplained, and arbitrary deductions for "Projected Sold Adjustments" from total loss vehicle valuates.

69.    Through the use of improper and unfounded Projected Sold Adjustments in Mitchell vehicle valuation reports, as detailed above, Defendants handled, adjusted, and paid Plaintiffs' claims, and the claims of the members of the proposed Class, for less than the ACV required by the insurance contracts.

70.    As a direct result of Defendants' breaches, Plaintiffs and members of the Class sustained actual damages. Brown's damages are at least $830.50 and Bost's damages are at least $699.67 (both before calculation of additional sales tax benefits), plus pre-judgment and post-judgment interest.

**COUNT 2**
**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

71.    Plaintiffs hereby repeats and realleges all preceding paragraphs contained herein.

72.    This claim is brought by Plaintiffs on behalf of the Class.

73.    Every contract, including the Policy, contains an implied covenant of

24

good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

74.     Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

75.     To the extent the Policy provides Defendants with in calculating the ACV of an insured's total-loss vehicle, Defendants exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of their total-loss payments to insureds, as alleged herein.

76.     Defendants breached the covenant of good faith and fair dealing by, *inter alia*:

   a. Intentionally inventing and applying Projected Sold Adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

b.  Failing to conduct ***any*** investigation or study or research into whether the Projected Sold Adjustment (i) reflects the used auto market, (ii) is based on accurate data or extrapolations, (iii) is consistent with accepted appraisal methods and practices, or (iv) has any justification whatsoever;

c.  Failing to pay insureds the ACV of their total-loss vehicles;

d.  Interpreting the terms and conditions of their insurance policies in an unreasonable manner solely in an effort to understate the value of total- loss vehicles and avoid paying insureds the ACV on their total-loss claims;

e.  Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

77.    Defendants' breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a Projected Sold Adjustment

## JURY DEMAND

Plaintiffs demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully requests that this Court:

a)      determine that this action may be maintained as a class action under Federal Rule of Civil Procedure 23, certify the proposed Class for class treatment, appoint Plaintiffs as class representatives for the Class, and appoint undersigned counsel as Class Counsel;

b)      enter an order finding that Defendants' actions described herein constitute breaches of the express terms of its policies of insurance;

c)      award Plaintiffs and members of the Class actual damages according to proof;

d)      award pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

e)      award reasonable attorney's fees and litigation costs and expenses pursuant to applicable law; and

f)      grant such other legal and equitable relief as the Court may deem appropriate, including specific performance as an alternative to damages.


   Respectfully Submitted this 18th day of October, 2022

/s/ *Michael J Lober*
Michael J. Lober
Georgia Bar No.: 455580
William Greg Dobson
Georgia Bar No.: 237770
**LOBER & DOBSON, LLC**
Robert E. Lee Building, Suite 201
830 Mulberry Street
Macon, Georgia 31201

Telephone: (478) 745-7700
wgd@lddlawyers.com
mjlober@lddlawyers.com

R. Brent Irby
Georgia Bar No.: 224232
**IRBY LAW, LLC**
2201 Arlington Avenue S
Birmingham, AL  35205
Email: birby@mhcilaw.com


/s/ *Andrew J. Shamis*
Andrew J. Shamis, Esq.
**Shamis & Gentile, P.A.**
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
ashamis@shamisgentile.com

Scott Edelsberg, Esq.
Christopher Gold, Esq. (to be admitted *pro hac vice pending*)
**EDELSBERG LAW, P.A.**
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
scott@edelsberglaw.com
chris@edelsberglaw.com

Hank Bates (to be admitted *pro hac vice pending*)
Lee Lowther (to be admitted *pro hac vice pending*)
**CARNEY BATES & PULLIAM, PLLC**
519 W. 7th Street
Little Rock, AR 72201
Telephone: (501) 312-8500
Fax: (501) 312-8505
hbates@cbplaw.com
llowther@cbplaw.com


***Counsel for Plaintiffs and the Proposed Class***

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1</u>

I hereby certify that the foregoing **AMENDED CONSOLIDATED COMLAINT** was prepared in Times New Roman 14-point font, double-spaced, with a top margin of not less than 1.5 inches and a left margin of not less than 1 inch.

Submitted October 18, 2022.

/s/ *Michael J. Lober*
Michael J. Lober
*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 18, 2022, a copy of the **PLAINTIFFS' AMENDED CONSOLIDATED COMPLAINT** was filed electronically. Notice of this filing will be sent by the Court's electronic filing systems to all counsel of record.

*/s/ Michael J. Lober*
*Michael J. Lober*
*Counsel for Plaintiffs*

EXHIBIT "A"

# GEORGIA
## AUTO POLICY

Form 9611A GA (05/15)
version 2.0



**INSURING AGREEMENT** ............................................................................ 1

**GENERAL DEFINITIONS** ........................................................................... 1

**PART I—LIABILITY TO OTHERS**
Insuring Agreement ......................................................................................3
Additional Definitions....................................................................................3
Additional Payments......................................................................................3
Exclusions .....................................................................................................4
Limits of Liability............................................................................................5
Financial Responsibility Laws .......................................................................6
Other Insurance ............................................................................................6
Out-of-State Coverage ..................................................................................7

**PART II—MEDICAL PAYMENTS COVERAGE**
Insuring Agreement ......................................................................................7
Additional Definitions....................................................................................7
Exclusions .....................................................................................................8
Limits of Liability............................................................................................9
Unreasonable or Unnecessary Medical Expenses .......................................9
Other Insurance ..........................................................................................10

**PART III—UNINSURED MOTORIST COVERAGE**
Insuring Agreement ....................................................................................10
Additional Definitions..................................................................................10
Exclusions ...................................................................................................11
Limits of Liability..........................................................................................12
Other Insurance ..........................................................................................14

**PART IV—DAMAGE TO A VEHICLE**
Insuring Agreement—Collision Coverage ..................................................14
Insuring Agreement—Comprehensive Coverage .......................................14
Insuring Agreement—Additional Custom Parts or
   Equipment Coverage ..............................................................................15
Insuring Agreement—Rental Reimbursement Coverage............................15
Insuring Agreement—Loan/Lease Payoff Coverage ..................................16
Insuring Agreement—Pet Injury Coverage .................................................16
Additional Definitions..................................................................................17
Exclusions ...................................................................................................17
Limits of Liability..........................................................................................19
Payment of Loss..........................................................................................20
No Benefit to Bailee ....................................................................................20
Loss Payable Clause...................................................................................21
Other Sources of Recovery.........................................................................21
Appraisal .....................................................................................................21

**PART V—ROADSIDE ASSISTANCE COVERAGE**

    Insuring Agreement ........................................................................... 22

    Additional Definitions......................................................................... 22

    Exclusions ........................................................................................ 22

    Unauthorized Service Provider........................................................... 23

    Other Insurance ............................................................................... 23

**PART VI—DUTIES IN CASE OF AN ACCIDENT OR LOSS**........................... 23

**PART VII—GENERAL PROVISIONS**

    Policy Period and Territory.................................................................. 24

    Changes.......................................................................................... 24

    Duty to Report Changes .................................................................... 25

    Settlement of Claims ........................................................................ 25

    Terms of Policy Conformed to Statutes .............................................. 25

    Transfer of Interest .......................................................................... 25

    Fraud or Misrepresentation ............................................................... 25

    Payment of Premium and Fees .......................................................... 26

    Cancellation .................................................................................... 27

    Cancellation Refund......................................................................... 29

    Nonrenewal .................................................................................... 29

    Automatic Termination ..................................................................... 29

    Legal Action Against Us.................................................................... 29

    Our Rights to Recover Payment.......................................................... 29

    Joint and Individual Interests............................................................. 30

    Bankruptcy ..................................................................................... 31

## INSURING AGREEMENT

In return for **your** payment of the premium, **we** agree to insure **you** subject to all the terms, conditions and limitations of this policy. **We** will insure **you** for the coverages and the limits of liability shown on this policy's **declarations page**. **Your** policy consists of the policy contract, the **declarations page**, and all endorsements to this policy.

## GENERAL DEFINITIONS

The following definitions apply throughout the policy. Defined terms are printed in bold-face type and have the same meaning whether in the singular, plural, or any other form.
1. "**Additional auto**" means an **auto you** become the owner of during the policy period that does not permanently replace an **auto** shown on the **declarations page** if:
    a. **we** insure all other **autos you** own;
    b. the **additional auto** is not covered by any other insurance policy;
    c. **you** notify **us** within 30 days of becoming the owner of the **additional auto**; and
    d. **you** pay any additional premium due.
    An **additional auto** will have the broadest coverage **we** provide for any **auto** shown on the **declarations page**. If **you** ask **us** to insure an **additional auto** more than 30 days after **you** become the owner, any coverage **we** provide will begin at the time **you** request coverage.
2. "**Auto**" means a land motor vehicle:
    a. of the private passenger, pickup body, or cargo van type;
    b. designed for operation principally upon public roads;
    c. with at least four wheels; and
    d. with a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications.
    However, "**auto**" does not include golf carts, step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area.
3. "**Auto business**" means the business of selling, leasing, repairing, parking, storing, servicing, delivering or testing vehicles.
4. "**Bodily injury**" means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.
5. "**Covered auto**" means:
    a. any **auto** or **trailer** shown on the **declarations page** for the coverages applicable to that **auto** or **trailer**;
    b. any **additional auto**;
    c. any **replacement auto**; or
    d. a **trailer** owned by **you**.
6. "**Declarations page**" means the document showing **your** coverages, limits of liability, **covered autos**, premium, and other policy-related information. The **declarations page** may also be referred to as the Auto Insurance Coverage Summary.
7. "**Occupying**" means in, on, entering or exiting.

1

8. "**Personal vehicle sharing program**" means a system or process, operated by a business, organization, network, group, or individual, that facilitates the sharing of private passenger motor vehicles for use by individuals, businesses, or other entities.

9. "**Rated resident**" means a person residing in the same household as **you** at the time of the loss who is not a **relative**, but only if that person is both:
   a. listed in the "Drivers and household residents" section on the **declarations page**; and
   b. not designated as either an "Excluded" or a "List Only" driver.

10. "**Relative**" means a person residing in the same household as **you**, and related to **you** by blood, marriage or adoption, and includes a ward, stepchild, or foster child. **Your** unmarried dependent children temporarily away from home will qualify as a **relative** if they intend to continue to reside in **your** household.

11. "**Replacement auto**" means an **auto** that permanently replaces an **auto** shown on the **declarations page**. A **replacement auto** will have the same coverage as the **auto** it replaces if the **replacement auto** is not covered by any other insurance policy. However, if the **auto** being replaced had coverage under Part IV—Damage To A Vehicle, such coverage will apply to the **replacement auto** only during the first 30 days after **you** become the owner unless **you** notify **us** within that 30-day period that **you** want **us** to extend coverage beyond the initial 30 days. If the **auto** being replaced did not have coverage under Part IV—Damage To A Vehicle, such coverage may be added, but the **replacement auto** will have no coverage under Part IV until **you** notify **us** of the **replacement auto** and ask **us** to add the coverage.

12. "**Ride-sharing activity**" means the use of any vehicle to provide transportation of persons or property in connection with a **transportation network company** from the time a user logs on to, or signs in to, any online-enabled application, software, website or system until the time the user logs out of, or signs off of, any such online-enabled application, software, website or system, whether or not the user has accepted any passenger(s) or delivery assignment, including the time the user is on the way to pick up any passenger(s) or property, or is transporting any passenger(s) or property.

13. "**Trailer**" means a non-motorized trailer, including a farm wagon or farm implement, designed to be towed on public roads by an **auto** and not being used:
   a. for commercial purposes;
   b. as an office, store, or for display purposes; or
   c. as a passenger conveyance.

14. "**Transportation network company**" means a corporation, partnership, sole proprietorship, or other entity that uses any online-enabled application, software, website or system to connect drivers with clients or passengers to facilitate and/or provide transportation or delivery services for compensation or a fee.

15. "**We**," "**us**" and "**our**" mean the underwriting company providing the insurance, as shown on the **declarations page**.

16. "**You**" and "**your**" mean:
   a. a person shown as a named insured on the **declarations page**; and
   b. the spouse of a named insured if residing in the same household at the time of the loss. Unless the spouse of the named insured requests to be deleted or excluded from coverage under this policy, a spouse will be deemed to reside

2

in the same household as the married insured for a period of 90 days after the termination of the marriage if the spouse was residing in the household on the date the marriage was declared terminated by a court of competent jurisdiction.

## **PART I—LIABILITY TO OTHERS**

### **INSURING AGREEMENT**

If **you** pay the premium for this coverage, **we** will pay damages for **bodily injury** and **property damage** for which an **insured person** becomes legally responsible because of an accident.

Damages include prejudgment interest awarded against an **insured person**.

**We** will settle or defend, at **our** option, any claim for damages covered by this Part I.

### **ADDITIONAL DEFINITIONS**

When used in this Part I:
1. "**Insured person**" means:
    a. **you**, a **relative**, or a **rated resident** with respect to an accident arising out of the ownership, maintenance or use of an **auto** or a **trailer**;
    b. any person with respect to an accident arising out of that person's use of a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**;
    c. any person or organization with respect only to vicarious liability for the acts or omissions of a person described in a. or b. above; and
    d. any "Additional Interest" shown on the **declarations page** with respect only to its liability for the acts or omissions of a person described in a. or b. above.
2. "**Property damage**" means physical damage to, destruction of, or loss of use of, tangible property.

### **ADDITIONAL PAYMENTS**

In addition to **our** limit of liability, **we** will pay for an **insured person**:
1. all expenses **we** incur in the settlement of any claim or defense of any lawsuit;
2. interest accruing after entry of judgment, until **we** have paid, offered to pay, or deposited in court, that portion of the judgment which does not exceed **our** limit of liability. This does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured person**;
3. the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in an amount exceeding **our** limit of liability, and **we** have no duty to apply for or furnish these bonds;
4. up to $250 for a bail bond required because of an accident resulting in **bodily injury** or **property damage** covered under this Part I. **We** have no duty to apply for or furnish this bond; and
5. reasonable expenses, including loss of earnings up to $200 per day, incurred at **our** request.

3

**EXCLUSIONS — READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART I.**

Coverage under this Part I, including **our** duty to defend, will not apply to any **insured person** for:

1. **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle or trailer while being used:
   a. to carry persons or property for compensation, fee, salary, or wages;
   b. for retail or wholesale delivery; or
   c. for **ride-sharing activity**.
   This exclusion does not apply to shared-expense car pools;
2. any liability assumed under any contract or agreement by **you**, a **relative**, or a **rated resident**;
3. **bodily injury** to an employee of that **insured person** arising out of or within the course of employment. This exclusion does not apply to domestic employees if benefits are neither paid nor required to be provided under workers' compensation, disability benefits, or similar laws;
4. **bodily injury** or **property damage** arising out of an accident involving any vehicle while being maintained or used by a person while employed or engaged in any **auto business**. This exclusion does not apply to **you**, a **relative**, a **rated resident**, or an agent or employee of **you**, a **relative**, or a **rated resident**, when using a **covered auto**;
5. **bodily injury** or **property damage** resulting from, or sustained during practice or preparation for:
   a. any pre-arranged or organized racing, stunting, speed or demolition contest or activity; or
   b. any driving activity conducted on a permanent or temporary racetrack or racecourse;
6. **bodily injury** or **property damage** due to a nuclear reaction or radiation;
7. **bodily injury** or **property damage** for which insurance:
   a. is afforded under a nuclear energy liability insurance contract; or
   b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;
8. any obligation for which the United States Government is liable under the Federal Tort Claims Act;
9. **bodily injury** or **property damage** caused by an intentional act of that **insured person**, or at the direction of that **insured person**, even if the actual injury or damage is different than that which was intended or expected. This exclusion shall not apply to the portion of **bodily injury** or **property damage** that is less than or equal to the minimum limits of liability coverage required by the Georgia Motor Vehicle Safety Responsibility Act, unless the injured person who sustains the **bodily injury** or **property damage** had or has access to recovery from another source, if coverage under this Part I were to be denied;
10. **property damage** to any property owned by, rented to, being transported by, used by, or in the charge of that **insured person**. This exclusion does not apply to a rented residence or a rented garage;
11. **bodily injury** to **you**;

4

12. **bodily injury** to a **relative**. This exclusion shall not apply to the portion of **bodily injury** that is less than or equal to the minimum limits of liability coverage required by the Georgia Motor Vehicle Safety Responsibility Act, unless the injured **relative** had or has access to recovery from another source, if coverage under this Part I were to be denied;

13. **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle owned by **you** or furnished or available for **your** regular use, other than a **covered auto** for which this coverage has been purchased;

14. **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle owned by a **relative** or a **rated resident** or furnished or available for the regular use of a **relative** or a **rated resident**, other than a **covered auto** for which this coverage has been purchased. This exclusion does not apply to **your** maintenance or use of such vehicle;

15. **bodily injury** or **property damage** arising out of **your**, a **relative's**, or a **rated resident's** use of a vehicle, other than a **covered auto**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;

16. **bodily injury** or **property damage** arising out of the use of a **covered auto** while leased or rented to others or given in exchange for any compensation. This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**;

17. **bodily injury** or **property damage** caused by, or reasonably expected to result from, a criminal act or omission of that **insured person**. This exclusion applies regardless of whether that **insured person** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations. This exclusion shall not apply to the portion of **bodily injury** or **property damage** that is less than or equal to the minimum limits of liability coverage required by the Georgia Motor Vehicle Safety Responsibility Act, unless the injured person who sustains the **bodily injury** or **property damage** had or has access to recovery from another source, if coverage under this Part I were to be denied; or

18. **bodily injury** or **property damage** arising out of the use of any vehicle while being used in connection with a **personal vehicle sharing program**.

## LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for liability coverage is the most **we** will pay regardless of the number of:

1. claims made;
2. **covered autos**;
3. **insured persons**;
4. lawsuits brought;
5. vehicles involved in the accident; or
6. premiums paid.

If **your declarations page** shows a split limit:

1. the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person resulting from any one accident;

5

2. subject to the "each person" limit, the amount shown for each accident is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident; and

3. the amount shown for "property damage" is the most **we** will pay for the total of all **property damage** resulting from any one accident.

The "each person" limit of liability applies to the total of all claims made for **bodily injury** to a person and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one accident. However, without changing this limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

No one is entitled to duplicate payments for the same elements of damages.

Any payment to a person under this Part I will be reduced by any payment to that person under Part III—Uninsured Motorist Coverage.

**We** will not pay under this Part I any expenses paid or payable under Part II—Medical Payments Coverage.

If multiple auto policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

An **auto** and attached **trailer** are considered one **auto**. Therefore, the limits of liability will not be increased for an accident involving an **auto** that has an attached **trailer**.

#### FINANCIAL RESPONSIBILITY LAWS

When **we** certify this policy as proof of financial responsibility, this policy will comply with the law to the extent required. The **insured person** must reimburse **us** if **we** make a payment that **we** would not have made if this policy was not certified as proof of financial responsibility.

#### OTHER INSURANCE

If there is any other applicable liability insurance or bond, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for a vehicle or trailer, other than a **covered auto**, will be excess over any other collectible insurance, self-insurance, or bond. **We** will provide insurance on a primary basis if the vehicle is owned by a person, firm, or corporation engaged in the business of selling vehicles at retail, but this applies only if

6

**you**, a **relative**, or a **rated resident** are operating the vehicle and are neither the owner of the vehicle nor the owner's employee. Any insurance **we** provide for use of a **covered auto** by any person other than **you**, a **relative**, or a **rated resident**, will be excess over any other collectible insurance, self-insurance, or bond.

## OUT-OF-STATE COVERAGE

If an accident to which this Part I applies occurs in any state, territory or possession of the United States of America or any province or territory of Canada, other than the one in which a **covered auto** is principally garaged, and the state, province, territory or possession has:
1. a financial responsibility or similar law requiring limits of liability for **bodily injury** or **property damage** higher than the limits shown on the **declarations page**, this policy will provide the higher limits; or
2. a compulsory insurance or similar law requiring a non-resident to maintain insurance whenever the non-resident uses an **auto** in that state, province, territory or possession, this policy will provide the greater of:
    a. the required minimum amounts and types of coverage; or
    b. the limits of liability under this policy.

## PART II—MEDICAL PAYMENTS COVERAGE

### INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay the reasonable expenses incurred for necessary **medical services** received within three years from the date of a **motor vehicle** accident because of **bodily injury**:
1. sustained by an **insured person**; and
2. caused by that **motor vehicle** accident.

**We**, or someone on **our** behalf, will determine:
1. whether the expenses for **medical services** are reasonable; and
2. whether the **medical services** are necessary.

### ADDITIONAL DEFINITIONS

When used in this Part II:
1. "**Insured person**" means:
    a. **you**, a **relative**, or a **rated resident**:
        (i) while **occupying** an **auto**; or
        (ii) when struck by a **motor vehicle** or a trailer while not **occupying** a self-propelled motorized vehicle; and
    b. any other person while **occupying** a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**.
2. "**Medical services**" means medical, surgical, dental, x-ray, ambulance, hospital, professional nursing, and funeral services, and includes the cost of eyeglasses, hearing aids, pharmaceuticals, orthopedics, and prosthetic devices.

7

8. **Motor vehicle** means a land motor vehicle designed for use principally on public roads.

**EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EX-CLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART II.**

Coverage under this Part II will not apply to **bodily injury**:

1. sustained by any person while **occupying** a **covered auto** while it is being used:
   a. to carry persons or property for compensation, fee, salary, or wages;
   b. for retail or wholesale delivery; or
   c. for **ride-sharing activity**.

   This exclusion does not apply to shared-expense car pools;

2. arising out of an accident involving a vehicle while being maintained or used by a person while employed or engaged in any **auto business**. This exclusion does not apply to **you**, a **relative**, a **rated resident**, or an agent or employee of **you**, a **relative**, or a **rated resident**, when using a **covered auto**;

3. to any person resulting from, or sustained during practice or preparation for:
   a. any pre-arranged or organized racing, stunting, speed or demolition contest or activity; or
   b. any driving activity conducted on a permanent or temporary racetrack or race-course;

4. due to a nuclear reaction or radiation;

5. for which insurance:
   a. is afforded under a nuclear energy liability insurance contract; or
   b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;

6. for which the United States Government is liable under the Federal Tort Claims Act;

7. sustained by any person while **occupying** any vehicle or trailer while located for use as a residence or premises;

8. if workers' compensation benefits are available for the **bodily injury**;

9. sustained by any person while **occupying** or when struck by any vehicle owned by **you** or furnished or available for **your** regular use, other than a **covered auto** for which this coverage has been purchased;

10. sustained by any person while **occupying** or when struck by any vehicle owned by a **relative** or a **rated resident** or furnished or available for the regular use of a **relative** or a **rated resident**, other than a **covered auto** for which this coverage has been purchased. This exclusion does not apply to **you**;

11. to **you**, a **relative**, or a **rated resident,** while **occupying** any vehicle, other than a **covered auto**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;

12. to any person while **occupying** a **covered auto** while leased or rented to others or given in exchange for any compensation. This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**;

13. caused directly or indirectly by:
    a. war (declared or undeclared) or civil war;
    b. warlike action by any military force of any government, sovereign or other au-

8

thority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack; or

   c.  insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts;

14. caused by, or reasonably expected to result from, a criminal act or omission of an **insured person**. This exclusion applies regardless of whether the **insured person** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations; or

15. sustained by any person while **occupying** a **covered auto** while being used in connection with a **personal vehicle sharing program**.

## LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for Medical Payments Coverage is the most **we** will pay for each **insured person** injured in any one accident, regardless of the number of:
1. claims made;
2. **covered autos**;
3. **insured persons**;
4. lawsuits brought;
5. vehicles involved in the accident; or
6. premiums paid.

No one will be entitled to duplicate payments under this policy for the same elements of damages.

Any amount payable to an **insured person** under this Part II will be reduced by any amount paid or payable for the same expense under Part I—Liability To Others or Part III—Uninsured Motorist Coverage.

If multiple auto policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

## UNREASONABLE OR UNNECESSARY MEDICAL EXPENSES

If an **insured person** incurs expenses for **medical services** that **we** deem to be unreasonable or unnecessary, **we** may refuse to pay for those expenses and contest them.

If the medical service provider sues the **insured person** because **we** refuse to pay expenses for **medical services** that **we** deem to be unreasonable or unnecessary, **we** will pay any resulting defense costs, and any resulting judgment against the **insured person**, subject to the limit of liability for this coverage. **We** will choose the counsel. **We** will also pay reasonable expenses, including loss of earnings up to $200 per day, incurred at **our** request.

The **insured person** may not sue **us** for expenses for **medical services we** deem to be unreasonable or unnecessary unless the **insured person** paid the entire disputed

9

amount to the medical service provider or the medical service provider has initiated collection activity against the **insured person** for the unreasonable or unnecessary expenses.

## OTHER INSURANCE

If there is other applicable **auto** medical payments insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for an **insured person occupying** a vehicle or trailer, other than a **covered auto**, will be excess over any other **auto** insurance providing payments for **medical services**. **We** will provide insurance on a primary basis if the vehicle is owned by a person, firm, or corporation engaged in the business of selling vehicles at retail, but this applies only if **you**, a **relative**, or a **rated resident** are operating the vehicle and are neither the owner of the vehicle nor the owner's employee.

## PART III—UNINSURED MOTORIST COVERAGE

### INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury** or **property damage**:
1.  sustained by an **insured person**;
2.  caused by an accident; and
3.  arising out of the ownership, maintenance or use of an **uninsured motor vehicle**.

**We** will pay under this Part III only after the limits of liability under all applicable liability bonds and policies have been exhausted by payment of judgments or settlements.

Any judgment or settlement for damages against an owner or operator of an **uninsured motor vehicle** that arises out of a lawsuit brought without **our** written consent is not binding on **us**.

### ADDITIONAL DEFINITIONS

When used in this Part III:
1.  "**Insured person**" means:
    a.  **you**, a **relative**, or a **rated resident**;
    b.  any person while operating a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**;
    c.  any person **occupying**, but not operating, a **covered auto**; and
    d.  any person who is entitled to recover damages covered by this Part III because of **bodily injury** sustained by a person described in a., b. or c. above.
2.  "**Property damage**" means:
    a.  physical damage to, or destruction or loss of use of, a **covered auto**; and
    b.  physical damage to, or destruction of, any property owned by an **insured person** which is contained in the **covered auto** at the time of the accident.

10

3. **Uninsured motor vehicle** means a land motor vehicle or trailer of any type:

a. to which no liability bond or policy applies at the time of the accident;

b. to which a bodily injury liability bond or policy applies at the time of the accident, but the bonding or insuring company:

    (i) legally denies coverage; or

    (ii) is or becomes insolvent;

c. whose owner or operator cannot be identified and which causes an accident resulting in **bodily injury** or **property damage** to an **insured person**, provided that:

    (i) the **insured person**, or someone on his or her behalf, reports the accident to the police or civil authority within 24 hours or as soon as practicable after the accident; and

    (ii) the accident is reported to **us** no later than 30 days after the accident.

    If there is no physical contact with the vehicle, the facts of the accident must be corroborated by an eyewitness other than the injured **insured person**; or

d. to which a liability bond or policy applies at the time of the accident, and:

    (i) if "Added On Coverage" has been elected, as indicated on the **declarations page**, the amount of coverage available under all applicable policies and bonds is less than the damages that the **insured person** is legally entitled to recover for **bodily injury** or **property damage** from the owner or operator of the **uninsured motor vehicle**; or

    (ii) if "Reduced Coverage" has been elected, as indicated on the **declarations page**, the amount of coverage available under all applicable policies and bonds is less than the applicable coverage limit for Uninsured Motorist Coverage shown on the **declarations page**.

As used in (i) and (ii) above, the "amount of coverage available" under the bodily injury liability and property damage liability coverages for said **uninsured motor vehicle** shall be the applicable limits of coverage, less any amounts by which the maximum amounts payable under such limits of coverage have, by reason of payment of other claims or otherwise, been reduced below the limits of coverage.

An "**uninsured motor vehicle**" does not include any vehicle or equipment:

a. owned by **you**, a **relative**, or a **rated resident**, or furnished for the regular use of **you**, a **relative**, or a **rated resident**;

b. operated on rails or crawler treads;

c. designed mainly for use off public roads, while not on public roads;

d. while located for use as a residence or premises; or

e. shown on the **declarations page** of this policy.

## EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III.

Coverage under this Part III will not apply:

1. to **bodily injury** or **property damage** sustained by **you**, a **relative**, or a **rated resident** while using any vehicle, other than a **covered auto**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;

11

2. directly or indirectly to benefit any insurer or self-insurer under any of the following or similar laws:
   a. workers' compensation law; or
   b. disability benefits law; or
3. to any punitive or exemplary damages.

## LIMITS OF LIABILITY

The following provisions shall apply to both Uninsured Motorist Coverage—Added on to At-Fault Liability Limits, referred to as "Added On Coverage," and to Uninsured Motorist Coverage—Reduced by At-Fault Liability Limits, referred to as "Reduced Coverage":

The limit of liability shown on the **declarations page** for Uninsured Motorist Coverage is the most **we** will pay regardless of the number of:
1. claims made;
2. **covered autos**;
3. **insured persons**;
4. lawsuits brought;
5. vehicles involved in the accident; or
6. premiums paid.

If **your declarations page** shows a split limit:
1. the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person;
2. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident; and
3. the amount shown for "**property damage**" is the most **we** will pay for the aggregate of all **property damage** caused by any one accident.

The "each person" limit of liability includes the total of all claims made for **bodily injury** to an **insured person** and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one accident. However, without changing this total limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

If "combined single limit" or "CSL" applies, the Uninsured Motorist property damage coverage deductibles shall be a single aggregate deductible.

When **property damage** covered under this Part III is also covered by Collision Coverage under Part IV—Damage To A Vehicle, the coverage under this Part III shall be ex-

12

cess over the Collision Coverage. However, coverage under this Part III will be used to reimburse **you** for any applicable deductible under Collision Coverage subject to **your** Part III deductible.

No one will be entitled to duplicate payments for the same elements of damages.

**Added On Coverage**

If "Added On Coverage" has been elected, as indicated on the **declarations page**, the following shall also apply:

The damages payable for **bodily injury** under this Part III will be reduced by all sums:
1.  paid because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible;
2.  paid under Part I—Liability To Others;
3.  paid or payable under Part II—Medical Payments Coverage; and
4.  paid or payable because of **bodily injury** under any of the following or similar laws:
    a.  workers' compensation law; or
    b.  disability benefits law.

The damages payable for **property damage** under this Part III will be reduced by all sums:
1.  paid because of **property damage** by or on behalf of any persons or organizations that may be legally responsible, including, but not limited to, all sums paid under Part I—Liability To Others; and
2.  paid or payable under any other property or physical damage insurance.

**Reduced Coverage**

If "Reduced Coverage" has been elected, as indicated on the **declarations page**, the following shall also apply:

The bodily injury limits of liability under this Part III will be reduced by all sums:
1.  paid because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible, including, but not limited to, all sums paid under Part I—Liability To Others;
2.  paid or payable under Part II—Medical Payments Coverage; and
3.  paid or payable because of **bodily injury** under any of the following or similar laws:
    a.  workers' compensation law; or
    b.  disability benefits law.

The property damage limit of liability under this Part III will be reduced by all sums:
1.  paid because of **property damage** by or on behalf of any persons or organizations that may be legally responsible, including, but not limited to, all sums paid under Part I—Liability To Others; and
2.  paid or payable under any other property or physical damage insurance.

13

**OTHER INSURANCE**

If there is other applicable uninsured or underinsured motorist coverage, the following order of priority shall be used to determine which insurer is responsible for providing payment:

1. a policy insuring the injured person as a named insured; then
2. a policy insuring the injured person's spouse, any **relative**, or any **rated resident**; then
3. policies insuring the owner or operator of the motor vehicle occupied in the accident.

If **we** are responsible for providing payment under this Part III to an **insured person** and there is more than one applicable policy of the same priority, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all available coverage limits on the same level of priority.

## PART IV—DAMAGE TO A VEHICLE

### INSURING AGREEMENT—COLLISION COVERAGE

If **you** pay the premium for this coverage, **we** will pay for sudden, direct and accidental loss to a:

1. **covered auto**, including an attached **trailer**; or
2. **non-owned auto**;

and its **custom parts or equipment**, resulting from **collision**.

In addition, **we** will pay the reasonable cost to replace any child safety seat damaged in an accident to which this coverage applies.

### INSURING AGREEMENT—COMPREHENSIVE COVERAGE

If **you** pay the premium for this coverage, **we** will pay for sudden, direct and accidental loss to a:

1. **covered auto**, including an attached **trailer**; or
2. **non-owned auto**;

and its **custom parts or equipment**, that is not caused by **collision**.

A loss not caused by **collision** includes:

1. contact with an animal (including a bird);
2. explosion or earthquake;
3. fire;
4. malicious mischief or vandalism;
5. missiles or falling objects;
6. riot or civil commotion;
7. theft or larceny;
8. windstorm, hail, water or flood; or
9. breakage of glass not caused by **collision**.

In addition, **we** will pay for:
1. reasonable transportation expenses incurred by **you** if a **covered auto** is stolen; and
2. loss of use damages that **you** are legally liable to pay if a **non-owned auto** is stolen.
A combined maximum of $900, not exceeding $30 per day, will apply to these additional benefits. The additional benefit for transportation expenses will not apply if **you** purchased Rental Reimbursement Coverage for the stolen **covered auto**.

Coverage for transportation expenses and loss of use damages begins 48 hours after **you** report the theft to **us** and ends the earliest of:
1. when the **auto** has been recovered and returned to **you** or its owner;
2. when the **auto** has been recovered and repaired;
3. when the **auto** has been replaced; or
4. 72 hours after **we** make an offer to settle the loss if the **auto** is deemed by **us** to be a total loss.

**We** must receive written proof of transportation expenses and loss of use damages.

## INSURING AGREEMENT—ADDITIONAL CUSTOM PARTS OR EQUIPMENT COVERAGE

**We** will pay for sudden, direct and accidental loss to **custom parts or equipment** on a **covered auto** for which this coverage has been purchased. This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages. This coverage applies in addition to any coverage automatically provided for **custom parts or equipment** under Comprehensive Coverage or Collision Coverage.

## INSURING AGREEMENT—RENTAL REIMBURSEMENT COVERAGE

**We** will reimburse rental charges incurred when **you** rent an **auto** from a rental agency or auto repair shop due to a loss to a **covered auto** for which Rental Reimbursement Coverage has been purchased. This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages.

Additional fees or charges for insurance, damage waivers, optional equipment, fuel, or accessories are not covered.

This coverage is limited to the each day limit shown on the **declarations page** for a maximum of 30 days.

If Rental Reimbursement Coverage applies, no other coverage under this policy for rental expenses will apply.

Rental charges will be reimbursed beginning:
1. when the **covered auto** cannot be driven due to a loss; or

15

2. if the **covered auto** can be driven, when **you** deliver the **covered auto** to an auto repair shop or one of **our** Service Centers for repairs due to the loss;

and ending the earliest of:

1. when the **covered auto** has been returned to **you**;
2. when the **covered auto** has been repaired;
3. when the **covered auto** has been replaced;
4. 72 hours after **we** make an offer to settle the loss if the **covered auto** is deemed by **us** to be a total loss; or
5. when **you** incur 30 days worth of rental charges.

**You** must provide **us** written proof of **your** rental charges to be reimbursed.

## INSURING AGREEMENT—LOAN/LEASE PAYOFF COVERAGE

If **you** pay the premium for this coverage, and the **covered auto** for which this coverage was purchased is deemed by **us** to be a total loss, **we** will pay, in addition to any amounts otherwise payable under this Part IV, the difference between:

1. the actual cash value of the **covered auto** at the time of the total loss; and
2. any greater amount the owner of the **covered auto** is legally obligated to pay under a written loan or lease agreement to which the **covered auto** is subject at the time of the total loss, reduced by:
   a. unpaid finance charges or refunds due to the owner for such charges;
   b. excess mileage charges or charges for wear and tear;
   c. charges for extended warranties or refunds due to the owner for extended warranties;
   d. charges for credit insurance or refunds due to the owner for credit insurance;
   e. past due payments and charges for past due payments; and
   f. collection or repossession expenses.

However, **our** payment under this coverage shall not exceed the limit of liability shown on the **declarations page**. The limit of liability is a percentage of the actual cash value of the **covered auto** at the time of the loss.

This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages.

## INSURING AGREEMENT—PET INJURY COVERAGE

If **you** have purchased Collision coverage for at least one **covered auto** under **your** policy, and if **your pet** sustains injury or death while inside a **covered auto** or **non-owned auto** at the time of a loss covered under Collision or Comprehensive coverage, **we** will provide:

1. up to $1,000 for reasonable and customary veterinary fees incurred by **you**, a **relative**, or a **rated resident** if **your pet** is injured in, or as a direct result of, the covered loss; or

16

2. a $1,000 death benefit if **your pet** dies in, or as a direct result of, the covered loss, less any payment **we** made toward veterinary expenses for **your pet**.

In the event of a covered loss due to the theft of a **covered auto** or **non-owned auto**, **we** will provide the death benefit provided **your pet** is inside that auto at the time of the theft and **your pet** is not recovered.

## ADDITIONAL DEFINITIONS

When used in this Part IV:
1. "**Collision**" means the upset of a vehicle or its impact with another vehicle or object.
2. "**Custom parts or equipment**" means equipment, devices, accessories, enhancements and changes, other than those that are offered by the manufacturer specifically for that **auto** model, or that are installed by the auto dealership as part of the original sale of a new **auto**, that:
    a. are permanently installed or attached; and
    b. alter the appearance or performance of the **auto**.
3. "**Mechanical parts**" means operational parts on a vehicle that wear out over time or have a finite useful life or duration typically shorter than the life of the vehicle as a whole. **Mechanical parts** do not include external crash parts, wheels, paint, or windshields and other glass.
4. "**Non-owned auto**" means an **auto** that is not owned by or furnished or available for the regular use of **you**, a **relative**, or a **rated resident** while in the custody of or being operated by **you**, a **relative**, or a **rated resident** with the permission of the owner of the **auto** or the person in lawful possession of the **auto**.
5. "**Your pet**" means any dog or cat owned by **you**, a **relative**, or a **rated resident**.

## EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART IV.

Coverage under this Part IV will not apply for loss:
1. to any vehicle while being used:
    a. to carry persons or property for compensation, fee, salary, or wages;
    b. for retail or wholesale delivery; or
    c. for **ride-sharing activity**.
    This exclusion does not apply to shared-expense car pools;
2. to a **non-owned auto** while being maintained or used by a person while employed or engaged in any **auto business**;
3. to any vehicle resulting from, or sustained during practice or preparation for:
    a. any pre-arranged or organized racing, stunting, speed or demolition contest or activity; or
    b. any driving activity conducted on a permanent or temporary racetrack or racecourse;
4. to any vehicle for which insurance:
    a. is afforded under a nuclear energy liability insurance contract; or
    b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;

17

to any vehicle caused by an intentional act committed by or at the direction of **you**, a **relative**, a **rated resident**, or the owner of a **non-owned auto**, even if the actual damage is different than that which was intended or expected. However, this exclusion does not apply to a loss to a **covered auto** to the extent of the legal interest of **you**, a **relative**, or a **rated resident** who:

   a.  sustains the loss as the result of family violence by **you**, a **relative**, a **rated resident**, a former spouse, or any person who resides in or has resided in **your** primary household;

   b.  did not direct, participate in, or consent to the intentional act causing the loss; and

   c.  filed a family violence complaint against the person who caused the violence resulting in the loss;

6.  to a **covered auto** while it is leased or rented to others or given in exchange for compensation. This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**;

7.  due to lawful destruction or confiscation by governmental or civil authorities of any vehicle;

8.  to any vehicle that is due and confined to:

   a.  wear and tear;

   b.  freezing;

   c.  mechanical, electrical or electronic breakdown or failure; or

   d.  road damage to tires.

   This exclusion does not apply if the damage results from the theft of a vehicle;

9.  to portable equipment, devices, accessories, and any other personal effects that are not permanently installed. This includes, but is not limited to:

   a.  tapes, compact discs, cassettes, DVDs, and other recording or recorded media;

   b.  any case or other container designed for use in storing or carrying tapes, compact discs, cassettes, DVDs, or other recording or recorded media;

   c.  any device used for the detection or location of radar, laser, or other speed measuring equipment or its transmissions; and

   d.  CB radios, telephones, two-way mobile radios, DVD players, personal computers, personal digital assistants, or televisions;

10. to any vehicle caused directly or indirectly by:

   a.  war (declared or undeclared) or civil war;

   b.  warlike action by any military force of any government, sovereign, or other authority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack; or

   c.  insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts;

11. to any vehicle caused directly or indirectly by any accidental discharge, dispersal or release of radioactive or nuclear material;

12. to any vehicle caused by, or reasonably expected to result from, a criminal act or omission of **you**, a **relative**, a **rated resident**, or the owner of a **non-owned auto**. This exclusion applies regardless of whether **you**, the **relative**, the **rated resident**, or the owner of the **non-owned auto** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations; or

18

13. to any vehicle while being used in connection with a **personal vehicle sharing program**.

**LIMITS OF LIABILITY**

1. The limit of liability for loss to a **covered auto**, **non-owned auto**, or **custom parts or equipment** is the lowest of:
   a. the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;
   b. the amount necessary to replace the stolen or damaged property reduced by the applicable deductible;
   c. the amount necessary to repair the damaged property to its pre-loss condition reduced by the applicable deductible; or
   d. the Stated Amount shown on the **declarations page** for that **covered auto**.
   However, the most **we** will pay for loss to:
   a. **custom parts or equipment** is $1,000 unless **you** purchased Additional Custom Parts or Equipment Coverage ("ACPE"). If **you** purchased ACPE, the most **we** will pay is $1,000 plus the amount of ACPE **you** purchased.
   b. a **trailer** is the limit of liability shown on the **declarations page** for that **trailer**. If the **trailer** is not shown on the **declarations page**, the limit of liability is $500.
2. Payments for loss to a **covered auto**, **non-owned auto**, or **custom parts or equipment** are subject to the following provisions:
   a. If coverage applies to a **non-owned auto**, **we** will provide the broadest coverage applicable to any **covered auto** shown on the **declarations page**.
   b. If **you** have elected a Stated Amount for a **covered auto**, the Stated Amount is the most **we** will pay for all loss to that **covered auto**, including its **custom parts or equipment**.
   c. Coverage for **custom parts or equipment** will not cause **our** limit of liability for loss to an **auto** under this Part IV to be increased to an amount in excess of the actual cash value of the **auto**, including its **custom parts or equipment**.
   d. In determining the amount necessary to repair damaged property to its pre-loss condition, the amount to be paid by **us**:
      (i) will not exceed the prevailing competitive labor rates charged in the area where the property is to be repaired and the cost of repair or replacement parts and equipment, as reasonably determined by **us**; and
      (ii) will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured or used, including, but not limited to:
         (a) original manufacturer parts or equipment; and
         (b) nonoriginal manufacturer parts or equipment.
   e. To determine the amount necessary to repair or replace the damaged property as referred to in subsection 1., the total cost of necessary repair or replacement may be reduced by unrepaired prior damage. Unrepaired prior damage includes broken, cracked or missing parts; rust; dents; scrapes; gouges; and peeling paint. The reduction for unrepaired prior damage is the cost of labor, parts and materials necessary to repair or replace damage, deterioration, de-

19

fects, or wear and tear on exterior body parts, windshields and other glass, wheels, and paint, that existed prior to the accident and that is eliminated as a result of the repair or replacement of property damaged in the loss.

    f.   To determine the amount necessary to repair or replace the damaged property as referred to in subsection 1., an adjustment may be made for betterment or depreciation and physical condition on:

        (i)   batteries;

        (ii)  tires;

        (iii) engines and transmissions, if the engine has greater than 80,000 miles; and

        (iv) any other **mechanical parts** that are nonfunctioning or inoperative.

        **We** will not make an adjustment for the labor costs associated with the replacement or repair of these parts.

    g.   The actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs.

3.  No deductible will apply to a loss to window glass when the glass is repaired instead of replaced.

4.  Any amount paid or payable under this Part IV for transportation expenses, loss of use, or rental reimbursement shall be reduced by any amount paid under Part III—Uninsured Motorist Coverage for loss of use.

5.  Duplicate recovery for the same elements of damages is not permitted.

6.  The following additional limits of liability apply to Pet Injury coverage:

    a.   The most **we** will pay for all damages in any one loss is a total of $1,000 regardless of the number of dogs or cats involved.

    b.   If **your pet** dies in, or as a direct result of, a covered loss, **we** will provide a death benefit of $1,000, less any payment **we** made toward veterinary expenses for **your pet**.

    c.   No deductible shall apply to this coverage.

## PAYMENT OF LOSS

**We** may, at **our** option:

1.  pay for the loss in money; or

2.  repair or replace the damaged or stolen property.

At **our** expense, **we** may return any recovered stolen property to **you** or to the address shown on the **declarations page**, with payment for any damage resulting from the theft. **We** may keep all or part of the property at the agreed or appraised value.

**We** may settle any loss with **you** or the owner or lienholder of the property.

## NO BENEFIT TO BAILEE

Coverage under this Part IV will not directly or indirectly benefit any carrier or other bailee for hire.

Payment under this Part IV for a loss to a **covered auto** will be made according to **your** interest and the interest of any lienholder shown on the **declarations page** or designated by **you**. At **our** option, payment may be made to both jointly, or to either separately. However, if the **covered auto** is not a total loss, **we** may make payment to **you** and the repairer of the **auto**.

The lienholder's interest will not be protected:
1. where fraud, misrepresentation, material omission, or intentional damage resulting in a denial of coverage by **us** has been committed by or at the direction of **you** or any person seeking coverage; or
2. where the loss is otherwise not covered under the terms of this policy.

If this policy is cancelled, nonrenewed or voided, the interest of any lienholder under this agreement will also terminate.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for a **non-owned auto**, or **trailer** not shown on the **declarations page**, will be excess over any other collectible source of recovery including, but not limited to:
1. any coverage provided by the owner of the **non-owned auto** or **trailer**;
2. any other applicable physical damage insurance; and
3. any other source of recovery applicable to the loss.

**We** will provide insurance on a primary basis if the vehicle is owned by a person, firm, or corporation engaged in the business of selling vehicles at retail, but this applies only if **you**, a **relative**, or a **rated resident** are operating the vehicle and are neither the owner of the vehicle nor the owner's employee.

## APPRAISAL

If **we** cannot agree with **you** on the amount of a loss, then **we** or **you** may demand an appraisal of the loss. Within 30 days of any demand for an appraisal, each party shall appoint a competent appraiser and shall notify the other party of that appraiser's identity. The appraisers will determine the amount of loss. If they fail to agree, the disagreement will be submitted to a qualified umpire chosen by the appraisers. If the two appraisers are unable to agree upon an umpire within 15 days, **we** or **you** may request that a judge of a court of record, in the county where **you** reside, select an umpire. The appraisers and umpire will determine the amount of loss. The amount of loss agreed to by both appraisers, or by one appraiser and the umpire, will be binding. **You** will pay **your** appraiser's fees and expenses. **We** will pay **our** appraiser's fees and expenses. All other expenses of the appraisal, including payment of the umpire if one is selected, will be shared equally between **us** and **you**. Neither **we** nor **you** waive any rights under this policy by agreeing to an appraisal.

21

### INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay for **our** authorized service representative to provide the following services when necessary due to a **covered emergency**:
1.  towing of a **covered disabled auto** to the nearest qualified repair facility; and
2.  labor on a **covered disabled auto** at the place of disablement.

If a **covered disabled auto** is towed to any place other than the nearest qualified repair facility, **you** will be responsible for any additional charges incurred.

### ADDITIONAL DEFINITIONS

When used in this Part V:
1.  "**Covered disabled auto**" means a **covered auto** for which this coverage has been purchased that sustains a **covered emergency**.
2.  "**Covered emergency**" means a disablement that is a result of:
    a.  mechanical or electrical breakdown;
    b.  battery failure;
    c.  insufficient supply of fuel, oil, water, or other fluid;
    d.  flat tire;
    e.  lock-out; or
    f.  entrapment in snow, mud, water or sand within 100 feet of a road or highway.

### EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART V.

Coverage under this Part V will not apply to:
1.  more than three **covered emergencies** for any single **covered auto** in a six-month period;
2.  the cost of purchasing parts, fluid, lubricants, fuel, or replacement keys, or the labor to make replacement keys;
3.  installation of products or material not related to the disablement;
4.  labor not related to the disablement;
5.  labor on a **covered disabled auto** for any time period in excess of 60 minutes per disablement;
6.  towing or storage related to impoundment, abandonment, illegal parking, or other violations of law;
7.  assistance with jacks, levelers, airbags or awnings;
8.  labor or repair work performed at a service station, garage, or repair shop;
9.  auto storage charges;
10. disablement that occurs on roads not regularly maintained, sand beaches, open fields, or areas designated as not passable due to construction, weather, or earth movement;
11. mounting or removing of snow tires or chains;

22

12. tire repair;
13. disablement that results from an intentional or willful act or action by **you**, a **relative**, or the operator of a **covered disabled auto**;
14. any **covered auto** while being used in connection with **ride-sharing activity**;
15. any **covered auto** while being used in connection with a **personal vehicle sharing program**; or
16. a trailer.

## UNAUTHORIZED SERVICE PROVIDER

When service is rendered by a provider in the business of providing roadside assistance and towing services, other than one of **our** authorized service representatives, **we** will pay only reasonable charges, as determined by **us**, for:

1. towing of a **covered disabled auto** to the nearest qualified repair facility; and
2. labor on a **covered disabled auto** at the place of disablement;

which is necessary due to a **covered emergency**.

## OTHER INSURANCE

Any coverage provided under this Part V for service rendered by an unauthorized service provider will be excess over any other collectible insurance or towing protection coverage.

## PART VI—DUTIES IN CASE OF AN ACCIDENT OR LOSS

For coverage to apply under this policy, **you** or the person seeking coverage must promptly report each accident or loss even if **you** or the person seeking coverage is not at fault. **You** or the person seeking coverage must provide **us** with all accident or loss information, including time, place, and how the accident or loss happened. **You** or the person seeking coverage must also obtain and provide **us** the names and addresses of all persons involved in the accident or loss, the names and addresses of any witnesses, and the license plate numbers of the vehicles involved.

If **you** or the person seeking coverage cannot identify the owner or operator of a vehicle involved in the accident, or if theft or vandalism has occurred, **you** or the person seeking coverage must notify the police within 24 hours or as soon as practicable.

No claim shall be denied due to **your** failure to notify **us** within 30 days of an accident or loss if **we** receive written notice, by U.S. mail, from an injured person.

A person seeking coverage must:

1. cooperate with **us** in any matter concerning a claim or lawsuit;
2. provide any written proof of loss **we** may reasonably require;
3. allow **us** to take signed and recorded statements, including sworn statements and examinations under oath, which **we** may conduct outside the presence of **you** or any other person seeking coverage, and answer all reasonable questions **we** may ask as often as **we** may reasonably require;

23

4. call to notify **us** about any claim or lawsuit and send **us** any and all legal papers relating to the claim or suit as soon as practicable;
5. attend hearings and trials as **we** require;
6. take reasonable steps after a loss to protect the **covered auto**, or any other vehicle for which coverage is sought, from further loss. **We** will pay reasonable expenses incurred in providing that protection. If failure to provide such protection results in further loss, any additional damages will not be covered under this policy;
7. allow **us** to have the damaged **covered auto**, or any other damaged vehicle for which coverage is sought, inspected and appraised before its repair or disposal;
8. submit to medical examinations at **our** expense by doctors **we** select as often as **we** may reasonably require; and
9. authorize **us** to obtain medical and other records.

## PART VII—GENERAL PROVISIONS

### POLICY PERIOD AND TERRITORY

This policy applies only to accidents and losses occurring during the policy period shown on the **declarations page** and that occur within a state, territory or possession of the United States of America, or a province or territory of Canada, or while a **covered auto** is being transported between their ports.

### CHANGES

This policy contract, **your** insurance application, the **declarations page**, and all endorsements to this policy issued by **us**, contain all the agreements between **you** and **us**. Subject to the following, the terms of this policy may not be changed or waived except by an endorsement issued by **us**.

The premium for this policy is based on information **we** received from **you** and other sources. **You** agree to cooperate with **us** in determining if this information is correct and complete, and to promptly notify **us** if it changes during the policy period. If this information is determined by **us** to be incorrect, incomplete, or if it changes during the policy period, **you** agree that **we** may adjust **your** policy information and premium accordingly, cancel or nonrenew this policy, or take additional action in accordance with the Georgia Code. Changes that may result in a premium adjustment are contained in **our** rates and rules. These include, but are not limited to, **you**, a **relative**, or a **rated resident** obtaining a driver's license or operator's permit, or changes in:
1. the number, type or use classification of **covered autos**;
2. the persons who regularly operate a **covered auto**;
3. the persons of legal driving age residing in **your** household;
4. the residents in **your** household;
5. an operator's marital status;
6. **your** mailing address and **your** residence address;
7. the principal garaging address of any **covered auto**;
8. coverage, deductibles, or limits of liability; or
9. rating territory or discount eligibility.

24

The coverage provided in **your** policy may be changed only by the issuance of a new policy or an endorsement by **us**. However, if during the policy period **we** broaden any coverage afforded under the current edition of **your** policy without additional premium charge, that change will automatically apply to **your** policy as of the date the coverage change is implemented in **your** state.

If **you** ask **us** to delete a vehicle from this policy, no coverage will apply to that vehicle as of the date and time **you** ask **us** to delete it.

## DUTY TO REPORT CHANGES

**You** must promptly report to **us** all changes, including additions and deletions, in policy information. This includes, but is not limited to, changes in:
1. **your** mailing address or **your** residence address;
2. the principal garaging address of any **covered auto**;
3. the residents in **your** household;
4. the persons of legal driving age residing in **your** household;
5. the persons who regularly operate a **covered auto**;
6. an operator's marital status; or
7. the driver's license or operator's permit status of **you**, a **relative**, or a **rated resident.**

## SETTLEMENT OF CLAIMS

**We** may use estimating, appraisal, or injury evaluation systems to assist **us** in adjusting claims under this policy and to assist **us** in determining the amount of damages, expenses, or loss payable under this policy. Such systems may be developed by **us** or a third party and may include computer software, databases, and specialized technology.

## TERMS OF POLICY CONFORMED TO STATUTES

If any provision of this policy fails to conform to the statutes of the State of Georgia, the provision shall be deemed amended to conform to such statutes. All other provisions shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the State of Georgia.

## TRANSFER OF INTEREST

The rights and duties under this policy may not be transferred to another person without **our** written consent. However, if a named insured shown on the **declarations page** dies, this policy will provide coverage until the end of the policy period for the legal representative of the named insured, while acting as such, and for persons covered under this policy on the date of the named insured's death.

## FRAUD OR MISREPRESENTATION

This policy was issued in reliance upon the information provided on **your** insurance application. **We** may void coverage under this policy at any time, including after the oc-

25

currence of an accident or loss, if **you** knowingly:

1. made incorrect statements or representations to **us** with regard to any material fact or circumstance;
2. concealed or misrepresented any material fact or circumstance; or
3. engaged in fraudulent conduct;

at the time of application. This means that **we** will not be liable for any claims or damages that would otherwise be covered.

Any changes **we** make at **your** request to this policy after inception will be made in reliance upon information **you** provide. If **you** knowingly:

1. make incorrect statements or representations to **us** with regard to any material fact or circumstance;
2. conceal or misrepresent any material fact or circumstance; or
3. engage in fraudulent conduct;

in connection with a requested change **we** may void coverage under the policy or reform it as it existed immediately prior to the requested change. **We** may do this at any time, including after the occurrence of an accident or loss.

If **we** void this policy, this shall not affect coverage for a claim under Part I—Liability To Others of this policy to the extent the damages are less than or equal to the minimum limits of liability coverage required by the Georgia Motor Vehicle Safety Responsibility Act, if the accident occurs before **we** send notification to the named insured that the policy is void.

When **we** have not voided coverage under the policy or reformed the policy, **we** may still deny coverage for an accident or loss if **you**, in connection with the policy application, in connection with any requested change, or at any time during the policy period, have knowingly concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct and that concealment, misrepresentation, or fraudulent conduct was material to a risk **we** assumed.

**We** may deny coverage for an accident or loss if **you** or a person seeking coverage has knowingly concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

### PAYMENT OF PREMIUM AND FEES

If **your** initial premium payment is by check, draft, electronic funds transfer, or similar form of remittance, coverage under this policy is conditioned on payment to **us** by the financial institution. If the financial institution upon presentment does not honor the check, draft, electronic funds transfer, or similar form of remittance, this policy may, at **our** option, be deemed void from its inception. This means **we** will not be liable under this policy for any claims or damages that would otherwise be covered if the check, draft, electronic funds transfer, or similar form of remittance had been honored by the financial institution. Any action by **us** to present the remittance for payment more than once shall not affect **our** right to void this policy.

26

In addition to premium, fees may be charged on **your** policy. **We** may charge fees for installment payments, late payments, and other transactions. Payments made on **your** policy will be applied first to fees, then to premium due.

## CANCELLATION

**You** may cancel this policy during the policy period by:
1. returning this policy to **us**; or
2. making a written request for cancellation to **us** or **our** duly authorized agent stating a future date on which the policy is to be canceled. Upon receipt of a written request for cancellation from **you**, **we** may waive the future date requirement by confirming the date and time of cancellation in writing to **you**.

**We** may cancel this policy during the policy period by mailing a notice of cancellation to the named insured shown on the **declarations page** at the last known address appearing in **our** records.

**We** will give at least 10 days notice of cancellation if:
1. **we** cancel within the first 59 days of the initial policy period; or
2. the policy is cancelled for nonpayment of premium.

**We** will give at least 30 days notice of cancellation in all other cases.

**We** may cancel this policy for any reason if the notice is mailed within the first 59 days of the initial policy period.

After this policy is in effect for more than 59 days, or if this is a renewal or continuation policy, **we** may cancel only for one or more of the following reasons:
1. nonpayment of premium;
2. material misrepresentation or fraud by **you** with respect to any material fact in the procurement, change or renewal of this policy;
3. **you**, a **relative**, or a **rated resident** violated any of the terms or conditions of this policy;
4. the named insured failed to disclose fully, if called for in the application, any motor vehicle accidents or moving traffic violations within the preceding 36 months;
5. the named insured failed to disclose in the application, or in response to an inquiry by the broker, **our** agent, or **us**, information necessary for the acceptance or proper rating of the risk;
6. the named insured made a false or fraudulent claim or knowingly aided or abetted another in the presentation of such a claim;
7. **you**, a **relative**, a **rated resident**, or any other operator residing in **your** household or who customarily operates a **covered auto**:
    a. has, within the 36 months prior to the notice of cancellation, had a driver's license under suspension or revocation;
    b. is or becomes subject to epilepsy or heart attacks and the individual does not provide **us** with a certificate from a physician testifying to the individual's unqualified ability to operate an **auto**;

27

c. has an accident record, a conviction record, criminal or traffic; or a physical, mental, or other condition which is such that operation of an automobile might endanger the public safety;

d. has within a three-year period prior to the notice of cancellation, been addicted to the use of narcotics or other drugs;

e. has been convicted or forfeited bail during the 36 months immediately preceding the notice of cancellation for:
   (i)   any felony;
   (ii)  criminal negligence resulting in death, homicide, or assault arising out of the operation of a motor vehicle;
   (iii) operating a motor vehicle while in an intoxicated condition or while under the influence of drugs;
   (iv)  being intoxicated while in or about an automobile or while having custody of an automobile;
   (v)   leaving the scene of an accident without stopping to report;
   (vi)  theft or unlawful taking of a motor vehicle; or
   (vii) making false statements in an application for a driver's license;

f. has been convicted of or forfeited bail for three or more violations, within the 36 months immediately preceding the notice of cancellation, of any law, ordinance, or regulation limiting the speed of motor vehicles or any of the provisions of the motor vehicle laws of any state, violation of which constitutes a misdemeanor, whether or not the violations were repetitions of the same offense or different offenses;

8. a **covered auto**:
   a. is so mechanically defective that its operation might endanger public safety;
   b. is used in carrying passengers for hire or compensation; provided, however, this does not apply to shared-expense car pools;
   c. is used in the transportation of flammables or explosives;
   d. is an authorized emergency vehicle; or
   e. has changed in shape or condition during the policy period so as to substantially increase the risk; or

9. any other reason permitted by law.

Proof of mailing will be sufficient proof of notice. If this policy is cancelled, coverage will not be provided as of the effective date and time shown in the notice of cancellation. For purposes of cancellation, this policy is neither severable nor divisible. Any cancellation will be effective for all coverages for all persons and all vehicles.

**We** may conduct an audit to verify certain policy information. If **you** fail to submit to or allow an audit for the current or most recently expired policy period, **we** may, after two documented efforts to notify **you** and **your** agent of potential cancellation, cancel this policy by mailing a notice of cancellation to the named insured shown on the **declarations page** at the last known address appearing in **our** records. **We** will give at least 10 days notice of cancellation by certified mail or statutory overnight delivery, return receipt requested.  However, **we** will not mail the notice of cancellation within 20 days following the first documented effort to notify **you** of potential cancellation.

**CANCELLATION REFUND**

Upon cancellation, **you** may be entitled to a premium refund.

If this policy is cancelled, any refund due will be computed on a daily pro rata basis. However, **we** will retain a cancellation fee if this policy is cancelled at **your** request or if cancellation is for nonpayment of premium. A cancellation fee will be charged only during the initial policy period.

## NONRENEWAL

If neither **we** nor one of **our** affiliates offers to renew or continue this policy, **we** will mail notice of nonrenewal to the named insured shown on the **declarations page** at the last known address appearing in **our** records. Proof of mailing will be sufficient proof of notice. Notice will be mailed at least 30 days before the end of the policy period.

## AUTOMATIC TERMINATION

If **we** or an affiliate offers to renew or continue this policy and **you** or **your** representative does not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due will mean that **you** have not accepted **our** offer.

If **you** obtain other insurance on a **covered auto**, any similar insurance provided by this policy will terminate as to that **covered auto** on the effective date of the other insurance.

If a **covered auto** is sold or transferred to someone other than **you** or a **relative**, any insurance provided by this policy will terminate as to that **covered auto** on the effective date of the sale or transfer.

## LEGAL ACTION AGAINST US

**We** may not be sued unless there is full compliance with all the terms of this policy.

**We** may not be sued for payment under Part I—Liability To Others until the obligation of an insured person under Part I to pay is finally determined either by judgment after trial against that person or by written agreement of the insured person, the claimant, and **us**. No one will have any right to make **us** a party to a lawsuit to determine the liability of an insured person.

If **we** retain salvage, **we** have no duty to preserve or otherwise retain the salvage for any purpose, including evidence for any civil or criminal proceeding.

## OUR RIGHTS TO RECOVER PAYMENT

**We** are entitled to the rights of recovery that the insured person to whom payment was made has against another, to the extent of **our** payment. That insured person may be

29

required to sign documents related to the recovery and must do whatever else **we** require to help **us** exercise those recovery rights, and do nothing after an accident or loss to prejudice those rights.

A person seeking benefits under Part III—Uninsured Motorist Coverage shall not enter into any settlement with a liability insurer except pursuant to a Limited Release, as specified in Georgia law O.C.G.A. Section 33-24-41.1, which shall not release the tortfeasor from personal liability to the extent that uninsured motorist benefits may be available for **bodily injury** or property damage sustained by the insured person.

An insured person who has received benefits under Part II—Medical Payments Coverage must give **us** notice if presenting a claim against any legally liable party. This notice must be given at least 10 days prior to any settlement or commencement of trial.

When an insured person has been paid by **us** and also recovers from another, the amount recovered in excess of the damages sustained by the insured person will be held by the insured person in trust for **us** and reimbursed to **us** to the extent of **our** payment. If **we** are not reimbursed, **we** may pursue recovery of that amount directly against that insured person.

Except as provided in O.C.G.A. Section 33-24-41.1, if an insured person recovers from another without **our** written consent, the insured person's right to payment under any affected coverage will no longer exist.

If **we** elect to exercise **our** rights of recovery against another, **we** will also attempt to recover any deductible incurred by an insured person under this policy unless **we** are specifically instructed by that person not to pursue the deductible. **We** have no obligation to pursue recovery against another for any loss not covered by this policy.

**We** reserve the right to compromise or settle the deductible and property damage claims against the responsible parties for less than the full amount. **We** also reserve the right to incur reasonable expenses and attorney fees in pursuit of the recovery.

If the total recovery is less than the total of **our** payment and the deductible, **we** will reduce reimbursement of the deductible based on the proportion that the actual recovery bears to the total of **our** payment and the deductible. A proportionate share of collection expenses and attorney fees incurred in connection with these recovery efforts will also reduce reimbursement of the deductible.

These provisions will be applied in accordance with state law.

**JOINT AND INDIVIDUAL INTERESTS**

If there is more than one named insured on this policy, any named insured may cancel or change this policy. The action of one named insured will be binding on all persons provided coverage under this policy.

30

**BANKRUPTCY**

The bankruptcy or insolvency of an insured person will not relieve **us** of any obligations under this policy.





Exhibit B

# GEORGIA
## AUTO POLICY



Form 9611A GA (05/15)
version 2.0



# CONTENTS

**INSURING AGREEMENT** .................................................................................. 1

**GENERAL DEFINITIONS** ............................................................................... 1

**PART I—LIABILITY TO OTHERS**
Insuring Agreement...................................................................................3
Additional Definitions................................................................................3
Additional Payments..................................................................................3
Exclusions.................................................................................................4
Limits of Liability.......................................................................................5
Financial Responsibility Laws ...................................................................6
Other Insurance ........................................................................................6
Out-of-State Coverage ..............................................................................7

**PART II—MEDICAL PAYMENTS COVERAGE**
Insuring Agreement...................................................................................7
Additional Definitions................................................................................7
Exclusions.................................................................................................8
Limits of Liability.......................................................................................9
Unreasonable or Unnecessary Medical Expenses ....................................9
Other Insurance ...................................................................................... 10

**PART III—UNINSURED MOTORIST COVERAGE**
Insuring Agreement................................................................................. 10
Additional Definitions.............................................................................. 10
Exclusions............................................................................................... 11
Limits of Liability..................................................................................... 12
Other Insurance ...................................................................................... 14

**PART IV—DAMAGE TO A VEHICLE**
Insuring Agreement—Collision Coverage ................................................ 14
Insuring Agreement—Comprehensive Coverage ...................................... 14
Insuring Agreement—Additional Custom Parts or
   Equipment Coverage ............................................................................ 15
Insuring Agreement—Rental Reimbursement Coverage........................... 15
Insuring Agreement—Loan/Lease Payoff Coverage ................................. 16
Insuring Agreement—Pet Injury Coverage............................................... 16
Additional Definitions.............................................................................. 17
Exclusions............................................................................................... 17
Limits of Liability..................................................................................... 19
Payment of Loss......................................................................................20
No Benefit to Bailee ................................................................................20
Loss Payable Clause...............................................................................21
Other Sources of Recovery .....................................................................21
Appraisal .................................................................................................21

## PART V—ROADSIDE ASSISTANCE COVERAGE

Insuring Agreement.................................................................22
Additional Definitions............................................................22
Exclusions...............................................................................22
Unauthorized Service Provider..............................................23
Other Insurance .....................................................................23

## PART VI—DUTIES IN CASE OF AN ACCIDENT OR LOSS..........................23

## PART VII—GENERAL PROVISIONS

Policy Period and Territory......................................................24
Changes..................................................................................24
Duty to Report Changes .........................................................25
Settlement of Claims..............................................................25
Terms of Policy Conformed to Statutes .................................25
Transfer of Interest .................................................................25
Fraud or Misrepresentation ....................................................25
Payment of Premium and Fees...............................................26
Cancellation ............................................................................27
Cancellation Refund................................................................29
Nonrenewal .............................................................................29
Automatic Termination.............................................................29
Legal Action Against Us...........................................................29
Our Rights to Recover Payment...............................................29
Joint and Individual Interests...................................................30
Bankruptcy ..............................................................................31

## GEORGIA AUTO POLICY

### INSURING AGREEMENT

In return for **your** payment of the premium, **we** agree to insure **you** subject to all the terms, conditions and limitations of this policy. **We** will insure **you** for the coverages and the limits of liability shown on this policy's **declarations page**. **Your** policy consists of the policy contract, the **declarations page**, and all endorsements to this policy.

### GENERAL DEFINITIONS

The following definitions apply throughout the policy. Defined terms are printed in bold-face type and have the same meaning whether in the singular, plural, or any other form.

1.  "**Additional auto**" means an **auto you** become the owner of during the policy period that does not permanently replace an **auto** shown on the **declarations page** if:
    a.  **we** insure all other **autos you** own;
    b.  the **additional auto** is not covered by any other insurance policy;
    c.  **you** notify **us** within 30 days of becoming the owner of the **additional auto**; and
    d.  **you** pay any additional premium due.
    An **additional auto** will have the broadest coverage **we** provide for any **auto** shown on the **declarations page**. If **you** ask **us** to insure an **additional auto** more than 30 days after **you** become the owner, any coverage **we** provide will begin at the time **you** request coverage.

2.  "**Auto**" means a land motor vehicle:
    a.  of the private passenger, pickup body, or cargo van type;
    b.  designed for operation principally upon public roads;
    c.  with at least four wheels; and
    d.  with a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications.
    However, "**auto**" does not include golf carts, step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area.

3.  "**Auto business**" means the business of selling, leasing, repairing, parking, storing, servicing, delivering or testing vehicles.

4.  "**Bodily injury**" means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.

5.  "**Covered auto**" means:
    a.  any **auto** or **trailer** shown on the **declarations page** for the coverages applicable to that **auto** or **trailer**;
    b.  any **additional auto**;
    c.  any **replacement auto**; or
    d.  a **trailer** owned by **you**.

6.  "**Declarations page**" means the document showing **your** coverages, limits of liability, **covered autos**, premium, and other policy-related information. The **declarations page** may also be referred to as the Auto Insurance Coverage Summary.

7.  "**Occupying**" means in, on, entering or exiting.

1

8. "**Personal vehicle sharing program**" means a system or process, operated by a business, organization, network, group, or individual, that facilitates the sharing of private passenger motor vehicles for use by individuals, businesses, or other entities.

9. "**Rated resident**" means a person residing in the same household as **you** at the time of the loss who is not a **relative**, but only if that person is both:
    a. listed in the "Drivers and household residents" section on the **declarations page**; and
    b. not designated as either an "Excluded" or a "List Only" driver.

10. "**Relative**" means a person residing in the same household as **you**, and related to **you** by blood, marriage or adoption, and includes a ward, stepchild, or foster child. **Your** unmarried dependent children temporarily away from home will qualify as a **relative** if they intend to continue to reside in **your** household.

11. "**Replacement auto**" means an **auto** that permanently replaces an **auto** shown on the **declarations page**. A **replacement auto** will have the same coverage as the **auto** it replaces if the **replacement auto** is not covered by any other insurance policy. However, if the **auto** being replaced had coverage under Part IV—Damage To A Vehicle, such coverage will apply to the **replacement auto** only during the first 30 days after **you** become the owner unless **you** notify **us** within that 30-day period that **you** want **us** to extend coverage beyond the initial 30 days. If the **auto** being replaced did not have coverage under Part IV—Damage To A Vehicle, such coverage may be added, but the **replacement auto** will have no coverage under Part IV until **you** notify **us** of the **replacement auto** and ask **us** to add the coverage.

12. "**Ride-sharing activity**" means the use of any vehicle to provide transportation of persons or property in connection with a **transportation network company** from the time a user logs on to, or signs in to, any online-enabled application, software, website or system until the time the user logs out of, or signs off of, any such online-enabled application, software, website or system, whether or not the user has accepted any passenger(s) or delivery assignment, including the time the user is on the way to pick up any passenger(s) or property, or is transporting any passenger(s) or property.

13. "**Trailer**" means a non-motorized trailer, including a farm wagon or farm implement, designed to be towed on public roads by an **auto** and not being used:
    a. for commercial purposes;
    b. as an office, store, or for display purposes; or
    c. as a passenger conveyance.

14. "**Transportation network company**" means a corporation, partnership, sole proprietorship, or other entity that uses any online-enabled application, software, website or system to connect drivers with clients or passengers to facilitate and/or provide transportation or delivery services for compensation or a fee.

15. "**We**," "**us**" and "**our**" mean the underwriting company providing the insurance, as shown on the **declarations page**.

16. "**You**" and "**your**" mean:
    a. a person shown as a named insured on the **declarations page**; and
    b. the spouse of a named insured if residing in the same household at the time of the loss. Unless the spouse of the named insured requests to be deleted or excluded from coverage under this policy, a spouse will be deemed to reside

2

in the same household as the named insured for a period of 90 days after the termination of the marriage if the spouse was residing in the household on the date the marriage was declared terminated by a court of competent jurisdiction.

## PART I—LIABILITY TO OTHERS

### INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay damages for **bodily injury** and **property damage** for which an **insured person** becomes legally responsible because of an accident.

Damages include prejudgment interest awarded against an **insured person**.

**We** will settle or defend, at **our** option, any claim for damages covered by this Part I.

### ADDITIONAL DEFINITIONS

When used in this Part I:
1. "**Insured person**" means:
    a. **you**, a **relative**, or a **rated resident** with respect to an accident arising out of the ownership, maintenance or use of an **auto** or a **trailer**;
    b. any person with respect to an accident arising out of that person's use of a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**;
    c. any person or organization with respect only to vicarious liability for the acts or omissions of a person described in a. or b. above; and
    d. any "Additional Interest" shown on the **declarations page** with respect only to its liability for the acts or omissions of a person described in a. or b. above.
2. "**Property damage**" means physical damage to, destruction of, or loss of use of, tangible property.

### ADDITIONAL PAYMENTS

In addition to **our** limit of liability, **we** will pay for an **insured person**:
1. all expenses **we** incur in the settlement of any claim or defense of any lawsuit;
2. interest accruing after entry of judgment, until **we** have paid, offered to pay, or deposited in court, that portion of the judgment which does not exceed **our** limit of liability. This does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured person**;
3. the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in an amount exceeding **our** limit of liability, and **we** have no duty to apply for or furnish these bonds;
4. up to $250 for a bail bond required because of an accident resulting in **bodily injury** or **property damage** covered under this Part I. **We** have no duty to apply for or furnish this bond; and
5. reasonable expenses, including loss of earnings up to $200 per day, incurred at **our** request.

3

## EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EX-CLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART I.

Coverage under this Part I, including **our** duty to defend, will not apply to any **insured person** for:

1. **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle or trailer while being used:
   a. to carry persons or property for compensation, fee, salary, or wages;
   b. for retail or wholesale delivery; or
   c. for **ride-sharing activity**.
   This exclusion does not apply to shared-expense car pools;
2. any liability assumed under any contract or agreement by **you**, a **relative**, or a **rated resident**;
3. **bodily injury** to an employee of that **insured person** arising out of or within the course of employment. This exclusion does not apply to domestic employees if benefits are neither paid nor required to be provided under workers' compensation, disability benefits, or similar laws;
4. **bodily injury** or **property damage** arising out of an accident involving any vehicle while being maintained or used by a person while employed or engaged in any **auto business**. This exclusion does not apply to **you**, a **relative**, a **rated resident**, or an agent or employee of **you**, a **relative**, or a **rated resident**, when using a **covered auto**;
5. **bodily injury** or **property damage** resulting from, or sustained during practice or preparation for:
   a. any pre-arranged or organized racing, stunting, speed or demolition contest or activity; or
   b. any driving activity conducted on a permanent or temporary racetrack or race-course;
6. **bodily injury** or **property damage** due to a nuclear reaction or radiation;
7. **bodily injury** or **property damage** for which insurance:
   a. is afforded under a nuclear energy liability insurance contract; or
   b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;
8. any obligation for which the United States Government is liable under the Federal Tort Claims Act;
9. **bodily injury** or **property damage** caused by an intentional act of that **insured person**, or at the direction of that **insured person**, even if the actual injury or damage is different than that which was intended or expected. This exclusion shall not apply to the portion of **bodily injury** or **property damage** that is less than or equal to the minimum limits of liability coverage required by the Georgia Motor Vehicle Safety Responsibility Act, unless the injured person who sustains the **bodily injury** or **property damage** had or has access to recovery from another source, if coverage under this Part I were to be denied;
10. **property damage** to any property owned by, rented to, being transported by, used by, or in the charge of that **insured person**. This exclusion does not apply to a rented residence or a rented garage;
11. **bodily injury** to **you**;

4

12. **bodily injury** to a **relative**. This exclusion shall not apply to the portion of **bodily injury** that is less than or equal to the minimum limits of liability coverage required by the Georgia Motor Vehicle Safety Responsibility Act, unless the injured **relative** had or has access to recovery from another source, if coverage under this Part I were to be denied;

13. **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle owned by **you** or furnished or available for **your** regular use, other than a **covered auto** for which this coverage has been purchased;

14. **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle owned by a **relative** or a **rated resident** or furnished or available for the regular use of a **relative** or a **rated resident**, other than a **covered auto** for which this coverage has been purchased. This exclusion does not apply to **your** maintenance or use of such vehicle;

15. **bodily injury** or **property damage** arising out of **your**, a **relative's**, or a **rated resident's** use of a vehicle, other than a **covered auto**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;

16. **bodily injury** or **property damage** arising out of the use of a **covered auto** while leased or rented to others or given in exchange for any compensation. This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**;

17. **bodily injury** or **property damage** caused by, or reasonably expected to result from, a criminal act or omission of that **insured person**. This exclusion applies regardless of whether that **insured person** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations. This exclusion shall not apply to the portion of **bodily injury** or **property damage** that is less than or equal to the minimum limits of liability coverage required by the Georgia Motor Vehicle Safety Responsibility Act, unless the injured person who sustains the **bodily injury** or **property damage** had or has access to recovery from another source, if coverage under this Part I were to be denied; or

18. **bodily injury** or **property damage** arising out of the use of any vehicle while being used in connection with a **personal vehicle sharing program**.

## LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for liability coverage is the most **we** will pay regardless of the number of:
1. claims made;
2. **covered autos**;
3. **insured persons**;
4. lawsuits brought;
5. vehicles involved in the accident; or
6. premiums paid.

If **your declarations page** shows a split limit:
1. the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person resulting from any one accident;

5

2.  subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident; and
3.  the amount shown for "property damage" is the most **we** will pay for the total of all **property damage** resulting from any one accident.

The "each person" limit of liability applies to the total of all claims made for **bodily injury** to a person and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one accident. However, without changing this limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

No one is entitled to duplicate payments for the same elements of damages.

Any payment to a person under this Part I will be reduced by any payment to that person under Part III—Uninsured Motorist Coverage.

**We** will not pay under this Part I any expenses paid or payable under Part II—Medical Payments Coverage.

If multiple auto policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

An **auto** and attached **trailer** are considered one **auto**. Therefore, the limits of liability will not be increased for an accident involving an **auto** that has an attached **trailer**.

### FINANCIAL RESPONSIBILITY LAWS

When **we** certify this policy as proof of financial responsibility, this policy will comply with the law to the extent required. The **insured person** must reimburse **us** if **we** make a payment that **we** would not have made if this policy was not certified as proof of financial responsibility.

### OTHER INSURANCE

If there is any other applicable liability insurance or bond, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for a vehicle or trailer, other than a **covered auto**, will be excess over any other collectible insurance, self-insurance, or bond. **We** will provide insurance on a primary basis if the vehicle is owned by a person, firm, or corporation engaged in the business of selling vehicles at retail, but this applies only if

**you**, a **relative**, or a **rated resident** are operating the vehicle and are neither the owner of the vehicle nor the owner's employee. Any insurance **we** provide for use of a **covered auto** by any person other than **you**, a **relative**, or a **rated resident**, will be excess over any other collectible insurance, self-insurance, or bond.

## OUT-OF-STATE COVERAGE

If an accident to which this Part I applies occurs in any state, territory or possession of the United States of America or any province or territory of Canada, other than the one in which a **covered auto** is principally garaged, and the state, province, territory or possession has:
1.  a financial responsibility or similar law requiring limits of liability for **bodily injury** or **property damage** higher than the limits shown on the **declarations page**, this policy will provide the higher limits; or
2.  a compulsory insurance or similar law requiring a non-resident to maintain insurance whenever the non-resident uses an **auto** in that state, province, territory or possession, this policy will provide the greater of:
    a.  the required minimum amounts and types of coverage; or
    b.  the limits of liability under this policy.

### PART II—MEDICAL PAYMENTS COVERAGE

## INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay the reasonable expenses incurred for necessary **medical services** received within three years from the date of a **motor vehicle** accident because of **bodily injury**:
1.  sustained by an **insured person**; and
2.  caused by that **motor vehicle** accident.

**We**, or someone on **our** behalf, will determine:
1.  whether the expenses for **medical services** are reasonable; and
2.  whether the **medical services** are necessary.

## ADDITIONAL DEFINITIONS

When used in this Part II:
1.  "**Insured person**" means:
    a.  **you**, a **relative**, or a **rated resident**:
        (i)   while **occupying** an **auto**; or
        (ii)  when struck by a **motor vehicle** or a trailer while not **occupying** a self-propelled motorized vehicle; and
    b.  any other person while **occupying** a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**.
2.  "**Medical services**" means medical, surgical, dental, x-ray, ambulance, hospital, professional nursing, and funeral services, and includes the cost of eyeglasses, hearing aids, pharmaceuticals, orthopedics, and prosthetic devices.

7

3.   "**Motor vehicle**" means a land motor vehicle designed for use principally on public roads.

## EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART II.

Coverage under this Part II will not apply to **bodily injury**:
1.   sustained by any person while **occupying** a **covered auto** while it is being used:
     a.   to carry persons or property for compensation, fee, salary, or wages;
     b.   for retail or wholesale delivery; or
     c.   for **ride-sharing activity**.
     This exclusion does not apply to shared-expense car pools;
2.   arising out of an accident involving a vehicle while being maintained or used by a person while employed or engaged in any **auto business**. This exclusion does not apply to **you**, a **relative**, a **rated resident**, or an agent or employee of **you**, a **relative**, or a **rated resident**, when using a **covered auto**;
3.   to any person resulting from, or sustained during practice or preparation for:
     a.   any pre-arranged or organized racing, stunting, speed or demolition contest or activity; or
     b.   any driving activity conducted on a permanent or temporary racetrack or racecourse;
4.   due to a nuclear reaction or radiation;
5.   for which insurance:
     a.   is afforded under a nuclear energy liability insurance contract; or
     b.   would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;
6.   for which the United States Government is liable under the Federal Tort Claims Act;
7.   sustained by any person while **occupying** any vehicle or trailer while located for use as a residence or premises;
8.   if workers' compensation benefits are available for the **bodily injury**;
9.   sustained by any person while **occupying** or when struck by any vehicle owned by **you** or furnished or available for **your** regular use, other than a **covered auto** for which this coverage has been purchased;
10.  sustained by any person while **occupying** or when struck by any vehicle owned by a **relative** or a **rated resident** or furnished or available for the regular use of a **relative** or a **rated resident**, other than a **covered auto** for which this coverage has been purchased. This exclusion does not apply to **you**;
11.  to **you**, a **relative**, or a **rated resident,** while **occupying** any vehicle, other than a **covered auto**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;
12.  to any person while **occupying** a **covered auto** while leased or rented to others or given in exchange for any compensation. This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**;
13.  caused directly or indirectly by:
     a.   war (declared or undeclared) or civil war;
     b.   warlike action by any military force of any government, sovereign or other au-

8

thority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack; or

c.   insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts;

14. caused by, or reasonably expected to result from, a criminal act or omission of an **insured person**. This exclusion applies regardless of whether the **insured person** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations; or

15. sustained by any person while **occupying** a **covered auto** while being used in connection with a **personal vehicle sharing program**.

## LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for Medical Payments Coverage is the most **we** will pay for each **insured person** injured in any one accident, regardless of the number of:

1.   claims made;
2.   **covered autos**;
3.   **insured persons**;
4.   lawsuits brought;
5.   vehicles involved in the accident; or
6.   premiums paid.

No one will be entitled to duplicate payments under this policy for the same elements of damages.

Any amount payable to an **insured person** under this Part II will be reduced by any amount paid or payable for the same expense under Part I—Liability To Others or Part III—Uninsured Motorist Coverage.

If multiple auto policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

## UNREASONABLE OR UNNECESSARY MEDICAL EXPENSES

If an **insured person** incurs expenses for **medical services** that **we** deem to be unreasonable or unnecessary, **we** may refuse to pay for those expenses and contest them.

If the medical service provider sues the **insured person** because **we** refuse to pay expenses for **medical services** that **we** deem to be unreasonable or unnecessary, **we** will pay any resulting defense costs, and any resulting judgment against the **insured person**, subject to the limit of liability for this coverage. **We** will choose the counsel. **We** will also pay reasonable expenses, including loss of earnings up to $200 per day, incurred at **our** request.

The **insured person** may not sue **us** for expenses for **medical services we** deem to be unreasonable or unnecessary unless the **insured person** paid the entire disputed

9

amount to the medical service provider or the medical service provider has initiated collection activity against the **insured person** for the unreasonable or unnecessary expenses.

## OTHER INSURANCE

If there is other applicable **auto** medical payments insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for an **insured person occupying** a vehicle or trailer, other than a **covered auto**, will be excess over any other **auto** insurance providing payments for **medical services. We** will provide insurance on a primary basis if the vehicle is owned by a person, firm, or corporation engaged in the business of selling vehicles at retail, but this applies only if **you**, a **relative**, or a **rated resident** are operating the vehicle and are neither the owner of the vehicle nor the owner's employee.

## PART III—UNINSURED MOTORIST COVERAGE

### INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury** or **property damage**:
1.  sustained by an **insured person**;
2.  caused by an accident; and
3.  arising out of the ownership, maintenance or use of an **uninsured motor vehicle**.

**We** will pay under this Part III only after the limits of liability under all applicable liability bonds and policies have been exhausted by payment of judgments or settlements.

Any judgment or settlement for damages against an owner or operator of an **uninsured motor vehicle** that arises out of a lawsuit brought without **our** written consent is not binding on **us**.

### ADDITIONAL DEFINITIONS

When used in this Part III:
1.  "**Insured person**" means:
    a.  **you**, a **relative**, or a **rated resident**;
    b.  any person while operating a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**;
    c.  any person **occupying**, but not operating, a **covered auto**; and
    d.  any person who is entitled to recover damages covered by this Part III because of **bodily injury** sustained by a person described in a., b. or c. above.
2.  "**Property damage**" means:
    a.  physical damage to, or destruction or loss of use of, a **covered auto**; and
    b.  physical damage to, or destruction of, any property owned by an **insured person** which is contained in the **covered auto** at the time of the accident.

10

3. "**Uninsured motor vehicle**" means a land motor vehicle or trailer of any type:
    a. to which no liability bond or policy applies at the time of the accident;
    b. to which a bodily injury liability bond or policy applies at the time of the accident, but the bonding or insuring company:
        (i) legally denies coverage; or
        (ii) is or becomes insolvent;
    c. whose owner or operator cannot be identified and which causes an accident resulting in **bodily injury** or **property damage** to an **insured person**, provided that:
        (i) the **insured person**, or someone on his or her behalf, reports the accident to the police or civil authority within 24 hours or as soon as practicable after the accident; and
        (ii) the accident is reported to **us** no later than 30 days after the accident.
        If there is no physical contact with the vehicle, the facts of the accident must be corroborated by an eyewitness other than the injured **insured person**; or
    d. to which a liability bond or policy applies at the time of the accident, and:
        (i) if "Added On Coverage" has been elected, as indicated on the **declarations page**, the amount of coverage available under all applicable policies and bonds is less than the damages that the **insured person** is legally entitled to recover for **bodily injury** or **property damage** from the owner or operator of the **uninsured motor vehicle**; or
        (ii) if "Reduced Coverage" has been elected, as indicated on the **declarations page**, the amount of coverage available under all applicable policies and bonds is less than the applicable coverage limit for Uninsured Motorist Coverage shown on the **declarations page**.
    As used in (i) and (ii) above, the "amount of coverage available" under the bodily injury liability and property damage liability coverages for said **uninsured motor vehicle** shall be the applicable limits of coverage, less any amounts by which the maximum amounts payable under such limits of coverage have, by reason of payment of other claims or otherwise, been reduced below the limits of coverage.

An "**uninsured motor vehicle**" does not include any vehicle or equipment:
    a. owned by **you**, a **relative**, or a **rated resident**, or furnished for the regular use of **you**, a **relative**, or a **rated resident**;
    b. operated on rails or crawler treads;
    c. designed mainly for use off public roads, while not on public roads;
    d. while located for use as a residence or premises; or
    e. shown on the **declarations page** of this policy.

## EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III.

Coverage under this Part III will not apply:
1. to **bodily injury** or **property damage** sustained by **you**, a **relative**, or a **rated resident** while using any vehicle, other than a **covered auto**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;

11

2. directly or indirectly to benefit any insurer or self-insurer under any of the following or similar laws:
   a. workers' compensation law; or
   b. disability benefits law; or
3. to any punitive or exemplary damages.

## LIMITS OF LIABILITY

The following provisions shall apply to both Uninsured Motorist Coverage—Added on to At-Fault Liability Limits, referred to as "Added On Coverage," and to Uninsured Motorist Coverage—Reduced by At-Fault Liability Limits, referred to as "Reduced Coverage":

The limit of liability shown on the **declarations page** for Uninsured Motorist Coverage is the most **we** will pay regardless of the number of:
1. claims made;
2. **covered autos**;
3. **insured persons**;
4. lawsuits brought;
5. vehicles involved in the accident; or
6. premiums paid.

If **your declarations page** shows a split limit:
1. the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person;
2. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident; and
3. the amount shown for "**property damage**" is the most **we** will pay for the aggregate of all **property damage** caused by any one accident.

The "each person" limit of liability includes the total of all claims made for **bodily injury** to an **insured person** and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one accident. However, without changing this total limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

If "combined single limit" or "CSL" applies, the Uninsured Motorist property damage coverage deductibles shall be a single aggregate deductible.

When **property damage** covered under this Part III is also covered by Collision Coverage under Part IV—Damage To A Vehicle, the coverage under this Part III shall be ex-

12

cess over the Collision Coverage. However, coverage under this Part III will be used to reimburse **you** for any applicable deductible under Collision Coverage subject to **your** Part III deductible.

No one will be entitled to duplicate payments for the same elements of damages.

### Added On Coverage

If "Added On Coverage" has been elected, as indicated on the **declarations page**, the following shall also apply:

The damages payable for **bodily injury** under this Part III will be reduced by all sums:
1. paid because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible;
2. paid under Part I—Liability To Others;
3. paid or payable under Part II—Medical Payments Coverage; and
4. paid or payable because of **bodily injury** under any of the following or similar laws:
   a. workers' compensation law; or
   b. disability benefits law.

The damages payable for **property damage** under this Part III will be reduced by all sums:
1. paid because of **property damage** by or on behalf of any persons or organizations that may be legally responsible, including, but not limited to, all sums paid under Part I—Liability To Others; and
2. paid or payable under any other property or physical damage insurance.

### Reduced Coverage

If "Reduced Coverage" has been elected, as indicated on the **declarations page**, the following shall also apply:

The bodily injury limits of liability under this Part III will be reduced by all sums:
1. paid because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible, including, but not limited to, all sums paid under Part I—Liability To Others;
2. paid or payable under Part II—Medical Payments Coverage; and
3. paid or payable because of **bodily injury** under any of the following or similar laws:
   a. workers' compensation law; or
   b. disability benefits law.

The property damage limit of liability under this Part III will be reduced by all sums:
1. paid because of **property damage** by or on behalf of any persons or organizations that may be legally responsible, including, but not limited to, all sums paid under Part I—Liability To Others; and
2. paid or payable under any other property or physical damage insurance.

## OTHER INSURANCE

If there is other applicable uninsured or underinsured motorist coverage, the following order of priority shall be used to determine which insurer is responsible for providing payment:
1. a policy insuring the injured person as a named insured; then
2. a policy insuring the injured person's spouse, any **relative**, or any **rated resident**; then
3. policies insuring the owner or operator of the motor vehicle occupied in the accident.

If **we** are responsible for providing payment under this Part III to an **insured person** and there is more than one applicable policy of the same priority, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all available coverage limits on the same level of priority.

## PART IV—DAMAGE TO A VEHICLE

## INSURING AGREEMENT—COLLISION COVERAGE

If **you** pay the premium for this coverage, **we** will pay for sudden, direct and accidental loss to a:
1. **covered auto**, including an attached **trailer**; or
2. **non-owned auto**;
and its **custom parts or equipment**, resulting from **collision**.

In addition, **we** will pay the reasonable cost to replace any child safety seat damaged in an accident to which this coverage applies.

## INSURING AGREEMENT—COMPREHENSIVE COVERAGE

If **you** pay the premium for this coverage, **we** will pay for sudden, direct and accidental loss to a:
1. **covered auto**, including an attached **trailer**; or
2. **non-owned auto**;
and its **custom parts or equipment**, that is not caused by **collision**.

A loss not caused by **collision** includes:
1. contact with an animal (including a bird);
2. explosion or earthquake;
3. fire;
4. malicious mischief or vandalism;
5. missiles or falling objects;
6. riot or civil commotion;
7. theft or larceny;
8. windstorm, hail, water or flood; or
9. breakage of glass not caused by **collision**.

14

In addition, **we** will pay for:

1.  reasonable transportation expenses incurred by **you** if a **covered auto** is stolen; and

2.  loss of use damages that **you** are legally liable to pay if a **non-owned auto** is stolen.

A combined maximum of $900, not exceeding $30 per day, will apply to these additional benefits. The additional benefit for transportation expenses will not apply if **you** purchased Rental Reimbursement Coverage for the stolen **covered auto**.

Coverage for transportation expenses and loss of use damages begins 48 hours after **you** report the theft to **us** and ends the earliest of:

1.  when the **auto** has been recovered and returned to **you** or its owner;

2.  when the **auto** has been recovered and repaired;

3.  when the **auto** has been replaced; or

4.  72 hours after **we** make an offer to settle the loss if the **auto** is deemed by **us** to be a total loss.

**We** must receive written proof of transportation expenses and loss of use damages.

## INSURING AGREEMENT—ADDITIONAL CUSTOM PARTS OR EQUIPMENT COVERAGE

**We** will pay for sudden, direct and accidental loss to **custom parts or equipment** on a **covered auto** for which this coverage has been purchased. This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages. This coverage applies in addition to any coverage automatically provided for **custom parts or equipment** under Comprehensive Coverage or Collision Coverage.

## INSURING AGREEMENT—RENTAL REIMBURSEMENT COVERAGE

**We** will reimburse rental charges incurred when **you** rent an **auto** from a rental agency or auto repair shop due to a loss to a **covered auto** for which Rental Reimbursement Coverage has been purchased. This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages.

Additional fees or charges for insurance, damage waivers, optional equipment, fuel, or accessories are not covered.

This coverage is limited to the each day limit shown on the **declarations page** for a maximum of 30 days.

If Rental Reimbursement Coverage applies, no other coverage under this policy for rental expenses will apply.

Rental charges will be reimbursed beginning:

1.  when the **covered auto** cannot be driven due to a loss; or

2.  if the **covered auto** can be driven, when **you** deliver the **covered auto** to an auto repair shop or one of **our** Service Centers for repairs due to the loss;

and ending the earliest of:

1.  when the **covered auto** has been returned to **you**;
2.  when the **covered auto** has been repaired;
3.  when the **covered auto** has been replaced;
4.  72 hours after **we** make an offer to settle the loss if the **covered auto** is deemed by **us** to be a total loss; or
5.  when **you** incur 30 days worth of rental charges.

**You** must provide **us** written proof of **your** rental charges to be reimbursed.

## INSURING AGREEMENT—LOAN/LEASE PAYOFF COVERAGE

If **you** pay the premium for this coverage, and the **covered auto** for which this coverage was purchased is deemed by **us** to be a total loss, **we** will pay, in addition to any amounts otherwise payable under this Part IV, the difference between:

1.  the actual cash value of the **covered auto** at the time of the total loss; and
2.  any greater amount the owner of the **covered auto** is legally obligated to pay under a written loan or lease agreement to which the **covered auto** is subject at the time of the total loss, reduced by:
    a.  unpaid finance charges or refunds due to the owner for such charges;
    b.  excess mileage charges or charges for wear and tear;
    c.  charges for extended warranties or refunds due to the owner for extended warranties;
    d.  charges for credit insurance or refunds due to the owner for credit insurance;
    e.  past due payments and charges for past due payments; and
    f.  collection or repossession expenses.

However, **our** payment under this coverage shall not exceed the limit of liability shown on the **declarations page**. The limit of liability is a percentage of the actual cash value of the **covered auto** at the time of the loss.

This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages.

## INSURING AGREEMENT—PET INJURY COVERAGE

If **you** have purchased Collision coverage for at least one **covered auto** under **your** policy, and if **your pet** sustains injury or death while inside a **covered auto** or **non-owned auto** at the time of a loss covered under Collision or Comprehensive coverage, **we** will provide:

1.  up to $1,000 for reasonable and customary veterinary fees incurred by **you**, a **relative**, or a **rated resident** if **your pet** is injured in, or as a direct result of, the covered loss; or

16

2.  a $1,000 death benefit if **your pet** dies in, or as a direct result of, the covered loss, less any payment **we** made toward veterinary expenses for **your pet**.

In the event of a covered loss due to the theft of a **covered auto** or **non-owned auto**, **we** will provide the death benefit provided **your pet** is inside that auto at the time of the theft and **your pet** is not recovered.

## ADDITIONAL DEFINITIONS

When used in this Part IV:
1.  "**Collision**" means the upset of a vehicle or its impact with another vehicle or object.
2.  "**Custom parts or equipment**" means equipment, devices, accessories, enhancements and changes, other than those that are offered by the manufacturer specifically for that **auto** model, or that are installed by the auto dealership as part of the original sale of a new **auto**, that:
    a.  are permanently installed or attached; and
    b.  alter the appearance or performance of the **auto**.
3.  "**Mechanical parts**" means operational parts on a vehicle that wear out over time or have a finite useful life or duration typically shorter than the life of the vehicle as a whole. **Mechanical parts** do not include external crash parts, wheels, paint, or windshields and other glass.
4.  "**Non-owned auto**" means an auto that is not owned by or furnished or available for the regular use of **you**, a **relative**, or a **rated resident** while in the custody of or being operated by **you**, a **relative**, or a **rated resident** with the permission of the owner of the **auto** or the person in lawful possession of the **auto**.
5.  "**Your pet**" means any dog or cat owned by **you**, a **relative**, or a **rated resident**.

## EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART IV.

Coverage under this Part IV will not apply for loss:
1.  to any vehicle while being used:
    a.  to carry persons or property for compensation, fee, salary, or wages;
    b.  for retail or wholesale delivery; or
    c.  for **ride-sharing activity**.
    This exclusion does not apply to shared-expense car pools;
2.  to a **non-owned auto** while being maintained or used by a person while employed or engaged in any **auto business**;
3.  to any vehicle resulting from, or sustained during practice or preparation for:
    a.  any pre-arranged or organized racing, stunting, speed or demolition contest or activity; or
    b.  any driving activity conducted on a permanent or temporary racetrack or racecourse;
4.  to any vehicle for which insurance:
    a.  is afforded under a nuclear energy liability insurance contract; or
    b.  would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;

17

5. to any vehicle caused by an intentional act committed by or at the direction of **you**, a **relative**, a **rated resident**, or the owner of a **non-owned auto**, even if the actual damage is different than that which was intended or expected. However, this exclusion does not apply to a loss to a **covered auto** to the extent of the legal interest of **you**, a **relative**, or a **rated resident** who:
   a. sustains the loss as the result of family violence by **you**, a **relative**, a **rated resident**, a former spouse, or any person who resides in or has resided in **your** primary household;
   b. did not direct, participate in, or consent to the intentional act causing the loss; and
   c. filed a family violence complaint against the person who caused the violence resulting in the loss;
6. to a **covered auto** while it is leased or rented to others or given in exchange for compensation. This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**;
7. due to lawful destruction or confiscation by governmental or civil authorities of any vehicle;
8. to any vehicle that is due and confined to:
   a. wear and tear;
   b. freezing;
   c. mechanical, electrical or electronic breakdown or failure; or
   d. road damage to tires.

   This exclusion does not apply if the damage results from the theft of a vehicle;
9. to portable equipment, devices, accessories, and any other personal effects that are not permanently installed. This includes, but is not limited to:
   a. tapes, compact discs, cassettes, DVDs, and other recording or recorded media;
   b. any case or other container designed for use in storing or carrying tapes, compact discs, cassettes, DVDs, or other recording or recorded media;
   c. any device used for the detection or location of radar, laser, or other speed measuring equipment or its transmissions; and
   d. CB radios, telephones, two-way mobile radios, DVD players, personal computers, personal digital assistants, or televisions;
10. to any vehicle caused directly or indirectly by:
    a. war (declared or undeclared) or civil war;
    b. warlike action by any military force of any government, sovereign, or other authority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack; or
    c. insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts;
11. to any vehicle caused directly or indirectly by any accidental discharge, dispersal or release of radioactive or nuclear material;
12. to any vehicle caused by, or reasonably expected to result from, a criminal act or omission of **you**, a **relative**, a **rated resident**, or the owner of a **non-owned auto**. This exclusion applies regardless of whether **you**, the **relative**, the **rated resident**, or the owner of the **non-owned auto** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations; or

18

13. to any vehicle while being used in connection with a **personal vehicle sharing program**.

## LIMITS OF LIABILITY

1. The limit of liability for loss to a **covered auto**, **non-owned auto**, or **custom parts or equipment** is the lowest of:
   a. the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;
   b. the amount necessary to replace the stolen or damaged property reduced by the applicable deductible;
   c. the amount necessary to repair the damaged property to its pre-loss condition reduced by the applicable deductible; or
   d. the Stated Amount shown on the **declarations page** for that **covered auto**.
   However, the most **we** will pay for loss to:
   a. **custom parts or equipment** is $1,000 unless **you** purchased Additional Custom Parts or Equipment Coverage ("ACPE"). If **you** purchased ACPE, the most **we** will pay is $1,000 plus the amount of ACPE **you** purchased.
   b. a **trailer** is the limit of liability shown on the **declarations page** for that **trailer**. If the **trailer** is not shown on the **declarations page**, the limit of liability is $500.
2. Payments for loss to a **covered auto**, **non-owned auto**, or **custom parts or equipment** are subject to the following provisions:
   a. If coverage applies to a **non-owned auto**, **we** will provide the broadest coverage applicable to any **covered auto** shown on the **declarations page**.
   b. If **you** have elected a Stated Amount for a **covered auto**, the Stated Amount is the most **we** will pay for all loss to that **covered auto**, including its **custom parts or equipment**.
   c. Coverage for **custom parts or equipment** will not cause **our** limit of liability for loss to an **auto** under this Part IV to be increased to an amount in excess of the actual cash value of the **auto**, including its **custom parts or equipment**.
   d. In determining the amount necessary to repair damaged property to its pre-loss condition, the amount to be paid by **us**:
      (i)   will not exceed the prevailing competitive labor rates charged in the area where the property is to be repaired and the cost of repair or replacement parts and equipment, as reasonably determined by **us**; and
      (ii)  will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured or used, including, but not limited to:
          (a)  original manufacturer parts or equipment; and
          (b)  nonoriginal manufacturer parts or equipment.
   e. To determine the amount necessary to repair or replace the damaged property as referred to in subsection 1., the total cost of necessary repair or replacement may be reduced by unrepaired prior damage. Unrepaired prior damage includes broken, cracked or missing parts; rust; dents; scrapes; gouges; and peeling paint. The reduction for unrepaired prior damage is the cost of labor, parts and materials necessary to repair or replace damage, deterioration, de-

19

fects, or wear and tear on exterior body parts, windshields and other glass, wheels, and paint, that existed prior to the accident and that is eliminated as a result of the repair or replacement of property damaged in the loss.

f.  To determine the amount necessary to repair or replace the damaged property as referred to in subsection 1., an adjustment may be made for betterment or depreciation and physical condition on:

   (i)   batteries;
   (ii)  tires;
   (iii) engines and transmissions, if the engine has greater than 80,000 miles; and
   (iv)  any other **mechanical parts** that are nonfunctioning or inoperative.

   **We** will not make an adjustment for the labor costs associated with the replacement or repair of these parts.

g.  The actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs.

3.  No deductible will apply to a loss to window glass when the glass is repaired instead of replaced.

4.  Any amount paid or payable under this Part IV for transportation expenses, loss of use, or rental reimbursement shall be reduced by any amount paid under Part III—Uninsured Motorist Coverage for loss of use.

5.  Duplicate recovery for the same elements of damages is not permitted.

6.  The following additional limits of liability apply to Pet Injury coverage:

   a.  The most **we** will pay for all damages in any one loss is a total of $1,000 regardless of the number of dogs or cats involved.

   b.  If **your pet** dies in, or as a direct result of, a covered loss, **we** will provide a death benefit of $1,000, less any payment **we** made toward veterinary expenses for **your pet**.

   c.  No deductible shall apply to this coverage.

## PAYMENT OF LOSS

**We** may, at **our** option:

1.  pay for the loss in money; or
2.  repair or replace the damaged or stolen property.

At **our** expense, **we** may return any recovered stolen property to **you** or to the address shown on the **declarations page**, with payment for any damage resulting from the theft. **We** may keep all or part of the property at the agreed or appraised value.

**We** may settle any loss with **you** or the owner or lienholder of the property.

## NO BENEFIT TO BAILEE

Coverage under this Part IV will not directly or indirectly benefit any carrier or other bailee for hire.

20

## LOSS PAYABLE CLAUSE

Payment under this Part IV for a loss to a **covered auto** will be made according to **your** interest and the interest of any lienholder shown on the **declarations page** or designated by **you**. At **our** option, payment may be made to both jointly, or to either separately. However, if the **covered auto** is not a total loss, **we** may make payment to **you** and the repairer of the **auto**.

The lienholder's interest will not be protected:
1.  where fraud, misrepresentation, material omission, or intentional damage resulting in a denial of coverage by **us** has been committed by or at the direction of **you** or any person seeking coverage; or
2.  where the loss is otherwise not covered under the terms of this policy.

If this policy is cancelled, nonrenewed or voided, the interest of any lienholder under this agreement will also terminate.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for a **non-owned auto**, or **trailer** not shown on the **declarations page**, will be excess over any other collectible source of recovery including, but not limited to:
1.  any coverage provided by the owner of the **non-owned auto** or **trailer**;
2.  any other applicable physical damage insurance; and
3.  any other source of recovery applicable to the loss.

**We** will provide insurance on a primary basis if the vehicle is owned by a person, firm, or corporation engaged in the business of selling vehicles at retail, but this applies only if **you**, a **relative**, or a **rated resident** are operating the vehicle and are neither the owner of the vehicle nor the owner's employee.

## APPRAISAL

If **we** cannot agree with **you** on the amount of a loss, then **we** or **you** may demand an appraisal of the loss. Within 30 days of any demand for an appraisal, each party shall appoint a competent appraiser and shall notify the other party of that appraiser's identity. The appraisers will determine the amount of loss. If they fail to agree, the disagreement will be submitted to a qualified umpire chosen by the appraisers. If the two appraisers are unable to agree upon an umpire within 15 days, **we** or **you** may request that a judge of a court of record, in the county where **you** reside, select an umpire. The appraisers and umpire will determine the amount of loss. The amount of loss agreed to by both appraisers, or by one appraiser and the umpire, will be binding. **You** will pay **your** appraiser's fees and expenses. **We** will pay **our** appraiser's fees and expenses. All other expenses of the appraisal, including payment of the umpire if one is selected, will be shared equally between **us** and **you**. Neither **we** nor **you** waive any rights under this policy by agreeing to an appraisal.

## PART V—ROADSIDE ASSISTANCE COVERAGE

**INSURING AGREEMENT**

If **you** pay the premium for this coverage, **we** will pay for **our** authorized service representative to provide the following services when necessary due to a **covered emergency**:

1. towing of a **covered disabled auto** to the nearest qualified repair facility; and
2. labor on a **covered disabled auto** at the place of disablement.

If a **covered disabled auto** is towed to any place other than the nearest qualified repair facility, **you** will be responsible for any additional charges incurred.

**ADDITIONAL DEFINITIONS**

When used in this Part V:

1. "**Covered disabled auto**" means a **covered auto** for which this coverage has been purchased that sustains a **covered emergency**.
2. "**Covered emergency**" means a disablement that is a result of:
   a. mechanical or electrical breakdown;
   b. battery failure;
   c. insufficient supply of fuel, oil, water, or other fluid;
   d. flat tire;
   e. lock-out; or
   f. entrapment in snow, mud, water or sand within 100 feet of a road or highway.

## EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART V.

Coverage under this Part V will not apply to:

1. more than three **covered emergencies** for any single **covered auto** in a six-month period;
2. the cost of purchasing parts, fluid, lubricants, fuel, or replacement keys, or the labor to make replacement keys;
3. installation of products or material not related to the disablement;
4. labor not related to the disablement;
5. labor on a **covered disabled auto** for any time period in excess of 60 minutes per disablement;
6. towing or storage related to impoundment, abandonment, illegal parking, or other violations of law;
7. assistance with jacks, levelers, airbags or awnings;
8. labor or repair work performed at a service station, garage, or repair shop;
9. auto storage charges;
10. disablement that occurs on roads not regularly maintained, sand beaches, open fields, or areas designated as not passable due to construction, weather, or earth movement;
11. mounting or removing of snow tires or chains;

22

12. tire repair;
13. disablement that results from an intentional or willful act or action by **you**, a **relative**, or the operator of a **covered disabled auto**;
14. any **covered auto** while being used in connection with **ride-sharing activity**;
15. any **covered auto** while being used in connection with a **personal vehicle sharing program**; or
16. a trailer.

## UNAUTHORIZED SERVICE PROVIDER

When service is rendered by a provider in the business of providing roadside assistance and towing services, other than one of **our** authorized service representatives, **we** will pay only reasonable charges, as determined by **us**, for:
1. towing of a **covered disabled auto** to the nearest qualified repair facility; and
2. labor on a **covered disabled auto** at the place of disablement;
which is necessary due to a **covered emergency**.

## OTHER INSURANCE

Any coverage provided under this Part V for service rendered by an unauthorized service provider will be excess over any other collectible insurance or towing protection coverage.

### PART VI—DUTIES IN CASE OF AN ACCIDENT OR LOSS

For coverage to apply under this policy, **you** or the person seeking coverage must promptly report each accident or loss even if **you** or the person seeking coverage is not at fault. **You** or the person seeking coverage must provide **us** with all accident or loss information, including time, place, and how the accident or loss happened. **You** or the person seeking coverage must also obtain and provide **us** the names and addresses of all persons involved in the accident or loss, the names and addresses of any witnesses, and the license plate numbers of the vehicles involved.

If **you** or the person seeking coverage cannot identify the owner or operator of a vehicle involved in the accident, or if theft or vandalism has occurred, **you** or the person seeking coverage must notify the police within 24 hours or as soon as practicable.

No claim shall be denied due to **your** failure to notify **us** within 30 days of an accident or loss if **we** receive written notice, by U.S. mail, from an injured person.

A person seeking coverage must:
1. cooperate with **us** in any matter concerning a claim or lawsuit;
2. provide any written proof of loss **we** may reasonably require;
3. allow **us** to take signed and recorded statements, including sworn statements and examinations under oath, which **we** may conduct outside the presence of **you** or any other person seeking coverage, and answer all reasonable questions **we** may ask as often as **we** may reasonably require;

23

4. call to notify **us** about any claim or lawsuit and send **us** any and all legal papers relating to the claim or suit as soon as practicable;
5. attend hearings and trials as **we** require;
6. take reasonable steps after a loss to protect the **covered auto**, or any other vehicle for which coverage is sought, from further loss. **We** will pay reasonable expenses incurred in providing that protection. If failure to provide such protection results in further loss, any additional damages will not be covered under this policy;
7. allow **us** to have the damaged **covered auto**, or any other damaged vehicle for which coverage is sought, inspected and appraised before its repair or disposal;
8. submit to medical examinations at **our** expense by doctors **we** select as often as **we** may reasonably require; and
9. authorize **us** to obtain medical and other records.

## PART VII—GENERAL PROVISIONS

### POLICY PERIOD AND TERRITORY

This policy applies only to accidents and losses occurring during the policy period shown on the **declarations page** and that occur within a state, territory or possession of the United States of America, or a province or territory of Canada, or while a **covered auto** is being transported between their ports.

### CHANGES

This policy contract, **your** insurance application, the **declarations page**, and all endorsements to this policy issued by **us**, contain all the agreements between **you** and **us**. Subject to the following, the terms of this policy may not be changed or waived except by an endorsement issued by **us**.

The premium for this policy is based on information **we** received from **you** and other sources. **You** agree to cooperate with **us** in determining if this information is correct and complete, and to promptly notify **us** if it changes during the policy period. If this information is determined by **us** to be incorrect, incomplete, or if it changes during the policy period, **you** agree that **we** may adjust **your** policy information and premium accordingly, cancel or nonrenew this policy, or take additional action in accordance with the Georgia Code. Changes that may result in a premium adjustment are contained in **our** rates and rules. These include, but are not limited to, **you**, a **relative**, or a **rated resident** obtaining a driver's license or operator's permit, or changes in:
1. the number, type or use classification of **covered autos**;
2. the persons who regularly operate a **covered auto**;
3. the persons of legal driving age residing in **your** household;
4. the residents in **your** household;
5. an operator's marital status;
6. **your** mailing address and **your** residence address;
7. the principal garaging address of any **covered auto**;
8. coverage, deductibles, or limits of liability; or
9. rating territory or discount eligibility.

The coverage provided in **your** policy may be changed only by the issuance of a new policy or an endorsement by **us**. However, if during the policy period **we** broaden any coverage afforded under the current edition of **your** policy without additional premium charge, that change will automatically apply to **your** policy as of the date the coverage change is implemented in **your** state.

If **you** ask **us** to delete a vehicle from this policy, no coverage will apply to that vehicle as of the date and time **you** ask **us** to delete it.

## DUTY TO REPORT CHANGES

**You** must promptly report to **us** all changes, including additions and deletions, in policy information. This includes, but is not limited to, changes in:
1.  **your** mailing address or **your** residence address;
2.  the principal garaging address of any **covered auto**;
3.  the residents in **your** household;
4.  the persons of legal driving age residing in **your** household;
5.  the persons who regularly operate a **covered auto**;
6.  an operator's marital status; or
7.  the driver's license or operator's permit status of **you**, a **relative**, or a **rated resident.**

## SETTLEMENT OF CLAIMS

**We** may use estimating, appraisal, or injury evaluation systems to assist **us** in adjusting claims under this policy and to assist **us** in determining the amount of damages, expenses, or loss payable under this policy. Such systems may be developed by **us** or a third party and may include computer software, databases, and specialized technology.

## TERMS OF POLICY CONFORMED TO STATUTES

If any provision of this policy fails to conform to the statutes of the State of Georgia, the provision shall be deemed amended to conform to such statutes. All other provisions shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the State of Georgia.

## TRANSFER OF INTEREST

The rights and duties under this policy may not be transferred to another person without **our** written consent. However, if a named insured shown on the **declarations page** dies, this policy will provide coverage until the end of the policy period for the legal representative of the named insured, while acting as such, and for persons covered under this policy on the date of the named insured's death.

## FRAUD OR MISREPRESENTATION

This policy was issued in reliance upon the information provided on **your** insurance application. **We** may void coverage under this policy at any time, including after the oc-

25

currence of an accident or loss, if **you** knowingly:
1. made incorrect statements or representations to **us** with regard to any material fact or circumstance;
2. concealed or misrepresented any material fact or circumstance; or
3. engaged in fraudulent conduct;

at the time of application. This means that **we** will not be liable for any claims or damages that would otherwise be covered.

Any changes **we** make at **your** request to this policy after inception will be made in reliance upon information **you** provide. If **you** knowingly:
1. make incorrect statements or representations to **us** with regard to any material fact or circumstance;
2. conceal or misrepresent any material fact or circumstance; or
3. engage in fraudulent conduct;

in connection with a requested change **we** may void coverage under the policy or reform it as it existed immediately prior to the requested change. **We** may do this at any time, including after the occurrence of an accident or loss.

If **we** void this policy, this shall not affect coverage for a claim under Part I—Liability To Others of this policy to the extent the damages are less than or equal to the minimum limits of liability coverage required by the Georgia Motor Vehicle Safety Responsibility Act, if the accident occurs before **we** send notification to the named insured that the policy is void.

When **we** have not voided coverage under the policy or reformed the policy, **we** may still deny coverage for an accident or loss if **you**, in connection with the policy application, in connection with any requested change, or at any time during the policy period, have knowingly concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct and that concealment, misrepresentation, or fraudulent conduct was material to a risk **we** assumed.

**We** may deny coverage for an accident or loss if **you** or a person seeking coverage has knowingly concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

## PAYMENT OF PREMIUM AND FEES

If **your** initial premium payment is by check, draft, electronic funds transfer, or similar form of remittance, coverage under this policy is conditioned on payment to **us** by the financial institution. If the financial institution upon presentment does not honor the check, draft, electronic funds transfer, or similar form of remittance, this policy may, at **our** option, be deemed void from its inception. This means **we** will not be liable under this policy for any claims or damages that would otherwise be covered if the check, draft, electronic funds transfer, or similar form of remittance had been honored by the financial institution. Any action by **us** to present the remittance for payment more than once shall not affect **our** right to void this policy.

26

In addition to premium, fees may be charged on **your** policy. **We** may charge fees for installment payments, late payments, and other transactions. Payments made on **your** policy will be applied first to fees, then to premium due.

## CANCELLATION

**You** may cancel this policy during the policy period by:
1. returning this policy to **us**; or
2. making a written request for cancellation to **us** or **our** duly authorized agent stating a future date on which the policy is to be canceled. Upon receipt of a written request for cancellation from **you**, **we** may waive the future date requirement by confirming the date and time of cancellation in writing to **you**.

**We** may cancel this policy during the policy period by mailing a notice of cancellation to the named insured shown on the **declarations page** at the last known address appearing in **our** records.

**We** will give at least 10 days notice of cancellation if:
1. **we** cancel within the first 59 days of the initial policy period; or
2. the policy is cancelled for nonpayment of premium.

**We** will give at least 30 days notice of cancellation in all other cases.

**We** may cancel this policy for any reason if the notice is mailed within the first 59 days of the initial policy period.

After this policy is in effect for more than 59 days, or if this is a renewal or continuation policy, **we** may cancel only for one or more of the following reasons:
1. nonpayment of premium;
2. material misrepresentation or fraud by **you** with respect to any material fact in the procurement, change or renewal of this policy;
3. **you**, a **relative**, or a **rated resident** violated any of the terms or conditions of this policy;
4. the named insured failed to disclose fully, if called for in the application, any motor vehicle accidents or moving traffic violations within the preceding 36 months;
5. the named insured failed to disclose in the application, or in response to an inquiry by the broker, **our** agent, or **us**, information necessary for the acceptance or proper rating of the risk;
6. the named insured made a false or fraudulent claim or knowingly aided or abetted another in the presentation of such a claim;
7. **you**, a **relative**, a **rated resident**, or any other operator residing in **your** household or who customarily operates a **covered auto**:
   a. has, within the 36 months prior to the notice of cancellation, had a driver's license under suspension or revocation;
   b. is or becomes subject to epilepsy or heart attacks and the individual does not provide **us** with a certificate from a physician testifying to the individual's unqualified ability to operate an **auto**;

27

c. has an accident record; a conviction record, criminal or traffic; or a physical, mental, or other condition which is such that operation of an automobile might endanger the public safety;

d. has within a three-year period prior to the notice of cancellation, been addicted to the use of narcotics or other drugs;

e. has been convicted or forfeited bail during the 36 months immediately preceding the notice of cancellation for:
   (i) any felony;
   (ii) criminal negligence resulting in death, homicide, or assault arising out of the operation of a motor vehicle;
   (iii) operating a motor vehicle while in an intoxicated condition or while under the influence of drugs;
   (iv) being intoxicated while in or about an automobile or while having custody of an automobile;
   (v) leaving the scene of an accident without stopping to report;
   (vi) theft or unlawful taking of a motor vehicle; or
   (vii) making false statements in an application for a driver's license;

f. has been convicted of or forfeited bail for three or more violations, within the 36 months immediately preceding the notice of cancellation, of any law, ordinance, or regulation limiting the speed of motor vehicles or any of the provisions of the motor vehicle laws of any state, violation of which constitutes a misdemeanor, whether or not the violations were repetitions of the same offense or different offenses;

8. a **covered auto**:
   a. is so mechanically defective that its operation might endanger public safety;
   b. is used in carrying passengers for hire or compensation; provided, however, this does not apply to shared-expense car pools;
   c. is used in the transportation of flammables or explosives;
   d. is an authorized emergency vehicle; or
   e. has changed in shape or condition during the policy period so as to substantially increase the risk; or

9. any other reason permitted by law.

Proof of mailing will be sufficient proof of notice. If this policy is cancelled, coverage will not be provided as of the effective date and time shown in the notice of cancellation. For purposes of cancellation, this policy is neither severable nor divisible. Any cancellation will be effective for all coverages for all persons and all vehicles.

**We** may conduct an audit to verify certain policy information. If **you** fail to submit to or allow an audit for the current or most recently expired policy period, **we** may, after two documented efforts to notify **you** and **your** agent of potential cancellation, cancel this policy by mailing a notice of cancellation to the named insured shown on the **declarations page** at the last known address appearing in **our** records. **We** will give at least 10 days notice of cancellation by certified mail or statutory overnight delivery, return receipt requested. However, **we** will not mail the notice of cancellation within 20 days following the first documented effort to notify **you** of potential cancellation.

## CANCELLATION REFUND

Upon cancellation, **you** may be entitled to a premium refund.

If this policy is cancelled, any refund due will be computed on a daily pro rata basis. However, **we** will retain a cancellation fee if this policy is cancelled at **your** request or if cancellation is for nonpayment of premium. A cancellation fee will be charged only during the initial policy period.

## NONRENEWAL

If neither **we** nor one of **our** affiliates offers to renew or continue this policy, **we** will mail notice of nonrenewal to the named insured shown on the **declarations page** at the last known address appearing in **our** records. Proof of mailing will be sufficient proof of notice. Notice will be mailed at least 30 days before the end of the policy period.

## AUTOMATIC TERMINATION

If **we** or an affiliate offers to renew or continue this policy and **you** or **your** representative does not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due will mean that **you** have not accepted **our** offer.

If **you** obtain other insurance on a **covered auto**, any similar insurance provided by this policy will terminate as to that **covered auto** on the effective date of the other insurance.

If a **covered auto** is sold or transferred to someone other than **you** or a **relative**, any insurance provided by this policy will terminate as to that **covered auto** on the effective date of the sale or transfer.

## LEGAL ACTION AGAINST US

**We** may not be sued unless there is full compliance with all the terms of this policy.

**We** may not be sued for payment under Part I—Liability To Others until the obligation of an insured person under Part I to pay is finally determined either by judgment after trial against that person or by written agreement of the insured person, the claimant, and **us**. No one will have any right to make **us** a party to a lawsuit to determine the liability of an insured person.

If **we** retain salvage, **we** have no duty to preserve or otherwise retain the salvage for any purpose, including evidence for any civil or criminal proceeding.

## OUR RIGHTS TO RECOVER PAYMENT

**We** are entitled to the rights of recovery that the insured person to whom payment was made has against another, to the extent of **our** payment. That insured person may be

29

required to sign documents related to the recovery and must do whatever else **we** require to help **us** exercise those recovery rights, and do nothing after an accident or loss to prejudice those rights.

A person seeking benefits under Part III—Uninsured Motorist Coverage shall not enter into any settlement with a liability insurer except pursuant to a Limited Release, as specified in Georgia law O.C.G.A. Section 33-24-41.1, which shall not release the tortfeasor from personal liability to the extent that uninsured motorist benefits may be available for **bodily injury** or property damage sustained by the insured person.

An insured person who has received benefits under Part II—Medical Payments Coverage must give **us** notice if presenting a claim against any legally liable party. This notice must be given at least 10 days prior to any settlement or commencement of trial.

When an insured person has been paid by **us** and also recovers from another, the amount recovered in excess of the damages sustained by the insured person will be held by the insured person in trust for **us** and reimbursed to **us** to the extent of **our** payment. If **we** are not reimbursed, **we** may pursue recovery of that amount directly against that insured person.

Except as provided in O.C.G.A. Section 33-24-41.1, if an insured person recovers from another without **our** written consent, the insured person's right to payment under any affected coverage will no longer exist.

If **we** elect to exercise **our** rights of recovery against another, **we** will also attempt to recover any deductible incurred by an insured person under this policy unless **we** are specifically instructed by that person not to pursue the deductible. **We** have no obligation to pursue recovery against another for any loss not covered by this policy.

**We** reserve the right to compromise or settle the deductible and property damage claims against the responsible parties for less than the full amount. **We** also reserve the right to incur reasonable expenses and attorney fees in pursuit of the recovery.

If the total recovery is less than the total of **our** payment and the deductible, **we** will reduce reimbursement of the deductible based on the proportion that the actual recovery bears to the total of **our** payment and the deductible. A proportionate share of collection expenses and attorney fees incurred in connection with these recovery efforts will also reduce reimbursement of the deductible.

These provisions will be applied in accordance with state law.

## JOINT AND INDIVIDUAL INTERESTS

If there is more than one named insured on this policy, any named insured may cancel or change this policy. The action of one named insured will be binding on all persons provided coverage under this policy.

30

**BANKRUPTCY**

The bankruptcy or insolvency of an insured person will not relieve **us** of any obligations
under this policy.





9611A GA 0515

Exhibit C

# Vehicle Valuation Report

Prepared For  Progressive Group of Insurance Companies   (800) 321-9843


mitchell

## Claim Information

| Claim Number | Policy Number | Loss Type | Owner |
|---|---|---|---|
| 21-6433242-01 | | COLLISION | KEDDRICK BROWN 156 COLDWATER WAY GRIFFIN, GA 30224 +1-404-3334244 |

| Loss Date | Reported Date | Valuation Report Date | Valuation Report ID | Version Number |
|---|---|---|---|---|
| 05/10/2021 | 05/12/2021 | 05/25/2021 | 1012283275 | 3 |

## Vehicle Information

| Year | Make | Model | Location | Mileage |
|---|---|---|---|---|
| 2014 | Dodge | Charger R/T 4 Door Sedan 5.7L 8 Cyl Gas A RWD | GA 31605 | 131,303 miles |

| Ext Color | License | VIN | Title History |
|---|---|---|---|
| Bright White Clearcoat | | 2C3CDXCT8EH227637 | No |

## Valuation Summary

### Loss Vehicle Adjustments
Adjustments specific to your vehicle

| | |
|---|---:|
| Base Value = | $12,968.02 |
| Condition - | $226.71 |
| Prior Damage | $0.00 |
| Aftermarket Parts | $0.00 |
| Refurbishment | $0.00 |
| Market Value = | $12,741.31 |

### Settlement Adjustments
Adjustments specific to your policy

| | |
|---|---:|
| Deductible - | $500.00 |
| Settlement Value = | $12,241.31 |

## Settlement Value:
## $12,241.31

J.D. POWER

EXHIBIT 1

Mitchell WorkCenter Total Loss
© 2018 Mitchell International, Inc. All Rights Reserved.

Scanned with CamScanner

# Loss Vehicle Detail

Loss vehicle: 2014 Dodge Charger | R/T 4 Door Sedan | 5.7L 8 Cyl Gas A RWD

## Standard Equipment

### Exterior

| | |
|---|---|
| Black Side Windows Trim | Body-colored door handles |
| Body-colored front bumper | Body-Colored Power Heated Side Mirrors w/Manual Folding |
| Body-Colored Rear Bumper | Chrome grille |
| Clearcoat paint | Compact Spare Tire Mounted Inside Under Cargo |
| Fixed Rear Window w/Defroster | Front fog lamps |
| Fully Automatic Projector Beam High Intensity Low Beam Daytime Running Headlamps w/Delay-Off | Galvanized Steel/Aluminum Panels |
| Laminated Glass | LED brakelights |
| Light tinted glass | Perimeter/Approach Lights |
| Speed sensitive variable intermittent wipers | Steel spare wheel |
| Tires: P235/55R18 BSW AS Performance | Trunk Rear Cargo Access |
| Wheels: 18" x 7.5" Aluminum | |

### Interior

| | |
|---|---|
| 2 Seatback Storage Pockets | 276w Regular Amplifier |
| 3 12V DC Power Outlets | 4-Way Passenger Seat -inc: Manual Recline and Fore/Aft Movement |
| 6 Performance Speakers | 60-40 Folding Bench Front Facing Fold Forward Seatback Cloth Rear Seat |
| 8-Way Power Driver Seat -inc: Power Recline, Height Adjustment, Fore/Aft Movement, Cushion Tilt and Power 4-Way Lumbar Support | Air filtration |
| Analog Display | Audio jack input for mobile devices |
| Cargo net | Cargo Space Lights |
| Carpet Floor Trim and Carpet Trunk Lid/Rear Cargo Door Trim | Cloth Bucket Front Seats w/Power 4-Way Driver Lumbar |
| Compass | Cruise control w/steering wheel controls |
| Day-Night Auto-Dimming Rearview Mirror | Delayed Accessory Power |
| Digital Signal Processor | Driver And Passenger Heated-Cushion, Driver And Passenger Heated-Seatback |
| Driver And Passenger Visor Vanity Mirrors w/Driver And Passenger Illumination, Driver And Passenger Auxiliary Mirror | Driver foot rest |
| Dual Zone Front Automatic Air Conditioning | Fade-to-off interior lighting |
| FOB Controls -inc: Trunk/Hatch/Tailgate and Remote Engine Start | Front And Rear Map Lights |
| Front Center Armrest and Rear Center Armrest w/Storage | Front Cupholder |
| Full Carpet Floor Covering -inc: Carpet Front And Rear Floor Mats | Full cloth headliner |
| Full Floor Console w/Covered Storage, Mini Overhead Console w/Storage and 3 12V DC Power Outlets | Gauges -inc: Speedometer, Odometer, Oil Pressure, Engine Coolant Temp, Tachometer, Oil Temperature, Transmission Fluid Temp, Engine Hour Meter, Trip Odometer and Trip Computer |
| HomeLink Garage Door Transmitter | HVAC -inc: Underseat Ducts and Console Ducts |
| Illuminated locking glove box | Instrument Panel Bin, Driver / Passenger And Rear Door Bins |



Scanned with CamScanner

| | |
|---|---|
| Interior Trim -inc: Aluminum Instrument Panel Insert, Aluminum Console Insert and Chrome Interior Accents | Leather gear shift knob |
| Leather/Metal-Look Steering Wheel | Manual tilt/telescoping steering column |
| Manual Type Adjustable Front Head Restraints and Fixed Rear Head Restraints | Outside temp gauge |
| Power 1st Row Windows w/Driver And Passenger 1-Touch Up/Down | Power Door Locks w/Autolock Feature |
| Power Rear Windows | Proximity Key For Doors And Ignition |
| Radio w/Seek-Scan, Clock, Speed Compensated Volume Control, Steering Wheel Controls, Voice Activation and Radio Data System | Radio: Uconnect 8.4 CD/DVD/MP3 |
| Rear cupholder | Redundant Digital Speedometer |
| Remote Keyless Entry w/Integrated Key Transmitter, 4 Door Curb/Courtesy, Illuminated Entry and Panic Button | Remote Releases -Inc: Power Trunk/Hatch and Power Fuel |
| Remote USB port | Sentry Key Engine Immobilizer |
| Sirius satellite radio | Systems Monitor |
| Trip computer | Uconnect w/Bluetooth Wireless Phone Connectivity |
| Valet Function | Vinyl Door Trim Insert |
| Voice Recorder | Window Grid Antenna |
| Wireless Streaming | |

## Mechanical

| | |
|---|---|
| 160 amp alternator | 19.5 Gal. Fuel Tank |
| 2.65 axle ratio | 4-Wheel Disc Brakes w/4-Wheel ABS, Front And Rear Vented Discs, Brake Assist and Hill Hold Control |
| 5300# GVWR | 730CCA Maintenance-Free Battery w/Run Down Protection |
| Dual Stainless Steel Exhaust w/Chrome Tailpipe Finisher | Electro-Hydraulic Power Assist Steering |
| Front And Rear Anti-Roll Bars | Gas-pressurized shock absorbers |
| Multi-link rear suspension w/coil springs | Rear-wheel drive |
| Short And Long Arm Front Suspension w/Coil Springs | Sport tuned suspension |
| Transmission w/Autostick Sequential Shift Control | |

## Safety

| | |
|---|---|
| ABS And Driveline Traction Control | Airbag Occupancy Sensor |
| Curtain 1st And 2nd Row Airbags | Driver knee airbag |
| Dual Stage Driver And Passenger Front Airbags | Dual Stage Driver And Passenger Seat-Mounted Side Airbags |
| Electronic stability control (ESC) | Outboard Front Lap And Shoulder Safety Belts -inc: Rear Center 3 Point, Height Adjusters and Pretensioners |
| Rear child safety locks | Side impact beams |
| Tire Specific Low Tire Pressure Warning | |

## Packages

### BEATS AUDIO GROUP

-inc: 10 Beats Premium Speakers w/Subwoofer, 552 Watt Amplifier

### BLACKTOP PACKAGE

-inc: Tires: 245/45R20 BSW AS Performance, 215mm Rear Axle, Beats Audio Group, 10 Beats Premium Speakers w/Subwoofer, 552 Watt Amplifier, Wheels: 20" x 8.0" Painted Aluminum, Rear Bodycolor Spoiler, Gloss Black Grille w/Black Honeycomb, 3.06 Rear Axle Ratio, Sport Mode 2, High Speed Engine Controller, Steering Wheel Mounted Shift Control



Scanned with CamScanner

Optional Equipment

REAR BODYCOLOR SPOILER

**\*DIO/PIO =**   Dealer/Port Installed Options

# Loss Vehicle Base Value

Loss vehicle:  2014 Dodge Charger |  R/T 4 Door Sedan | 5.7L 8 Cyl Gas A RWD

## Comparable Vehicle Information

Search Radius used for this valuation: 100 miles from loss vehicle zip/postal code.

Typical Mileage for this vehicle: 83,000 miles

| # | Vehicle Description | Mileage | Location | Distance From Loss Vehicle | Price | Adjusted Value |
|---|---|---|---|---|---|---|
| 1 | 2014 DODGE CHARGER R/T 4D SDN 8 5.7NORMAL GAS A 2WD | 143,198 | 32055 | 53 miles | $13,662.00 List Price | $14,096.14 |
| 2 | 2014 DODGE CHARGER SE 4D SDN 6 3.6NORMAL FLEXIBLE A 2WD | 128,594 | 32327 | 84 miles | $12,999.00 List Price | $14,149.47 |
| 3 | 2014 DODGE CHARGER SE 4D SDN 6 3.6NORMAL FLEXIBLE A 2WD | 97,454 | 32615 | 90 miles | $12,939.00 List Price | $12,125.69 |
| 4 | 2014 DODGE CHARGER R/T PLUS 4D SDN 8 5.7NORMAL GAS A 2WD | 64,027 | 32097 | 97 miles | $19,954.00 List Price | $11,500.79 |

**Base Value:**    **$12,968.02**

# Loss Vehicle Adjustments

Loss vehicle:  2014 Dodge Charger | R/T 4 Door Sedan | 5.7L 8 Cyl Gas A RWD


Mitchell **WorkCenter**
**Total Loss**

Scanned with CamScanner

## Condition Adjustments

Condition Adjustment: -$226.71          Overall Condition: 2.92-Good          Typical Vehicle Condition: 3.00

| Category | Condition | Comments |
|---|---|---|
| Interior | | |
| SEATS | 3 Good | |
| DOORS/INTERIOR PANELS | 3 Good | |
| GLASS | 3 Good | |
| CARPET | 3 Good | |
| HEADLINER | 3 Good | |
| DASH/CONSOLE | 3 Good | |
| Exterior | | |
| PAINT | 3 Good | |
| TRIM | 2 Fair | major trim missing damaged, Single Large Impact, |
| VINYL/CONVERTIBLE TOP | Typical | |
| BODY | 3 Good | 1 small dent/crease |
| Mechanical | | |
| TRANSMISSION | 3 Good | |
| ENGINE | 3 Good | |
| Tire | 2 Fair | |

Typical Vehicle Condition reflects a condition similar to the same year, make and model. Amount of wear and tear/ damage consistent with its age.

Comments:

# Comparable Vehicles

Loss vehicle: 2014 Dodge Charger | R/T 4 Door Sedan | 5.7L 8 Cyl Gas A RWD


Mitchell **WorkCenter**
**Total Loss**

Scanned with CamScanner

| 1 | **2014 DODGE CHARGER R/T 4D SDN 8 5.7 NORMAL GAS A2WD** | | | **List Price: $13,662.00** |

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 2C3CDXCT8EH155337 | X997237B | 05/19/2021 | 32055 | 53 miles |

Source

DEALER WEB LISTING -
BUILDSHEET - CARS.COM
ROUNTREE MOORE TOYOTA
1232 W US HWY 90
LAKE CITY FL 32055
386-755-0631

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$762.00 |
| Mileage | 131,303 | 143,198 | $436.82 |
| Equipment | | | |
| BLACKTOP PACKAGE | Yes | No | $759.32 |
| | | Total Adjustments: | $434.14 |
| | | **Adjusted Price:** | **$14,096.14** |

| 2 | **2014 DODGE CHARGER SE 4D SDN 6 3.6 NORMAL FLEXIBLE A2WD** | | | **List Price: $12,999.00** |

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 2C3CDXBG4EH102557 | 1900 | 04/19/2021 | 32327 | 84 miles |

Source

DEALER WEB LISTING -
BUILDSHEET - VAST.COM
UPRITE AUTO SALES
2106 CRAWFORDVILLE HIGHWAY
CRAWFORDVILLE FL 32327
850-926-9511

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$725.00 |
| Vehicle Configuration Adjustment | | | $1,275.19 |
| Mileage | 131,303 | 128,594 | -$109.45 |
| Equipment | | | |
| BLACKTOP PACKAGE | Yes | No | $797.53 |
| RADIO: UCONNECT 4.3S AM/FM/CD/MP3 | No | Yes | -$87.80 |
| | | Total Adjustments: | $1,150.47 |
| | | **Adjusted Price:** | **$14,149.47** |

Comparable Vehicle Option Details:
RADIO: UCONNECT 4.3S AM/FM/CD/MP3


Mitchell **WorkCenter**
Total Loss

Scanned with CamScanner

| 3 | 2014 DODGE CHARGER SE 4D SDN 6 3.6 NORMAL FLEXIBLE A2WD | | | | List Price: **$12,939.00** |
|---|---|---|---|---|---|

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle | |
|---|---|---|---|---|---|
| 2C3CDXBG8EH306844 | 41078T | 05/10/2021 | 32615 | 90 miles | |

Source

DEALER WEB LISTING -
BUILDSHEET - VAST.COM

SANTA FE FORD

16330 U.S. 441

ALACHUA FL 32615

800-556-1022

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$722.00 |
| Vehicle Configuration Adjustment | | | $1,269.27 |
| Mileage | 131,303 | 97,454 | -$1,663.69 |
| Equipment | | | |
| BLACKTOP PACKAGE | Yes | No | $793.83 |
| 20" WHEEL SPORT APPEARANCE GROUP | No | Yes | -$490.72 |

|  | Total Adjustments: | -$813.31 |
|---|---|---|
|  | **Adjusted Price:** | **$12,125.69** |

Comparable Vehicle Package Details:

20" WHEEL SPORT APPEARANCE GROUP

Mitchell **WorkCenter**
**Total Loss**

Scanned with CamScanner

| 4 | 2014 DODGE CHARGER R/T PLUS 4D SDN 8 5.7 NORMAL GAS A2WD | | | List Price: $19,954.00 |

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 2C3CDXCT7EH202261 | A3818 | 05/15/2021 | 32097 | 97 miles |

Source

DEALER WEB LISTING -
BUILDSHEET - AUTOTRADER.COM
DAVIS CHRYSLER DODGE JEEP
RAM OF YULEE
464037 STATE ROAD 200
YULEE FL 32097
904-277-6969

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$1,113.00 |
| Vehicle Configuration Adjustment | | | $0.00 |
| Mileage | 131,303 | 64,027 | -$4,983.77 |
| Equipment | | | |
| BLACKTOP PACKAGE | Yes | No | $1,109.02 |
| WHEELS & TUNES GROUP | No | Yes | -$1,047.24 |
| NAVIGATION/REAR BACK-UP CAMERA GROUP | No | Yes | -$676.54 |
| QUICK ORDER PACKAGE 29P R/T PLUS | No | Yes | -$1,082.45 |
| POWER SUNROOF | No | Yes | -$659.23 |
| | | Total Adjustments: | -$8,453.21 |
| | | Adjusted Price: | $11,500.79 |

Comparable Vehicle Package Details:

WHEELS & TUNES GROUP  (REAR BODYCOLOR SPOILER)

NAVIGATION/REAR BACK-UP CAMERA GROUP

QUICK ORDER PACKAGE 29P R/T PLUS

Comparable Vehicle Option Details:

POWER SUNROOF

## Sub-Model Comparison

| Sub-Model Description | Configuration | Original MSRP |
|---|---|---|
| 2014 Dodge Charger R/T | 4 Door Sedan 5.7L 8 Cyl Gas  RWD | $30,495.00 |
| 2014 DODGE CHARGER SE | 4D SDN 6 3.6 NORMAL FLEXIBLE A 2WD | $27,262.00 |
| 2014 DODGE CHARGER R/T PLUS | 4D SDN 8 5.7 NORMAL GAS A 2WD | $30,495.00 |



Mitchell **WorkCenter**
**Total Loss**

Scanned with CamScanner

# Vehicle Valuation Methodology Explanation

WorkCenter Total Loss was designed and built in conjunction with J.D. Powers, experts in data analysis and vehicle pricing and a highly trusted name among consumers. With years of experience in vehicle pricing, J.D Power is a credible, third-party expert whose name provides consumer recognition and confidence. WCTL provides a consistent methodology across all vehicles and it includes valid comparable vehicles that most closely resemble the totaled vehicle and are similar to the vehicles a consumer would find in their own research.

WorkCenter Total Loss produces accurate and easy-to-understand vehicle valuations via this five step process:

**Step 1 - Locate Comparable Vehicles**

Locate vehicles that are the closest match to the loss vehicle in the same market area. WorkCenter Total Loss utilizes consumer-based vehicle sources along with inventory directly from Dealerships. When available WCTL also provides sold vehicle records from sources such as J.D. Powers.

**Step 2 - Adjust Comparable Vehicles**

Make adjustments to the prices of the comparable vehicles. The comparable vehicles are identical to the loss vehicle except where adjustments are itemized. There are several types of comparable vehicle adjustments

- Projected Sold Adjustment - an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price).
- Vehicle Configuration Adjustment- an adjustment for differences in configuration between the comparable vehicle and the loss vehicle (e.g. differences in trim).
- Mileage Adjustment - an adjustment for differences in mileage between the comparable vehicle and the loss vehicle.
- Equipment- adjustments for differences in equipment between the comparable vehicle (e.g. equipment packages and options) and the loss vehicle.

**Step 3 - Calculate Base Vehicle Value**

The base vehicle value is calculated by averaging the adjusted prices of the comparable vehicles.

**Step 4 - Calculate Loss Vehicle Adjustments**

There are four types of loss vehicle adjustments:

- Condition Adjustment:

  Adjustments to account for the condition of the loss vehicle prior to the loss.

- Prior Damage Adjustment:

  Adjustments to account for any prior damage present on the loss vehicle prior to the loss.

- After Market Part Adjustment:

  Adjustments to account for any after market parts present on the loss vehicle prior to the loss.

- Refurbishment Adjustment:

  Adjustments to account for any refurbishment performed on the loss vehicle prior to the loss.

**Step 5 - Calculate the Market Value**

The Market Value is calculated by applying the loss vehicle adjustments to the base value.



Scanned with CamScanner

Exhibit D

# Vehicle Valuation Report

Prepared For **Progressive Group of Insurance Companies**  (800) 321-9843


mitchell

## Claim Information

| Claim Number | Policy Number | Loss Type | Owner |
|---|---|---|---|
| 17-5143096-01 | | COLLISION | MICHELLE BOST 79 E DEER TRAIL CHATSWORTH, GA 30705 +1-706-6955049 |

| Loss Date | Reported Date | Valuation Report Date | Valuation Report ID | Version Number |
|---|---|---|---|---|
| 08/10/2017 | 08/10/2017 | 08/17/2017 | 1007033398 | 1 |

## Vehicle Information

| Year | Make | Model | Location | Mileage |
|---|---|---|---|---|
| 2006 | Ford | Expedition XLT 4 Door Utility 119" WB 5.4L 8 Cyl Gas A RWD | GA 30705 | 156,915 miles |

| Ext Color | License | VIN | Title History |
|---|---|---|---|
| | | 1FMPU15566LA79528 | No |

## Valuation Summary

### Loss Vehicle Adjustments
Adjustments specific to your vehicle

| | |
|---|---|
| Base Value = | $6,999.36 |
| Condition - | $128.55 |
| Prior Damage | $0.00 |
| Aftermarket Parts + | $40.00 |
| Refurbishment + | $0.00 |
| Title History - | $0.00 |
| Market Value = | $6,910.81 |

### Settlement Adjustments
Adjustments specific to your policy

| | |
|---|---|
| Deductible - | $1,000.00 |
| Settlement Value = | $5,910.81 |

# Settlement Value:
# $5,910.81

# Loss Vehicle Detail

Loss vehicle    2006 Ford Expedition | XLT 4 Door Utility 119" WB | 5.4L 8 Cyl Gas A RWD

## Standard Equipment

### Exterior

| | |
|---|---|
| Black pwr mirrors w/security approach lamps | Black running boards |
| Body-color door handles | Complex reflector headlamps w/autolamp feature |
| Fog lamps | Medium Dark Platinum grille |
| Medium Dark Platinum lower body-side cladding | Painted body-color upper/Medium Dark Platinum lower bumpers |
| Privacy glass | Rear liftgate w/flip-up glass |
| Rear window intermittent wiper w/washer | Roof rails |
| Speed-sensitive intermittent windshield wipers | |

### Interior

| | |
|---|---|
| Analog instrumentation-inc: voltmeter, oil pressure, water temp, tachometer | Ashtray mounted on instrument panel w/light |
| Assist handles-inc: color-keyed (2) front passengers, (2) second row | Cargo area pwr point |
| Carpeted floor mats for 1st/2nd row | Cigarette lighter |
| Cloth 2nd row 40/20/40 split bench seat-inc: sliding center portion, recline & fold flat feature, carpeted seatbacks, easy-entry to 3rd row feature | Cloth 3rd row 60/40 split bench seat-inc: fold flat feature |
| Cloth 60/40 split front bench seat-inc: 6-way pwr driver seat, dual manual lumbar, manual recline | Coat hooks-inc: (2) second row, 3rd row |
| Color-keyed cloth headliner | Color-keyed cloth sunvisors w/auxiliary visors, dual illuminated mirrors |
| Concealed antenna in RH quarter glass | Cruise control |
| Cup holders-inc: (2) instrument panel, (4) door trim panels, (3) 3rd row quarter trim panels | Day/night rearview mirror |
| Floor carpeting | Front & rear door map pockets |
| Glove box | Head restraints at all outboard seating positions |
| Lights-inc: glove box, front door approach, front dome/map, rear cargo, 2nd row map lights, illuminated entry, theater lighting | Manual air conditioning w/rear auxiliary climate controls |
| Overhead console-inc: map lights, dual sunglasses holders, front auxiliary HVAC controls, conversation mirror | Premium AM/FM stereo w/CD/cassette-inc: speed-compensated volume control, (4) speakers, RDS, clock, partial mute, 120-watt amp, MP3 capability |
| Pwr accessory delay | Pwr door locks-inc: auto lock |
| Pwr point on instrument panel | Pwr windows w/driver one-touch-down |
| Rear seat heat ducts | Rear window defroster |
| SecuriLock passive anti-theft system | Tilt steering column |
| Tire pressure monitoring system | |

### Mechanical

| | |
|---|---|
| (5) P285/70R17 all-season BSW tires | 119-amp alternator |
| 17" x 7.5" aluminum wheels | 28 gallon fuel tank |
| 3.31 axle ratio | 5350# capacity front axle/4126# capacity rear axle |
| 4-wheel disc brakes w/anti-lock & brake assist | Double wishbone front suspension w/coil-over shock |
| Front/rear stabilizer bars | Independent rear suspension |



Mitchell WorkCenter™
Total Loss

Integrated Class III trailer towing receiver-inc: 4-pin connector

Maintenance-free battery w/battery saver feature

Rear wheel drive

Steel spare wheel

Variable assist pwr rack & pinion steering

Safety

3-point color-keyed lap & shoulder safety belts on all outboard seats

Beltminder system-inc: buckle pretensioners, load-limiting retractors

Child-proof rear door locks

Front dual-stage airbags-inc: driver seat position & crash severity sensing

LATCH system on rear outboard seats

Side intrusion door beams

## Packages

TECHNICAL CONVENIENCE PKG

-inc: electrochromic rearview mirror, keyless entry keypad, heated mirrors w/security approach lamps

## Optional Equipment

BLACK LUGGAGE RACK W/CROSSBARS

CLOTH HIGH BACK CAPTAINS CHAIRS

PWR FOLDING 3RD ROW SEATS

REVERSE SENSING SYSTEM W/MESSAGE CENTER

**"DIO/PIO =**   Dealer/Port Installed Options

# Loss Vehicle Base Value

Loss vehicle:  2006 Ford Expedition | XLT 4 Door Utility 119" WB | 5.4L 8 Cyl Gas A RWD

## Comparable Vehicle Information

Search Radius used for this valuation  75 miles from loss vehicle zip/postal code.

Typical Mileage for this vehicle: 133,000 miles

| # | Vehicle Description | Mileage | Location | Distance From Loss Vehicle | Price | Adjusted Value |
|---|---|---|---|---|---|---|
| 1 | 2006 FORD EXPEDITION XLT 4D SUV 8 5.4NORMAL GAS A 2WD | 138,348 | 37408 | 37 miles | $9,999.00 List Price | $8,746.17 |
| 2 | 2006 FORD EXPEDITION XLT 4D SUV 8 5.4NORMAL GAS A 2WD | 163,683 | 30501 | 62 miles | $8,495.00 List Price | $7,694.91 |
| 3 | 2006 FORD EXPEDITION XLT 4D SUV 8 5.4NORMAL GAS A 2WD | 152,442 | 30135 | 75 miles | $5,251.00 List Price | $4,557.01 |

Base Value:  **$6,999.36**

# Loss Vehicle Adjustments

Loss vehicle:  2006 Ford Expedition | XLT 4 Door Utility 119" WB | 5.4L 8 Cyl Gas A RWD

## Condition Adjustments

Condition Adjustment:  -$128.55          Overall Condition:  2.92-Good          Typical Vehicle Condition:  3.00

| Category | Condition | Comments |
|---|---|---|
| **Interior** | | |
| GLASS | 3 Good | |
| DOORS/INTERIOR PANELS | 3 Good | |
| SEATS | 3 Good | |
| DASH/CONSOLE | 2 Fair | missing dash piece around cd player |
| CARPET | 3 Good | |
| HEADLINER | 3 Good | |
| **Exterior** | | |
| BODY | 3 Good | |
| PAINT | 3 Good | |
| TRIM | 3 Good | |
| VINYL/CONVERTIBLE TOP | Typical | |
| **Mechanical** | | |
| TRANSMISSION | 3 Good | |
| ENGINE | 3 Good | |
| **Tire** | 2 Fair | 4/32 on front and 6/32 on rear |

Typical condition reflects a vehicle that is in ready-for-sale condition and reflects normal wear and tear for that vehicle type / age.

Comments:

## After Market Parts and OEM Equipment Adjustments

| Category | Description | Adjustment Type | Purchase Date | Amount Paid | Adjustment Amount |
|---|---|---|---|---|---|
| INTERIOR | CD PLAYER | INSTANT QUOTE | | | $40.00 |

## Title History Adjustment

| Description | Adjustment Amount |
|---|---|
| The title history deduction is an average deduction that represents a variety of title history types such as flood, hail, collision, etc. and is not specific to a particular title type. In addition, the degree of the damage that resulted in a title history is assumed to be typical. | $0.00 |

# Comparable Vehicles

Loss vehicle:  2006 Ford Expedition | XLT 4 Door Utility 119" WB | 5.4L 8 Cyl Gas A RWD



| 2006 FORD EXPEDITION XLT 4D SUV 8 5.4 NORMAL GAS A2WD | | | List Price: **$9,999.00** |
|---|---|---|---|

| VIN | Stock No. | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 1FMPU155X6LA26850 | | 08/13/2017 | 37408 | 37 miles |

Source

DEALER WEB LISTING - VAST.COM
PHOENIX AUTO SALES
201 E 20TH ST
CHATTANOOGA TN 37408
423-266-3322

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$884.00 |
| Mileage | 156,915 | 138,348 | -$627.87 |
| Equipment | | | |
| TECHNICAL CONVENIENCE PKG | Yes | No | $51.28 |
| BLACK LUGGAGE RACK W/CROSSBARS | Yes | No | $10.52 |
| PWR FOLDING 3RD ROW SEATS | Yes | No | $130.18 |
| REVERSE SENSING SYSTEM W/MESSAGE CENTER | Yes | No | $67.06 |

|  | Total Adjustments: | -$1,252.83 |
|---|---|---|
|  | **Adjusted Price:** | **$8,746.17** |

Comparable Vehicle Option Details:
CLOTH HIGH BACK CAPTAINS CHAIRS

## 2006 FORD EXPEDITION XLT 4D SUV 8 5.4 NORMAL GAS A2WD          List Price: **$8,495.00**

| VIN | Stock No. | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 1FMPU15556LA97342 | | 08/07/2017 | 30501 | 62 miles |

Source

DEALER WEB LISTING - VAST.COM

5 STAR AUTO SALES

712 ATLANTA HWY

GAINESVILLE GA 30501

770-534-8020

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$751.00 |
| Mileage | 156,915 | 163,683 | $194.45 |
| Equipment | | | |
| TECHNICAL CONVENIENCE PKG | Yes | No | $43.57 |
| BLACK LUGGAGE RACK W/CROSSBARS | Yes | No | $8.94 |
| CLOTH HIGH BACK CAPTAINS CHAIRS | Yes | No | $132.94 |
| REVERSE SENSING SYSTEM W/MESSAGE CENTER | Yes | No | $56.97 |
| LEATHER TRIMMED HIGH BACK CAPTAINS CHAIRS | No | Yes | -$485.96 |

Total Adjustments: -$800.09

**Adjusted Price:** **$7,694.91**

Comparison Vehicle Option Details

PWR FOLDING 3RD ROW SEATS, LEATHER TRIMMED HIGH BACK CAPTAINS CHAIRS

| 2006 FORD EXPEDITION XLT 4D SUV 8 5.4 NORMAL GAS A2WD | | | | List Price: $5,251.00 |
|---|---|---|---|---|

| VIN | Stock No. | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 1FMPU15546LA99289 | A99289 | 07/27/2017 | 30135 | 75 miles |

Source

DEALER WEB LISTING -
TRUECAR.COM

GEORGIA LUXURY CARS & TRUCKS

7468 DOUGLAS BLVD

DOUGLASVILLE GA 30135

678-594-3557

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$464.00 |
| Mileage | 156,915 | 152,442 | -$79.44 |
| Equipment | | | |
| TECHNICAL CONVENIENCE PKG | Yes | No | $26.93 |
| BLACK LUGGAGE RACK W/CROSSBARS | Yes | No | $5.52 |
| CLOTH HIGH BACK CAPTAINS CHAIRS | Yes | No | $82.18 |
| REVERSE SENSING SYSTEM W/MESSAGE CENTER | Yes | No | $35.22 |
| LEATHER TRIMMED HIGH BACK CAPTAINS CHAIRS | No | Yes | -$300.40 |

|  |  |
|---|---|
| Total Adjustments: | -$693.99 |
| **Adjusted Price:** | **$4,557.01** |

Comparison Vehicle Option Details

PWR FOLDING 3RD ROW SEATS, LEATHER TRIMMED HIGH BACK CAPTAINS CHAIRS

# Sub-Model Comparison

| Sub-Model Description | Configuration | Original MSRP |
|---|---|---|
| 2006 Ford Expedition XLT | 4 Door Utility 119" WB 5.4L 8 Cyl Gas  RWD | $34,660.00 |

# Vehicle Valuation Methodology Explanation

WorkCenter Total Loss was built through a joint partnership between J.D. Power and Associates vehicle valuation division Power Information Network (P.I.N.) and Mitchell International, a leading provider of claims processing solutions to private passenger insurers.

WorkCenter Total Loss produces accurate and easy-to-understand vehicle valuations via this five step process:

**Step 1 - Locate Comparable Vehicles**

Locate vehicles similar to the loss vehicle in the same market area. WorkCenter Total Loss finds these vehicles in AutoTrader.com, Cars.com, Vast.com and directly from dealerships.

**Step 2 - Adjust Comparable Vehicles**

Make adjustments to the prices of the comparable vehicles. The comparable vehicles are identical to the loss vehicle except where adjustments are itemized. There are several types of comparable vehicle adjustments

- Projected Sold Adjustment - an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price).

- Mileage Adjustment - an adjustment for differences in mileage between the comparable vehicle and the loss vehicle.

- Equipment- adjustments for differences in equipment between the comparable vehicle (e.g. equipment packages and options) and the loss vehicle.

**Step 3 - Calculate Base Vehicle Value**

The base vehicle value is calculated by averaging the adjusted prices of the comparable vehicles.

**Step 4 - Calculate Loss Vehicle Adjustments**

There are four types of loss vehicle adjustments:

- Condition Adjustment:

  Adjustments to account for the condition of the loss vehicle prior to the loss.

- Prior Damage Adjustment:

  Adjustments to account for any prior damage present on the loss vehicle prior to the loss.

- After Market Part Adjustment:

  Adjustments to account for any after market parts present on the loss vehicle prior to the loss.

- Refurbishment Adjustment:

  Adjustments to account for any refurbishment performed on the loss vehicle prior to the loss.

**Step 5 - Calculate the Market Value**

The Market Value is calculated by applying the loss vehicle adjustments to the base value.


Mitchell **WorkCenter**
Total Loss