IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

|  |  |
|---|---|
| KEDDRICK BROWN and MICHELLE BOST, *on behalf of themselves and those similarly situated*, | |
| Plaintiffs, | |
| v. | CIVIL ACTION FILE NO. 3:21-cv-175-TCB |
| PROGRESSIVE MOUNTAIN INSURANCE COMPANY and PROGRESIVE PREMIER INSURANCE COMPANY OF ILLINOIS, | |
| Defendants. | |

**O R D E R**

This case comes before the Court on Plaintiff Keddrick Brown's

motion [59] to certify class.[1]

---

[1] Also before the Court is Progressive's motion [107] for leave to file a sur-reply. "Neither the Federal Rules of Civil Procedure nor this Court's Local Rules authorize the filing of surreplies." *Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d, 1190, 1197 (N.D. Ga. 2005) (citing *Byrom v. Delta Fam. Care–Disability & Survivorship Plan*, 343 F. Supp. 2d 1163, 1188 (N.D. Ga. 2004)). "Although the

## I.     Background

Plaintiff Keddrick Brown owned a 2014 Dodge Charger insured by Defendant Progressive Mountain Insurance Company (collectively with Defendant Progressive Premier Insurance Company, "Progressive"). In May 2021, he was involved in an accident after which Progressive deemed his car a total loss. Under the insurance policy, upon a total loss Progressive was required to pay Brown the "actual cash value" of the vehicle at the time of the loss. The "actual cash value" was to be

---

Court may in its discretion permit the filing of a surreply, this discretion should be exercised in favor of allowing a surreply only where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." *Id*.

 This Court and its local rules have a specific briefing protocol both to ensure that each party is sufficiently heard and to prevent an endless back-and-forth in the pursuit of the parties' desire to have the "last word." Were the Court to grant Progressive's motion today, it would undoubtedly invite a motion from Plaintiffs to file a sur-sur-reply which the Court may—in the interest of fairness—be forced to grant. Rather than engage in an endless cycle of reply briefs, the Court finds that it has sufficient information and briefing to decide the matters before it; while a sur-reply should be granted in the limited situations where one would be beneficial to the Court in reaching a decision, the Court here feels a sur-reply from Progressive is unnecessary. Accordingly, Progressive's motion [107] for leave to file a sur-reply will be denied. Nevertheless, the Court reviewed Progressive's proposed sur-reply and finds that it would not change the holding in this Order.

determined by various factors including market value, age, and condition of the vehicle.

In determining the value of Brown's car, Progressive relied on a valuation report prepared by Mitchell International, Inc. Progressive contracts with Mitchell to determine market values of vehicles that Progressive insures.

To determine the value of Brown's car, Mitchell used four comparable vehicles for sale on internet listings. For each comparable vehicle, Mitchell made adjustments to the listed price to account for differences in mileage, features, and equipment. Mitchell also made an adjustment to each vehicle's value for what Defendants call a "Projected Sold Adjustment" ("PSA"). The PSA is intended to reflect consumer purchasing behavior, namely negotiating a lower price than the listed price. Brown alleges that because of the application of the PSA, his settlement was $830.50 less than what he should have received.

On October 11, 2021, Brown filed this action against Progressive and Mitchell, alleging that application of the PSA in arriving at the cash value of his vehicle constituted a breach of the insurance policy

and was contrary to Georgia law on motor vehicle accident reparations and the regulations promulgated thereunder. He seeks compensatory damages as well as declaratory and injunctive relief, asking the Court to enjoin application of the PSA in future total loss settlements.

He brings this action as a putative class action under Rule 23 of the Federal Rules of Civil Procedure. He argues that there are hundreds of Georgia policyholders affected by Defendants' practices and that common questions of fact and law predominate.

On January 10, 2022, Defendants filed motions to dismiss. The Court granted in part and denied in part the motions. The Court dismissed Brown's claim for breach of contract based on conformity with the Georgia Total Loss Regulation and his claims for equitable and declaratory relief. Additionally, it dropped Mitchell as a party to this case.

Then, on October 3, the parties submitted a joint motion to consolidate cases. The parties sought to consolidate Brown's action with a similar case filed by Plaintiff Michelle Bost against Defendant

Progressive Premier Insurance Company of Illinois.[2] The Court granted [47] the joint motion and consolidated both putative class actions under a single case number.

On February 17, 2023, Plaintiffs filed their motion [59] to certify class. They ask the Court to grant class certification because they argue that resolution of a single question—whether the PSA can ever be applied under Progressive's form insurance policy—would resolve virtually the entire class's claims.

Progressive objects [80] to class certification, arguing that there is no way to resolve the litigation without the Court or jury answering an individualized question for each class member.

## II.   Legal Standard

In deciding whether to certify a class, a district court has broad discretion. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992).

---

[2] Bost alleges substantially similar facts: that she was in an automobile accident that resulted in the total loss of her vehicle; that she was insured by Progressive; that she was entitled to the actual cash value of her vehicle at the time of the loss; and that Defendants applied a PSA when estimating the value of her vehicle. Bost brings substantially similar claims to Brown: breach of contract and breach of the covenant of good faith and fair dealing.

"For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009) (quotation omitted).

"Under Rule 23(a), every putative class first must satisfy the prerequisites of 'numerosity, commonality, typicality, and adequacy of representation.'" *Id.* (quoting FED. R. CIV. P. 23(a)).

"A district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class." *Id.* at 1266 (quotation omitted). "Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Id.* (quoting *Valley Drug Co. v. Geneva Pharms.*, 350 F.3d 1181, 1188 n.15 (11th Cir. 2003)); *see also Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1237 (11th Cir. 2016) ("A district court must decide all

6

questions of fact and law that bear on the propriety of class certification." (quotation omitted)).

The party moving for class certification bears the burden of establishing each element of Rule 23(a). *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253 (11th Cir. 2003). The moving party "must affirmatively demonstrate his compliance" with the class certification requirements. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "All else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation." *Electrolux*, 817 F.3d at 1233.

## III. Discussion

Rule 23(b)(3)—upon which Plaintiffs base their motion—states that in order to certify a class under that subsection, the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and

that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

The Court will first address the threshold requirement that the class be "ascertainable." The Court will then address the 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation. Then it will address the Rule 23(b) requirements that the common questions "predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

## A.    Ascertainable Class

"In addition to meeting the requirements of Federal Rule of Civil Procedure 23, a plaintiff seeking class certification must establish that the class is adequately defined and clearly ascertainable." *Holzman v. Malcolm S. Gerald & Assocs., Inc.*, 334 F.R.D. 326, 334 (S.D. Fla. 2020) (citing *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012)). "An identifiable class exists if its members can be ascertained by

8

reference to objective criteria." *Id.* (quoting *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014)).[3]

Here, the putative class's membership is "capable of determination," which is all that is required for a finding of ascertainability. *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021). The criteria of membership—insured by Progressive, date of loss, whether it was a total-loss claim, whether it was based on a Mitchell valuation report, and whether a PSA was applied—are objective in nature and are readily found in Progressive's electronic data.

Since identification of class members can likely be made solely based on information in Progressive's possession—shown when the parties proved subject-matter jurisdiction [34, 35, 36]—it is certainly "capable of determination" and thus is ascertainable.

---

[3] The Eleventh Circuit has recently removed "administrative feasibility" as a requirement to ascertainability. *See Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021) ("We hold that administrative feasibility is not a requirement for certification under Rule 23. In doing so, we limit ascertainability to its traditional scope: a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination.").

## B.    Rule 23(a) Requirements

### 1.    Numerosity

Rule 23(a)(1) requires that the proposed class be so numerous that joinder is impractical. "[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate . . . ." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (punctuation omitted). According to Progressive's data, there are more than 100,000 potential members of the class. Accordingly, Plaintiffs satisfy the numerosity requirement.

### 2.    Commonality

Rule 23(a)(2) requires that there be questions of law or fact common to the class. "Their claims must depend upon a common contention . . . that . . . is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

Plaintiffs assert that the common question of law—and indeed the question at the crux of this case—is whether Progressive's application of

10

the PSA constitutes a breach of its form policy. Because the policy language is identical across the putative class, application of the PSA would represent a breach as to all putative members' policies. Plaintiffs assert that whether a breach occurred turns on two questions, both subject to common evidence: (1) whether the PSA deduction is baseless and invalid; and (2) whether the PSA deduction can be excised from the valuation reports to arrive at a proper actual cash value amount. The Court agrees that these questions are common to the class and are subject to common evidence and resolution.

Determining whether Progressive's application of the PSA constitutes a breach of its form policy would resolve the primary merits-based "issue that is central to the validity of each one of the claims in one stroke." *Id*.

Progressive argues that the common question is not whether application of the PSA is valid, but rather whether each putative class member was paid the actual cash value for his total-loss claim. Nevertheless, if the application of the PSA is found to be generally violative of Progressive's form policy, it would necessarily be based on a

finding that application of the PSA results in a payment different from the actual cash value of the totaled vehicle.

"What matters to class certification is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id*. (quotation omitted). Here, the determination of whether the PSA was inaccurate and invalid constitutes a common answer to the class's common question.

"The commonality requirement is . . . met by the issues Plaintiff[s] put[] forth which will be answered by interpretation of the Policy and [Georgia] statute." *Signor v. Safeco Ins. Co. of Ill.*, No. 19-61937-CIV, 2021 WL 1348414, at *5 (S.D. Fla. Feb. 18, 2021), *aff'd*, 72 F.4th 1223 (11th Cir. 2023). The Court thus holds that there are questions of law and fact that are common to the putative class, and Rule 23(a)(2) is satisfied.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."

12

"In other words, there must be a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).

"A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Id*. Importantly, "[t]ypicality . . . does not require identical claims or defenses." *Id*. "A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class." *Id*. (citation omitted).

Plaintiffs satisfy the typicality requirement. Progressive has uniform practices, and Progressive's policies contain identical form language. The key issue in this case is whether Progressive's practice is lawful and/or constitutes a breach of the policies. But the putative class's claims all arise from the same "course of conduct"—that is, Progressive allegedly undervaluing total-loss claims by applying a PSA. Both Brown and Bost suffered total-loss claims, and both had a PSA

13

applied to—and reduced from—their eventual recovery from
Progressive. Their claims are typical of the class, and Rule 23(a)(3) is
satisfied.

### 4.   Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly
and adequately protect the interests of the class." "This 'adequacy of
representation' analysis 'encompasses two separate inquiries: (1)
whether any substantial conflicts of interest exist between the
representatives and the class; and (2) whether the representatives will
adequately prosecute the action.'" *Valley Drug*, 350 F.3d at 1189
(quoting *In re HealthSouth Corp. Sec. Litig.*, 213 F.R.D. 447, 460–61
(N.D. Ala. 2003)).

Plaintiffs assert that they are adequate representatives because
both prongs are satisfied: their interests and the interests of the class
members are not antagonistic; and they have selected qualified,
experienced class counsel committed to expending the resources to
properly prosecute this claim.

Progressive argues that Plaintiffs are inadequate representatives for two reasons: (1) the proposed class encompasses individuals who may have *benefitted* from the application of the PSA; and (2) Plaintiffs have "jeopardized" other claims by focusing exclusively on application of the PSA. Specifically, they argue that Plaintiffs are sacrificing claims on behalf of class members who may dispute other aspects of their valuation—not just the PSA.[4]

"Significantly, the existence of minor conflicts alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy." *Id.* (citation omitted). "A fundamental conflict exists where some party members claim to have been harmed by the same conduct that benefitted other members of the class." *Id. See also Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000) ("[A] class cannot be certified when its members have opposing interests or when it consists

---

[4] As an initial matter, the Court will not inquire into the tactical decisions of the class counsel other than to note that they are indeed qualified to make these decisions and that class members will, of course, have the ability to opt-out of the class if they wish to pursue other claims against Progressive.

of members who benefit from the same acts alleged to be harmful to other members of the class.").

Progressive asserts that certain class members would have benefitted from the application of the PSA. This is so, they argue, not because the PSA was not a deduction, but because under a different methodology the deduction may have been greater or the payout may have been lower.

The Court disagrees with Progressive's characterization of what constitutes a "benefit." The fact that under other methodologies certain class members would have received even less than they did does not render irrelevant the fact that the PSA certainly resulted in a reduction. Should the application of the PSA be found to be improper, all putative class members would benefit.

"Absolute homogeneity and unity of interests is not necessarily contemplated by Rule 23 class actions brought under Rule 23(b)(3) for monetary damages, as Plaintiff[s] do[] here." *Signor*, 2021 WL 1348414, at *6 (citing *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1156 (11th Cir. 1983)).

16

Accordingly, the Court holds that Plaintiffs are adequate representatives of the class. It additionally holds that "Plaintiff[s'] counsel is qualified pursuant to Rule 23(g)(1) to represent the putative classes. Plaintiff[s'] counsel has sufficient experience with class actions and complex litigation." *Id*.

### C.    Rule 23(b)(3) Requirements

Finding that all Rule 23(a) requirements are satisfied, the Court now turns to the requirements of Rule 23(b)(3): (1) that the questions of law or fact common to class members predominate over any questions affecting only individual members; and (2) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

### 1.    Predomination

Plaintiffs assert that common issues predominate over individual issues. Specifically, they assert that the elements of a breach of contract claim in Georgia are each subject to "common proof."

They argue that the actual breach is readily provable with common evidence. They contend that this is so because a finding that

17

application of the PSA is improper would necessitate a finding that Progressive did not pay the actual cash value for total-loss claims and, ergo, a finding of breach of contract.

Further, they claim that the measure of damages is easily calculated and doesn't require individualized determinations. They assert that the measure of damages is "the amount of the PSA deduction—calculated as the total amount of the PSA deductions, divided by the number of comparable vehicles utilized—plus prejudgment interest." [60] at 17.

They assert that their "damages model" is "consistent with [their] theory of liability." *Id*. at 18. They agree with the calculation of the market value of the vehicles—other than the application of the allegedly improper PSA. Thus, Plaintiffs' damages model involves excising the offending portion of the valuation and calculating the ACV without application of the PSA.

Progressive responds that (1) determining liability to each class member would require individualized valuations of the ACV of each class member's insured vehicle; and (2) calculating the damages for any

injured class member would also require an individualized determination of the amount below ACV that each class member was paid. It contends that it is not as simple as dividing the total PSA adjustment across the class by the number of class members. Instead, it asserts that the PSA is tied to—and affects—other adjustments (like condition adjustments) and these adjustments rely on historical data that no longer exists. Thus, it argues that there is no way to excise the PSA and calculate the ACV on a class-wide basis.

"[I]ndividual damage calculations generally do not defeat a finding that common issues predominate." *Electrolux*, 817 F.3d at 1239 (internal quotations omitted). "Two exceptions to this general rule exist, however. Damage issues may predominate when computing damages would be 'so complex, fact-specific, and difficult that the burden on the court system would be simply intolerable,' or when individual damages are accompanied by 'significant individualized questions going to liability.'" *Signor*, 2021 WL 1348414, at *8 (quoting *Electrolux*, 817 F.3d at 1239).

"To determine whether the requirement of predominance is satisfied, a district court must first identify the parties' claims and defenses and their elements." *Electrolux*, 817 F.3d at 1234 (citation omitted). "The district court should then classify these issues as common questions or individual questions by predicting how the parties will prove them at trial." *Id.* (citation omitted).

"The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Kuritzky v. Emory Univ.*, 669 S.E.2d 179, 181 (Ga. Ct. App. 2008) (citing *Odem v. Pace Acad.*, 510 S.E.2d 326, 331 (Ga. Ct. App. 1998)).

Progressive contends that both the liability determination—i.e., whether a breach occurred—and the damages calculation are not subject to common proof, and it argues that individualized questions will predominate over common ones. The Court will first address two common questions related to the actual breach that predominate over individualized concerns. Then it will address damages.

20

### a.   Common Question: Breach

Plaintiffs' theory of liability is that application of the PSA is a breach of Progressive's form policy. Specifically, their experts testify that the PSA is not supported by proper statistical methodology, is not reflective of the used car market, and does not result in an accurate ACV. Plaintiffs properly note that "the jury will be presented with two competing viewpoints": (1) that the PSA is a proper part of Progressive's uniform method of calculating ACVs; and (2) the PSA is invalid, in conflict with market forces and empirical evidence, and not a proper element of calculating ACV. These questions are subject to common proof—particularly from the parties' experts—and "the jury will either agree or not" with each side's position. Either way, the Court agrees, "it applies equally to the Class." [60] at 16–17.

"For Plaintiffs, the key question for both claims and for all classes . . . is, in substance, whether the PSA reflects how cars are valued and sold in the market. Plaintiffs argue that this question is susceptible of a common answer for all class members." *Volino v. Progressive Cas. Ins.*

*Co.*, Nos. 21 Civ. 6243 (LGS), 22 Civ. 1714 (LGS) 2023 WL 2532836, at *7 (S.D.N.Y. Mar. 16, 2023). This Court agrees.

Progressive asserts that a finding of a breach of the policy depends on an individualized inquiry into whether the methodology it applied (with the PSA) produced a reasonable estimate of the PSA. But "[t]hese arguments misconstrue what the PSA is and why Plaintiffs say it is deceptive and breaches the [p]olicies." *Id*. at *8. "Plaintiffs' complaint is not that the specific PSA applied to any specific comparable vehicle guessed wrong in hindsight, but that no PSA should have been applied in the first instance, because the data itself is manipulated." *Id*.

The factfinder is capable of making a class-wide determination of whether application of the PSA constituted a de facto violation of the policy. If it answers in the affirmative, it will do so for the entire class. *See id*. ("Whether applying the PSA was a legitimate methodology, and whether Progressive misled insureds about it, does not depend on whether the PSA's predictions occasionally came true.").

22

### b.    Common Question: Actual Cash Value

Progressive also argues that there is no common proof of the ACV of vehicles that can be applied class-wide. "Plaintiffs respond that they intend to argue that each vehicle should be valued by running every step of Progressive's methodology except for the PSA." *Id.* "Contrary to Progressive's argument, Progressive's own valuation data, with and without the PSA, constitutes class-wide proof of actual cash value, which can be compared with the amount Plaintiffs were paid to determine liability and damages." *Id.*

Additionally, through its experts, Plaintiffs have provided evidence that (1) list prices reflect market value; (2) removing the PSA arrives at an accurate ACV; (3) Progressive excludes certain data and factors; and (4) vehicles typically sell for list price.

Like in *Volino*, "Plaintiffs claim, in effect, that all or virtually all dealerships today are 'no-haggle,' 'one price' dealerships." *Id*; *see also* [60-6] at 5 (Expert Report of Jason Merritt) ("[T]here is no hard

data available to an appraiser to support an opinion that a particular comp would sell on a particular day for anything other than the Internet price.").

"If the factfinder accepts Plaintiffs' evidence on the state of the market, then simply recalculating the valuation using Progressive's methodology without the PSA will accurately value each class member's vehicle." *Id*; *see also Sampson v. United Servs. Auto. Ass'n*, No. 6:19-CV-00896, 2022 WL 1415652, at *8 (W.D. La. May 3, 2022) (certifying the class and agreeing with the plaintiffs that "the question of whether [plaintiff's proposed method] is the correct measure of the value of [p]laintiffs' vehicles is a common merits questions not to be resolved at the class certification stage").

Admittedly, the factfinder is under no obligation to accept Plaintiffs' evidence and methodology. But that bears little on whether common issues predominate, and the Court is convinced that the merits of Plaintiffs' claims are subject to class-wide resolution.

Progressive finally argues that Plaintiffs cannot establish liability without proving that, for each vehicle, the Mitchell ACV—with the PSA

applied—was less than the valuations calculated in the Kelley Blue Book ("KBB") or by the National Automobile Dealers Association ("NADA"). But while "[a] district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class," and it "should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied," it "should not determine the merits of the plaintiffs' claim at the class certification stage . . . ." *Vega*, 564 F.3d at 1266; *see also Valley Drug*, 350 F.3d at 1188 n.15.

Progressive's defense that it indeed paid the ACV for the vehicles—at least as calculated by KBB and NADA—even with the PSA applied, is just that: a defense. It is a defense to the argument that the application of the PSA necessarily breaches the policy. But because (1) Plaintiffs' theory of liability is that the PSA necessarily breaches the policy, (2) they have submitted evidence through their expert that the application of the PSA results in a value lower than the ACV, and (3) they have submitted evidence that excising the PSA results in a value that closely aligns with the ACV, their methodology *can* be used to

make a class-wide liability determination. Whether the factfinder

agrees with Plaintiffs' position and methodology or with Progressive's is

not relevant at the class certification stage.

### c.   Common Question: Damages

In *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), the Supreme

Court held that "when plaintiffs argue that damages can be decided on

a class-wide basis, plaintiffs must put forward a damages methodology

that maps onto plaintiffs' liability theory." *Slade v. Progressive Sec. Ins.

Co.*, 856 F.3d 408, 410–11 (5th Cir. 2017) (citing *Comcast*, 569 U.S. at

35).

Plaintiffs' damages model here is consistent with their theory of

liability. Plaintiffs contest the calculation of the base market value of

the vehicle, not any condition-based adjustments applied after the base

value is calculated. Their damages model consists of excising the PSA

deduction from the base value, then applying the condition adjustments

to the proper base value. "Because this condition adjustment is a

separate and unrelated step from the calculation of base value, there is

26

no principled reason why Defendant's own condition adjustment scores could not be used to adjust base values" without the PSA. *Id*. at 411.

This avoids making "highly individualized" condition adjustments across the class and instead allows a straightforward, class-wide damages calculation. *See id*. at 412 ("Plaintiffs' class certification motion may have run into predominance problems because condition adjustments appear to be highly individualized. Perhaps recognizing this concern, [p]laintiffs disclaimed any challenge to the condition adjustment.").

This case is similar to *Slade*, but the damages calculations here are even more suitable to class-wide determination. In *Slade*, the plaintiffs contended that "damages can be calculated by replacing [d]efendant's allegedly unlawful . . . base value with a lawful base value, derived from either NADA or KBB, and then adjusting that new base value using [d]efendant's current system for condition adjustment." *Id*. at 411. The plaintiffs sought to use an external source—NADA or KBB—to provide the appropriate base value from which to calculate the ACV.

27

Here, Plaintiffs' proposed method is even simpler. Plaintiffs here propose to excise the allegedly unlawful PSA. That alone—they assert through their expert—will arrive at a proper base value.

In *Slade*, plaintiffs' expert "opined that she could apply [d]efendant's condition adjustment to [d]efendant's NADA scores or publicly available NADA or KBB data." *Id*. Here, Plaintiffs' expert testified that "removing the PSA from Mitchell reports arrives at a sound individualized ACV appraisal." [88] at 17; *see also* [60-6] at 7 (Expert Report of Jason Merritt) ("Absent the Projected Sold Adjustment, the Mitchell methodology provides a sound determination of ACV, consistent with the comp methodology commonly used by appraisers. So, the Mitchell report can be used to determine the ACV of Plaintiffs' vehicles . . . by simply backing out the Projected Sold Adjustment.").

After removing the PSA, "the Market Value can be recalculated using that revised Base Value and the adjustments for condition, prior damage, aftermarket parts, or refurbishment already determined by Mitchell." *Id*.

As in *Slade,* "[t]his damages methodology fits with Plaintiffs' liability scheme because it isolates the effect of the allegedly unlawful base value. That is, by essentially rerunning Defendant's calculation of actual cash value but with a lawful base value, Plaintiffs' damages theory only pays damages resulting from the allegedly unlawful base value." *Slade*, 856 F.3d at 411; *see also Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700, 711–12 (5th Cir. 2020) (upholding a class certification where "a discrete portion of the [insurer's] formula . . . is easily segregated and quantified").

Accordingly, the Court finds that Plaintiffs' proposed damages methodology aligns with their liability theory and that common issues predominate with respect to damages. And though the specific determination of damages may require individualized calculations, "the necessity of calculating damages on an individual basis will not necessarily preclude class certification." *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006) (citing *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 306 (5th Cir. 2003)); *see also Krakauer v. Dish Network, LLC*, 925 F.3d 643, 658 (4th Cir. 2019) ("The entire notion of

predominance implies that the plaintiffs' claims need not be identical.").

Because the calculation of damages is "susceptible to a mathematical or

formulaic calculation," the Court finds that class treatment is

appropriate. *Mitchell*, 954 F.3d at 711 (quotation omitted).

The Court thus finds that the common questions of law and fact—

specifically whether a breach occurred, whether the ACV was paid, and

the calculation of potential damages—predominate over any

individualized questions.

## 2.   Superiority

Rule 23(b)(3) requires a finding that "a class action is superior to

other available methods for fairly and efficiently adjudicating the

controversy." "In determining superiority, courts must consider the four

factors of Rule 23(b)(3)." *Vega*, 564 F.3d at 1278 (quotation omitted).

Those are

(A)   the class members' interests in individually controlling
      the prosecution or defense of separate actions;

(B)   the extent and nature of any litigation concerning the
      controversy already begun by or against class
      members;

30

(C)    the desirability or undesirability of concentrating the
       litigation of the claims in the particular forum; and

(D)    the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b)(3)(A)–(D).

The Court finds that all four factors weigh in favor of a finding of
superiority.

### a.    Individual Interests

First, the monetary damages that Plaintiffs individually seek
would be greatly outweighed by the cost of litigating an individual suit
against Progressive. Plaintiff Keddrick Brown's alleged PSA damages
are $830.50, and Plaintiff Michelle Bost's are $699.67. Plaintiffs' expert
testified that the average putative class member would have a claim of
a similar value. *See* [60-5] at 13 (Expert Report of Michelle Lacey) ("For
. . . 148 [sample claims] where a Projected Sold Adjustment was applied
to one or more comparable vehicles, the average adjustment was
$627.93 . . . ."). "Even considering the availability of attorneys' fees,
such a claim would not be worth pursuing on an individual basis. It
would be inefficient and burdensome for the courts, the class, and

Defendants, to allow the claims to be prosecuted individually." *Smith v. Ga. Energy USA, LLC*, 259 F.R.D. 684, 697 (S.D. Ga. 2009).

"The most compelling rationale for finding superiority in a class action [is] the existence of a negative value suit." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996). "A 'negative value' suit is one in which putative class members would expend more money by litigating their suits individually than they would stand to gain in damages on an individual basis." *Smith*, 259 F.R.D. at 697.

With an average claim of less than $1000, this is a negative value suit, and the Court finds that this weighs heavily in favor of superiority.[5]

### b.   Ongoing Litigation

The parties point to no cases in the state that concern the same or similar claims. While several similar cases are ongoing in different

---

[5] Progressive also argues that the class treatment would discourage insureds from pursuing an appraisal or engaging in negotiation or alternative dispute resolution. But its argument is misplaced. Nothing prevents insureds from pursuing an appraisal or alternative dispute resolution—those insureds are simply not members of the putative class that only includes those who have *settled* based on a Mitchell valuation report.

states, none arise under Georgia law and thus none have bearing on the superiority of a class action in this case.

Accordingly, the absence of substantially similar litigation weighs in favor of certification.

### c.   Desirability of Concentration in the Forum

The parties point to no specific need to concentrate the litigation in this—or any other—forum. Beyond the fact that this is a Georgia law-based suit, there is no particularly compelling reason to concentrate in this Court or elsewhere. That said, "it is desirable to concentrate claims in a particular forum when that forum has already handled several preliminary matters." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1271 (11th Cir. 2004). Here, this Court has handled a dispute over subject-matter jurisdiction and has ruled on a motion to dismiss. It is familiar with the facts and details surrounding the claims in this case and is well-suited to adjudicate the class's claims. Accordingly, this factor weighs in favor of certification.

### d.   Management Difficulties

Progressive argues that this class will be uniquely unmanageable because simply ascertaining the class would take "one Progressive employee working full-time almost 18 years." [80] at 34. But that position is not grounded in the facts. The proposed class is easily ascertainable by reference to Progressive's data. *See* [60-5] at 9 ("The members of the classes can be determined by a review of: (a) the relevant data in Progressive's claims system database; and (b) the electronically stored PDF copies of the Mitchell Instant Reports for each class member.").

The Court has already held that the class is ascertainable, and the parties have proven the ascertainability of the class when they proved that subject-matter jurisdiction existed earlier in the case. *See* [34, 35, 36]. Also, as previously discussed, liability and damages will be established through common proof. And class treatment is undoubtably

more manageable than the potential for more than 100,000 individual cases.[6]

This Court has conducted class actions before, and it is confident that it can manage the putative class in this case. For that reason, the manageability factor weighs in favor of certification.

Because the Court finds that all four factors weigh in favor of certification, the Court holds that class treatment in this case is superior, and Rule 23(b)(3) is satisfied.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' motion [59] for class certification is granted. The Court certifies the following class (as set forth in [88-8], Plaintiff's reply brief):

> All persons who made a first-party claim on a policy of insurance issued by Progressive Mountain Insurance Company to a Georgia resident where the claim was submitted from October 11, 2015, through the date of this Order, and Progressive determined that the vehicle was a total loss and based its claim payment on an Instant Report

---

[6] This is why a management concern "will rarely, if ever, be in itself sufficient to prevent certification of a class. Courts are generally reluctant to deny class certification based on speculative problems with case management." *Klay v. Humana, Inc.* 382 F.3d 1241, 1272–73 (11th Cir. 2004) (quotation omitted).

from Mitchell where a Projected Sold Adjustment was
applied to at least one comparable vehicle.

**<u>And</u>**

All persons who made a first-party claim on a policy of
insurance issued by Progressive Premier Insurance
Company of Illinois to a Georgia resident where the claim
was submitted from June 8, 2016, through the date of this
Order, and Progressive determined that the vehicle was a
total loss and based its claim payment on an Instant Report
from Mitchell where a Projected Sold Adjustment was
applied to at least one comparable vehicle.

The Court orders that the parties meet and confer regarding the

required notice to be sent to the class pursuant to Rule 23(b)(c)(2)(B).

The parties are **ordered to submit a joint proposed notice within**

**twenty-one days**. In the event the parties cannot agree to the form

and content of the notice, each party may submit its own proposed

notice—though the Court strongly encourages a joint notice. The

proposed notice(s) should be filed on the docket and emailed (in

Microsoft Word and PDF) form to Uzma_Wiggins@gand.uscourts.gov.

Additionally, the Court appoints Plaintiffs' counsel as class

counsel under Rule 23(g). The Court

must consider: (i) the work counsel has done in identifying or
investigating potential claims in the action; (ii) counsel's

experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

FED. R. CIV. P. 23(g).

The Court is satisfied with counsel's efforts to this point in the action and with counsel's experience in handling this type of case. The Court has no doubt in counsel's knowledge of the applicable law, and it is confident that counsel will commit sufficient resources to representing this potentially large class.

Finally, Progressive's motion [99] for leave to file under seal is granted, and its motion [107] to file a sur-reply is denied.

IT IS SO ORDERED this 3rd day of August, 2023.

Timothy C. Batten, Sr.
Chief United States District Judge

37