IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| KEDDRICK BROWN and MICHELLE BOST, on behalf of themselves and those similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>PROGRESSIVE MOUNTAIN INSURANCE COMPANY and PROGRESSIVE PREMIER INSURANCE COMPANY OF ILLINOIS,<br><br>    Defendants. | CIVIL ACTION FILE<br><br>NUMBER 3:21-cv-175-TCB |

**O R D E R**

This case comes before the Court on the motion [117] for summary judgment of Defendants Progressive Mountain Insurance Company and Progressive Premier Insurance Company of Illinois (collectively, "Progressive").

## I.     Background

This issue in this case is how to value a damaged used car. When an insured's car is a total loss after an accident, Progressive is contractually required to pay the insured the actual cash value ("ACV") of the vehicle at the time of the loss. The ACV must be based on the "market value, age, and condition" of the vehicle. [59-4] at 20. To determine the market value of vehicles, Progressive contracts with Mitchell International, Inc. ("Mitchell"), which provides valuation reports produced by valuation software called WorkCenter Total Loss ("WCTL").

In making these valuation reports, Mitchell finds comparable vehicles for sale on internet listings. It then adjusts these listed prices to account for differences in mileage, features, and equipment. Mitchell also applies an adjustment known as a "projected sold adjustment" ("PSA") when making these reports.

Now, what exactly is a PSA? According to Progressive, it is a price adjustment meant to reflect the (allegedly) customary downward price negotiations that the average buyer works out with the dealer. Plaintiffs dispute that these downward negotiations are the norm;

instead, they argue that the average used vehicle usually sells for the list price.

Plaintiffs allege that Progressive undervalued their vehicles by applying the PSA to the ACV of their vehicles. Because Plaintiffs believe that a PSA adjustment does not reflect the realities of the used car market, they argue that Progressive violated its contractual duty to determine their vehicles' ACVs based on the "*market value*, age, and condition" of the vehicle. [59-4] at 20 (emphasis added).

On October 11, 2021, Keddrick Brown filed this action, and it was consolidated with Michelle Bost's case in October 2022. Plaintiffs allege that application of the PSA to the ACV of their vehicles constitutes a breach of their insurance policies, as well as a breach of the covenant of good faith and fair dealing. Plaintiffs bring this case as a class action, and the class was certified on August 3, 2023. [109].

Progressive now moves for summary judgment, arguing that Plaintiffs have not presented sufficient evidence to create a genuine dispute as to whether Progressive paid them less than the ACV of their vehicles.

## II. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). There is a "genuine" dispute as to a material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In making this determination, however, "a court may not weigh conflicting evidence or make credibility determinations of its own." *Id.* (citation omitted). Instead, the court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Id.* (citation omitted).

"The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the nonmoving party would have the burden of proof at trial, there are two ways for the moving party to satisfy this initial burden. *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437–38 (11th Cir. 1991). The first is to produce

"affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.* at 1438 (citing *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting)). The second is to show that "there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex Corp.*, 477 U.S. at 325 (majority opinion)).

If the moving party satisfies its burden by either method, the burden shifts to the nonmoving party to show that a genuine issue remains for trial. *Id.* At this point, the nonmoving party must "'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995) (quoting *Celotex Corp.*, 477 U.S. at 324).

### III.  Discussion

Progressive contends that Plaintiffs have not presented sufficient evidence to prove that they were paid less than the ACV of their vehicles. In making this argument, Progressive attacks Plaintiffs' theory of liability and the credibility of their experts. The Court has already addressed many of these issues in its class certification order

[109] and its *Daubert* order [124] but will still go through each argument.

### A. Theories of Liability

The heart of all the arguments stem from the fundamentally different ways that Plaintiffs and Progressive view this case. Progressive's motion attempts to make the Court choose its framing. Because this decision is for the jury, the Court will deny Progressive's motion on this point.

#### 1. Application of the PSA Affecting Market Value

The parties first diverge over whether application of the PSA affects the market value of a vehicle. Plaintiffs assert that *any* application of a PSA adjustment skews the market value of their vehicles and thus breaches their contracts. In Plaintiffs' view, because the method of determining a vehicle's value is allegedly flawed (by applying the PSA), any ACV produced would not be accurate because the market value would be off. To prove this, Plaintiffs rely on experts to testify on the used car market to demonstrate that application of the PSA conflicts with the realities of the market.

Progressive disputes that any application of the PSA necessarily counters the market. In its view, application of the PSA does not inherently affect the market value of a car, and thus the ACV produced by its method could be accurate. Progressive argues that to prove liability, Plaintiffs must put forward evidence of the market value of their individual vehicles to show that Progressive underpaid them. Progressive contends that because none of Plaintiffs' experts testified to Plaintiffs' vehicles' ACVs, their testimony does not support a finding of a disputed issue of fact as to the value of Plaintiffs' vehicles.

### 2. How to Calculate a Vehicle's ACV

Flowing from this disagreement, the parties also dispute how to properly calculate the ACV of a vehicle. Plaintiffs argue that the Mitchell reports are reliable apart from application of the PSA, so a vehicle's ACV can be determined by excising the PSA value from the Mitchell report. By doing this, Plaintiffs assert that they have adequately proven the values of their vehicles.

Progressive disagrees that this method produces an accurate ACV. It disputes that calculating a vehicle's ACV is as simple as excising the PSA value, and therefore, argues that Plaintiffs have not created an

issue of fact on the value of their vehicles because they have not presented an accurate alternative ACV to the Mitchell numbers.

### 3. Putting It All Together

In its motion for summary judgment, Progressive argues that Plaintiffs have presented no evidence of the ACV of their vehicles, and therefore, there is no evidence from which a jury could conclude that they were underpaid. [117] at 12.

This argument requires implicit acceptance of Progressive's theory of liability since Plaintiffs have indeed put forward evidence supporting their theory of liability—that the PSA counters the market and any application of the PSA results in an ACV not based on the market value of a vehicle. The only way to find that Plaintiffs have put forward no evidence of ACV would require embracing Progressive's theory of liability and discounting Plaintiff's theory of liability. The Court has already refused to make this choice and will not change its mind now.

In its order certifying the class, the Court explained that "the jury will be presented with two competing viewpoints: (1) that the PSA is a proper part of Progressive's uniform method of calculating ACVs; and (2) the PSA is invalid, in conflict with market forces and empirical

8

evidence, and not a proper element of calculating ACV." [109] at 21 (quoting [60] at 16–17). It will then be up to the jury to decide which position is stronger. The jury will be making the choice between these two theories. Plaintiffs are correct that it is not appropriate for the Court to resolve this issue on summary judgment.

So, it does not matter that none of Plaintiffs' experts have an opinion on the individual ACV of any of Plaintiffs' vehicles. That is not what the experts are there to do. Rather, Plaintiffs are relying on their experts to prove broader points about the realities of the used car market and the validity of a PSA deduction. Progressive can argue against the experts' opinions on these subjects, but it cannot fault the experts for not providing testimony on a subject for which they were not retained.

And contrary to Progressive's argument, this is not tantamount to Plaintiffs' proving their claims based on averages. Rather, Plaintiffs explicitly state that application of the PSA produces "always lower sales prices." [128] at 19. They can say this based on their theory of calculating the ACV of vehicles. If Plaintiffs are correct that ACV can be calculated by simply excising the PSA, then their vehicles' values will

indeed always be lower. So it all works together: If the PSA is invalid based on the evidence of the used car market, then it is not a proper element of calculating ACV. If ACV can be calculated by excising the PSA, then the ACV of Plaintiffs' vehicles is always lower. There is no reliance on averages in this theory—Plaintiffs can show the exact value of their vehicles, presuming the jury accepts their theory of liability. Progressive is free to convince the jury otherwise, but the Court will not decide this overarching question of the theory of liability on summary judgment.

### B. Evidentiary Support

Moving to Plaintiffs' theory of liability, Progressive also opposes Plaintiffs' experts, arguing that they are not reliable or relevant enough to create a genuine issue of material fact on the issues for which Plaintiffs have retained them.

#### 1. Merritt's Testimony (Excising PSA from WCTL)

Progressive disputes that a vehicle's ACV can be determined by excising the PSA value from the WCTL valuation. It argues that Plaintiffs' expert Jason Merritt's testimony on this point is not sufficiently reliable to establish a genuine issue of material fact. It

contends that Merritt does not know what a PSA is or how it is calculated, that he did not evaluate the accuracy of Plaintiffs' valuation reports, and that he did not test whether applying the PSA arrives at market value.

The Court has already addressed these arguments in its *Daubert* Order. [124]. The Court held then, and restates now, that Progressive's objections to Merritt's testimony on this subject go to the weight of his testimony. [124] at 21. Progressive may challenge Merritt's background knowledge and evaluation process on cross-examination to convince the jury that his testimony cannot prove that ACV can be determined by excising the PSA from the WCTL report. But Merritt's testimony is sufficient to create a genuine issue of material fact on this point at the summary judgment stage.

### 2. Merritt's Testimony (Appraisal Standards)

Progressive also challenges Merritt's testimony on appraisal standards. It contends that any argument based on appraisal standards is irrelevant because neither the insurance policy nor Georgia law requires Progressive to follow a specific method to determine ACV. It

11

also contends that even if appraisal standards are relevant, Merritt's testimony on the subject is not reliable.

To start, the Court has already held that Merritt's testimony is both helpful and reliable. [124] at 19–21. Any issue Progressive has with the reliability of Merritt's testimony is better addressed on cross-examination, as this goes to the weight and not the admissibility of his testimony.

Further, Merritt's testimony on this issue is relevant. His testimony on appraisal standards is not the *basis* of Plaintiffs' claims; rather, Plaintiffs are using it as further proof for their contention that the PSA adjustment does not reflect the market value. It is simply another data point, not the whole ballgame. This is distinguishable from the case Progressive cites where the plaintiff was relying on appraisal standards as the basis of her breach-of-contract claim. *Curtis v. Progessive N. Ins. Co.*, No. CIV-17-01076-PRW, 2022 WL 109003 (W.D. Okla. Jan. 11, 2022) ("The crux of Ms. Curtis's breach of contract claim is that this provision guaranteed her either the NADA 'clean retail' valuation or her private appraiser's estimated value."). Here, Plaintiffs argue that the market value to which they are entitled is

simply the Mitchell value without the PSA deduction. The appraisal standards are support for a larger point about the state of the used car market. Therefore, Merritt's testimony on appraisal standards is relevant, and summary judgment is not appropriate on this issue.

### 3. Manipulation of the Data

Progressive next argues that Plaintiffs' allegation—that the data underlying the PSA adjustment is manipulated—is irrelevant and unreliable and therefore does not create a genuine issue of material fact on whether Plaintiffs were underpaid the ACV of their vehicles. The underlying data at issue was produced by J.D. Power. Progressive first defends how J.D. Power calculates its data, arguing that there is no problem with the underlying values. Progressive then goes on to argue that even if Plaintiffs *could* prove that the data was manipulated, that is not enough to prove their breach-of-contract claim. In Progressive's view, Plaintiffs cannot connect the alleged manipulation of the data underlying the PSA adjustment to the alleged underpayment of their own individual vehicles, and therefore, this piece of evidence is not sufficient to support their claims.

Plaintiffs vehemently disagree with this characterization of their argument. They assert that their case is not based on the data manipulation point, but rather that "'(1) list prices reflect market value[,] (2) removing the PSA arrives at an accurate ACV[,] (3) Progressive excludes certain data and factors[,] and (4) vehicles typically sell for list price[,]'" [128] at 27 (quoting [109] at 23). In response to Plaintiffs' theory, *Progressive* has pointed to J.D. Power's data to justify the propriety of the PSA adjustment. Plaintiffs argue that their evidence and expert testimony about the alleged manipulation of J.D. Power's data is simply their response to Progressive's counterarguments; it is not, and Plaintiffs concede, cannot be, the sole basis of their claims.

As support for this argument, Plaintiffs point out that they did not discover the evidence surrounding the alleged data manipulation until discovery. Therefore, it would be impossible for Plaintiffs to premise their entire case on a claim that was not discovered until the discovery process.

The Court agrees with Plaintiffs. The evidence about the underlying data is relevant to the jury's consideration of the proper

14

calculation of a vehicle's ACV. Even Progressive acknowledges that it was the one who used the underlying data in the first place. There are more than enough disputes on this point to satisfy the summary judgment standard; even in the briefing for this motion, the parties disagree over the propriety of excluding certain numbers and what the numbers mean for purposes of the PSA. These arguments are best decided by a jury, and therefore, this issue is also not appropriate for resolution on summary judgment.

### 4. Felix's Testimony

Progressive also argues that Plaintiffs present no genuine issue of material fact regarding their theory that the PSA is invalid because the used car market generally does not negotiate down from internet list price. Progressive primarily attacks Plaintiffs' expert Kirk Felix to make this point. But these arguments fare no better. The Court has already found that Felix is sufficiently qualified, reliable, and helpful to serve as an expert witness. [124]. Progressive's arguments against the content and consistency of Felix's testimony are better addressed on cross-examination, rather than in a motion for summary judgment. Progressive essentially asks the Court to invade the province of the jury

and decide whether Felix's testimony is credible. This, the Court will not do.

### C. Plaintiff Bost's Standing

Lastly, Progressive asserts that Plaintiff Michelle Bost does not have constitutional standing to sue because she did not suffer a financial injury.

The Constitution vests judicial power in federal courts to adjudicate "cases" or "controversies." U.S. Const. art. III §§ 1–2. "This case-or-controversy requirement, embodied in the doctrine of standing, 'confines the federal courts to a properly judicial role.'" *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). The "irreducible constitutional minimum" requirements of standing are threefold: (1) there must be an "injury-in-fact"; (2) the injury must have been caused by the conduct at issue; and (3) the injury must be redressable by a decision of the court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561 (1992).

Progressive challenges the existence of an injury-in-fact for Bost because her entire total-loss settlement from Progressive went to the

lienholder of her vehicle. Progressive argues that Bost did not suffer a financial loss because the funds went to her lienholder rather than herself. Plaintiffs counter that this argument "flies in the face of clear law," and the Court agrees. [128] at 28.

"[T]he breach of a contract has long been held to be among the types of injuries that confer standing to sue." *E.A. Renfroe & Co. v. Moran*, 249 F. App'x 88, 91 (11th Cir. 2007) (*citing Tenn. Elec. Power Co. v. Tenn. Valley Auth.*, 306 U.S. 118, 137–38 (1939)).

This principle holds true even when the plaintiff did not personally receive the money owed. *See, e.g.*, *Tyler v. Hennepin Cnty.*, 598 U.S. 631, 637 (2023) (holding that the plaintiff suffered an injury-in-fact when the county kept extra proceeds from a tax sale, even though the money would have gone to creditors); *Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284, 287 (6th Cir. 2018) (holding that the plaintiff suffered an injury-in-fact when he was denied benefits owed under his health plan because "[l]ike any private contract claim, his injury does not depend on allegation of financial loss. His injury is that he was denied the benefit of his bargain."); *Loper v. Lifeguard Ambulance Serv., LLC*, No. 2:19-cv-583-CLM, 2021 WL

4458873, at *7 (N.D. Ala. Sept. 29, 2021) (stating that the plaintiff suffered "a cognizable injury when she was denied the benefits of her bargain" even though the disputed charge was billed to her insurance, not to her personally).

As Plaintiffs point out, the cases cited by Progressive do not actually dispute that an alleged breach of contract constitutes an injury-in-fact. Rather, the courts in those cases found that the plaintiffs lacked standing for other reasons.[1]

Bost certainly has standing to sue. Though she owed additional money to a lienholder, she still (allegedly) suffered an injury-in-fact because she claims a breach of her contract. The denial of the benefit of her bargain is what injures Bost, not the loss of the money itself. This is a straightforward inquiry, supported by case law in the Eleventh Circuit and beyond.

---

[1] For example, the Supreme Court held in *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020), that the plaintiffs lacked standing because they had already received the monthly benefits they were owed, and therefore, there was no concrete injury. And the Fifth Circuit held in *Denning v. Bond Pharmacy, Incorporated*, 50 F.4th 445, 451–52 (5th Cir. 2022), that plaintiff had alleged an injury-in-fact based on a breach of contract; however, this injury was not redressable because the action at issue harmed the plaintiff's insurer, not the plaintiff. Finally, this Court in *Brooks v. Branch Banking & Trust Company*, 107 F. Supp. 3d 1290, 1298 (N.D. Ga. 2015), dismissed the complaint because the plaintiff did not prove that a valid contract was breached. These cases are distinguishable from the current case and do not validate Progressive's standing arguments.

## IV. Conclusion

For the foregoing reasons, Progressive's motion [117] for summary judgment is denied. The parties are directed to file their joint proposed pretrial order within thirty days.

IT IS SO ORDERED this 1st day of February, 2024.

_____
Timothy C. Batten, Sr.
Chief United States District Judge