IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| KEDDRICK BROWN and MICHELLE BOST, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>PROGRESSIVE MOUNTAIN INSURANCE COMPANY and PROGRESSIVE PREMIER INSURANCE COMPANY OF ILLINOIS,<br><br>          Defendants. | CIVIL ACTION FILE<br><br>NUMBER 3:21-cv-175-TCB |

**<u>ORDER ON DEFENDANTS' MOTION FOR RECONSIDERATION</u>**

This case comes before the Court on Defendants' motion [179] for reconsideration of the Court's previous order [178] excluding portions of the expert testimony of Dr. Jonathan Walker.

**I.   Background**

On July 26, 2024, the Court entered an order [178] excluding three portions of the expert report and testimony of Progressive's expert

witness, Dr. Jonathan Walker. Dr. Walker is an economist whom Progressive has retained to testify regarding Plaintiffs' alleged injuries in this case.

The Court excluded three specific opinions of his: "(1) appraising a vehicle's ACV, including his WCTL analysis and opinions on guidebook values; (2) the used car industry and the pricing of used cars; and (3) his study concerning the accuracy of the PSA." [178] at 51.

Progressive objects to two of these exclusions, arguing that the Court's order "is based on clear errors of fact and law that warrant reconsideration." [179] at 1.

## II.  Legal Standard

The Federal Rules of Civil Procedure do not specifically authorize motions for reconsideration. Local Rule 7.2E provides that motions for reconsideration are not to be filed "as a matter of routine practice," but only when "absolutely necessary." A party may move for reconsideration only when at least one of the following three elements exists: (1) the discovery of new evidence; (2) an intervening development or change in the controlling law; or (3) the need to correct a clear error or manifest

injustice. *Pres. Endangered Areas of Cobb's History, Inc. v. United States Army Corps of Eng'rs*, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995).

A motion for reconsideration "is not an opportunity for the moving party . . . to instruct the court on how the court could have done it better the first time." *Id.* (internal punctuation omitted). In other words, a party "may not employ a motion for reconsideration as a vehicle to present new arguments or evidence that should have been raised earlier, introduce novel legal theories, or repackage familiar arguments to test whether the Court will change its mind." *Brogdon ex rel. Cline v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000); *see also Godby v. Electrolux Corp.*, Nos. 1:93-cv-0353-ODE, 1:93-cv-126-ODE, 1994 WL 470220, *1 (N.D. Ga. May 25, 1994) ("A motion for reconsideration should not be used to reiterate arguments that have previously been made. . . . [It is an improper use of] the motion to reconsider to ask the Court to rethink what the Court has already thought through—rightly or wrongly." (citation omitted)); *In re Hollowell*, 242 B.R. 541, 542-43 (Bankr. N.D. Ga. 1999) ("Motions for reconsideration should not be used to relitigate issues already decided or as a substitute for appeal. Such motions also should not be used to

raise arguments which were or could have been raised before judgment was issued." (citation omitted)).

## III. Discussion

### A. PSA Study

Progressive first objects to the Court's exclusion of Dr. Walker's PSA Study. As a reminder, "Dr. Walker looked at a sample set of transactions in the J.D. Power data set where both the list and sold prices of vehicles were available, as well as the PSA that would have been applied if the vehicle was used in a valuation" and analyzed this data to compare the PSA to the actual ratio between the list and sold prices. [178] at 48–49.

Plaintiffs assert that the underlying dataset Dr. Walker considered is skewed because it excludes transactions where the vehicle sold for at or above the list price. The Court excluded this study as irrelevant and misleading to the jury based on these exclusions. The previous order noted that "the study does not actually tell us anything about the propriety of applying a PSA because it only looked at cases where applying a PSA would have aligned with the sales price." *Id.* at 50.

Progressive contends that this holding improperly resolved disputed facts and applied the wrong standard in assessing the study's relevance. The Court has carefully reconsidered the matter and agrees with Progressive. The PSA study will be admitted.

The basis for the Court's previous holding centered on the exclusion of certain transactions. In the briefing of this motion for reconsideration, there is much debate over whether it was correct for J.D. Power to exclude these data points.[1] Plaintiffs argue the exclusions are improper; Progressive argues the exclusions are appropriate. As Progressive notes, this back-and-forth in the briefing demonstrates the precise issue on reconsideration: there is a factual dispute regarding J.D. Power's data that the Court improperly resolved by excluding Dr. Walker's testimony on this point.

Progressive is also correct that Dr. Walker's PSA study is relevant. Looking at a set of real-world transactions and analyzing whether the PSA would align with the sold price does relate to whether

---

[1] The previous order incorrectly stated that Progressive was responsible for excluding this data. [178] at 49. The Court takes this opportunity to correct the factual record and notes that J.D. Power is responsible for the data set and decisions regarding excluding certain transactions.

5

applying the PSA is consistent with the used-vehicle market. This is a key issue in determining whether Plaintiffs were economically injured, a subject well within Dr. Walker's expertise.

The problem that Plaintiffs argue, and the Court recognized in its previous order, is the scope of the underlying data. While there may be real issues with the transactions included and excluded in the data set, Progressive is right that this is a question for the jury, not the Court. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1345 (11th Cir. 2003) (holding that when a party "does not argue that it is improper to conduct a [] study using the sorts of aerodynamic data [] employed, but rather that the specific numbers [] used were wrong" it is "precisely the role of cross-examination" to flesh out these flaws).[2]

---

[2] Progressive aptly points out that the Court applied this same reasoning when admitting Plaintiffs' expert Jeffrey Martin's testimony over objections from Progressive regarding issues with the underlying data. [124] at 9. The Court agrees that admitting Martin's testimony but excluding Dr. Walker's testimony when dealing with the same issue is inconsistent.

Additionally, Progressive is correct to highlight that Plaintiffs' expert Dr. Lacey also references this data set. While Plaintiffs may be correct that Dr. Lacey's testimony is different in that she criticizes and corrects the data, the Court acknowledges that it is inconsistent to allow one expert to opine on a data set while excluding another from opining on it. These other experts' testimonies are also grounds for reconsideration of this issue.

Plaintiffs may raise their arguments on cross-examination, and the jury will decide for themselves whether the PSA study is persuasive or not.

Accordingly, the Court will grant Progressive's motion on this point and admit Dr. Walker's testimony regarding the PSA study.

### B.   Guidebook Values

Progressive next contends that the Court's exclusion of Dr. Walker's testimony involving guidebook valuations such as the Kelley Blue Book ("KBB") and the National Automobile Dealers Association guidebook ("NADA guidebook") was a clear error of law.

Dr. Walker's testimony on this point is brief; in his report, he notes that:

> NADA and KBB data cast further doubt that Ms. Bost was injured. The NADA Clean Retail Value and KBB Certified Report Value for similar vehicles to Ms. Bost's loss vehicle were $6,800 and $4,710 respectively. NADA and KBB prices are not specific valuations of any vehicle, but they are sometimes used as a starting point in a vehicle valuation. The fact that Ms. Bost's WCTL valuation was higher than both of these guideline prices highlights the need for individualized consideration of Ms. Bost's vehicle and circumstances to conclude that she was economically injured by Progressive's reliance on PSAs.

[148-2] at 19–20, ¶ 50. He also includes a footnote disclaiming that "[a]mong other shortcomings, NADA and KBB do not fully account for

7

current supply and demand conditions in the local area of the loss vehicle, vehicle condition and certain options and features." *Id.* at 20, n.68.

The Court initially excluded this opinion, holding that it is inadmissible hearsay and is irrelevant. Progressive moves for the Court to reconsider and admit Dr. Walker's testimony on this point.

To start, it is important to delineate two separate issues: (1) the role that guidebook values should or should not play in evaluating a vehicle's ACV, and (2) the propriety of Dr. Walker using guidebook values as a reference in his testimony. The first issue is a live one that has not been decided yet and will not be decided today.[3] The second issue is the relevant question to this motion.

The Court agrees with Progressive that it erred in prohibiting Dr. Walker from referencing the guidebook values in his testimony. Dr.

---

[3] Progressive mischaracterizes the Court's holding in the previous order. The Court did not hold that the guidebook values "do not constitute evidence of a vehicle's ACV." [179] at 13. Rather, the full sentence in the order actually states that "Plaintiffs also argue that the guidebook values are not relevant to Dr. Walker's testimony because the values do not constitute evidence of a vehicle's ACV." [178] at 45. The Court did not resolve this issue in its previous order. It simply held that Dr. Walker, as an economist, cannot opine on an issue of used-car valuations because that is outside of his expertise.

Walker is an economist who was retained to comment on issues relating to Plaintiffs' alleged injuries and damages. In his testimony, he compares Plaintiff Bost's WCTL valuation to the KBB and NADA guidebook valuations to support his opinion about individualized consideration of injury and damages. He does not evaluate the vehicle's value and instead uses the guidebook values as a general reflection of the market for assessing injury and damages.

The propriety of using the guidebooks as a measuring stick is a separate question that Plaintiffs can raise in a motion in limine. But that question is beyond the scope of whether it is appropriate for Dr. Walker, as an economist, to use the guidebooks as a reference point in his opinions. At this point, the Court has not excluded the use of guidebooks in this litigation. Therefore, the mention of the guidebook values is relevant to Dr. Walker's testimony assessing Plaintiffs' alleged injuries.[4]

---

[4] Progressive is also right to correct the factual record. The previous order imprecisely stated that the expert appraisers in this case, Kinney and Merritt, do not comment on the guidebook values. As Progressive points out, the expert appraisers do briefly mention the guidebook values. This does not make a difference in the outcome today, though it is potentially relevant for the larger question of admissibility of the guidebook values as a whole.

Dr. Walker's testimony is precise that the guidebook values are not "specific valuations," and his footnote ensures that the jury will be properly informed of the guidebook's shortcomings. Of course, Plaintiffs are also free to raise their concerns with the guidebooks on cross-examination as well.

Because the Court now considers the discussion of the guidebook values to be relevant to Dr. Walker's opinions on injuries and damages, the values may be admitted under Federal Rule of Evidence 703. Rule 703 allows for the admission of otherwise inadmissible evidence if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject" and if its "probative value in helping the jury evaluate the opinion substantially outweighs [its] prejudicial effect." As explained above, it is reasonable for Dr. Walker to rely on the guidebook values as economic evidence when presenting opinions on Plaintiffs' alleged injuries and damages. This is in accord with other courts as well. *See, e.g.*, *Counts v. Gen. Motors, LLC*, 606 F. Supp. 3d 547, 581 (E.D. Mich. 2022) (noting that an expert economist's consideration of NADA guidebook values was "a

straightforward application of financial and economic data that economists [] regularly use").[5]

In sum, the Court will grant Progressive's motion for reconsideration on this point. Dr. Walker will be allowed to refer to the guidebook values in his opinions. The Court notes that it does not decide the larger issue of whether the guidebook values as a whole are appropriately included in this case. That is a question for another day.

### C. Injury and Damages

Lastly, Progressive contends that the Court erred in characterizing Dr. Walker's analysis of injury and damages as opinions on vehicle value and excluding Dr. Walker's base value analysis.

In its order, the Court excluded an analysis where Dr. Walker compared the base values of cars with a PSA applied to similar vehicles without the application of a PSA ("the WCTL analysis"). *See* [148-2] at 18, ¶ 41. According to Dr. Walker, the purpose of this study was to show

---

[5] Plaintiffs argue that this case is too different to be applicable. Though it does deal with a different substantive issue, the fact remains that it cites NADA guidebook values as a source that economists regularly use, a relevant issue in the FRE 703 analysis.

that the PSAs "do not appear facially to be excessive" and to highlight the need for individualized analysis of injury. *Id.* at 17, ¶ 39.

The Court excluded this WCTL analysis as outside the scope of Dr. Walker's expertise as an economist because the analysis involves the ACVs of vehicles, which is he is not an expert on.

Progressive argues that the Court erred in excluding this study because Dr. Walker is not opining on any vehicle's ACV, but rather, using a comparative analysis to highlight the need for individualized consideration of class members' injuries and that the Court improperly assessed the persuasiveness of the study.

The Court agrees, and Progressive's motion will be granted on this point as well.

As stated above, Dr. Walker is an economist who was retained to comment on whether Plaintiffs were injured and how to measure damages. Because injury in this case depends on whether Plaintiffs were paid less than the ACV of their vehicle, Dr. Walker's testimony will necessarily overlap with discussion of vehicle value. So long as Dr. Walker does not actually opine on the value of any given vehicle, he

may give testimony relating to Plaintiffs' theory of injury and damages, though he is not an expert in car valuations.

As for the WCTL analysis, the Court agrees with Progressive's argument that this study does not amount to Dr. Walker giving the ACV for any given vehicle. Rather, his analysis is used to assess Plaintiffs' theory of injury: whether application of the PSA always results in underpayment. Comparing vehicle transactions with the PSA applied and those without the PSA applied would allow the jury to assess this question of injury and consider whether this is an individualized inquiry.[6] Critically, he is not commenting on which value is accurate; this would be a question for an appraiser and outside of his expertise. But Progressive is correct that Dr. Walker should be able to present this evidence to the jury for consideration of the economic question of injury.

---

[6] The Court also agrees with Progressive that Dr. Walker's testimony regarding the necessity of individualized inquiries with regard to injuries is relevant beyond class certification. As Progressive notes, Plaintiffs' theory of injury and damages is that application of the PSA always produces lower sale prices, and thus, injures the class as a whole. Progressive disputes this, and part of its defense is that Plaintiffs have not met their burden to prove injury and damages. This is not a predominance issue, but rather, a liability issue.

As noted in the Court's order, there are potential problems with the validity of Dr. Walker comparing vehicles to just one transaction. But after reconsideration, the Court finds that this is fodder for cross-examination, not exclusion. Plaintiffs may use the adversarial process to highlight any flaws in Dr. Walker's analysis, but these errors go to the "probativeness, not [] admissibility" of the WCTL analysis. *Quiet Tech*, 326 F.3d at 1346 (quoting *Bazemore v. Friday,* 478 U.S. 385, 400 (1986)).

Accordingly, the Court will grant Progressive's motion on this point as well.

## IV. Conclusion

For the foregoing reasons, the Court grants Progressive's motion [179] for reconsideration. Dr. Walker's opinions regarding the PSA study, KBB and NADA guidebook values, and injuries and damages including the WCTL analysis will be allowed.

IT IS SO ORDERED this 11th day of September, 2024.

_____
Timothy C. Batten, Sr.
Chief United States District Judge