## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| KEDDRICK BROWN, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>PROGRESSIVE MOUNTAIN INSURANCE COMPANY,<br><br>   Defendant. | Consolidated Case No.:<br>3:21-cv-00175-TCB |
| MICHELLE BOST, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>PROGRESSIVE PREMIER INSURANCE COMPANY OF ILLINOIS,<br><br>   Defendants. | |

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR
## <u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................1

II.    PROPOSED SCHEDULE OF EVENTS ................................................3

III.   PROCEDURAL BACKGROUND .........................................................4

IV.   SUMMARY OF THE SETTLEMENT TERMS ...................................6

     A.   The Settlement Classes Extend the Previously Certified Litigation Classes Through the Date of Preliminary Approval. ...............................6

     B.   The Settlement Benefits: $43,000,000.00 Common Fund ......................7

     C.   The Notice Program ................................................................................7

     D.   Plan of Allocation ................................................................................10

     E.   Distribution of Payments to the Classes .............................................11

     F.   Release ..................................................................................................13

     G.   Applications for (i) Attorneys' Fees and Litigation Expenses, and (ii) Class Representatives' Service Awards. ................................................13

V.    ARGUMENT........................................................................................14

     A.   Class Certification is Warranted .........................................................14

     B.   Preliminary Approval is Warranted .....................................................15

          i.   Lack of Fraud or Collusion..............................................................16

          ii.  Complexity, Expense, and Duration of the Litigation.....................18

          iii. Stage of Proceedings.......................................................................19

          iv. Probability of Success and Range of Possible Recovery ................20

          v.  Opinions of Class Counsel and Representatives .............................22

VI.   THE NOTICE PROGRAM IS ADEQUATE AND FULFILLS ALL REQUIREMENTS OF RULE 23 AND DUE PROCESS............................22

VII.  CONCLUSION....................................................................................25

## I.    <u>INTRODUCTION</u>

Plaintiffs Keddrick Brown and Michelle Bost ("Plaintiffs" or "Settlement Class Representatives") move unopposed for an order granting preliminary approval of the Class Action Settlement Agreement[1] (the "Settlement") reached with Defendants Progressive Mountain Insurance Company and Progressive Premier Insurance Company of Illinois (collectively "Progressive" or "Defendants"). Plaintiffs brought this action alleging Defendants breached their insurance contract—specifically the provision that actual cash value ("ACV") "is determined by the market value, age, and condition" of a vehicle at the time of loss—by applying Projected Sold Adjustments ("PSA").

The proposed Settlement will resolve all claims against Defendants in exchange for a sizable cash-payment common fund of $43,000,000.00 ("Settlement Fund") to benefit the Settlement Classes, less payment of attorney's fees, litigation expenses, settlement administration expenses, and service awards. This is an excellent result and represents a recovery of 49% of compensatory damages. There is no claims process. Instead, each Settlement Class Member who does not opt out will automatically receive a *pro rata* distribution tailored to the value of their loss vehicle and calculated consistent with Plaintiffs' damages model in this action.

---

[1] Capitalized terms that are otherwise undefined have the same meaning as in the Settlement Agreement. A true and correct copy of the Settlement Agreement is attached as Exhibit A to the Bates Declaration, filed contemporaneously herewith.

The Settlement was made possible only through years of hard-fought litigation against a Fortune 100 company and settled on the eve of trial. Progressive mounted a vigorous defense, requiring Plaintiffs to (i) overcome Defendants' motion to dismiss, (ii) achieve contested class certification, which included reports and testimony from experts in the fields of the automotive industry, statistics, and appraisal profession, (iii) defeat Progressive's petition for interlocutory review of the class certification order, (iv) overcome Progressive's motion for summary judgment; (v) defeat Progressive's motions to exclude their expert witnesses, and (vi) engage in in significant pre-trial preparations and proceedings (including drafting and responding to motions *in limine*; submitting proposed *voir dire* questions, jury instructions, and a verdict form; preparing trial exhibit lists and objections to Defendants' exhibit list; and preparing witnesses to testify). In the lead up to trial, the parties participated in extensive mediation efforts with well-respected mediators Mark Helm and Niki Mendoza of Phillips ADR Enterprises, P.C. By the time the Settlement was reached, Plaintiffs and their counsel were well informed about the strengths and weaknesses of their claims and Defendants' defenses.

The proposed Notice Program is designed to provide individualized notice to each Settlement Class Member identified through discovery and Defendants' data. Notice will be provided by email, when available, and postal mail, when email is not available. Each Settlement Class Member will be notified of their anticipated

recovery amount. Every Class Member who does not opt out of the Settlement will be issued payment. Class Counsel will request attorneys' fees not to exceed one-third of the Settlement Fund and reimbursement of litigation expenses not to exceed $380,000.00. Settlement administrative costs are estimated not to exceed $236,000.00, less than 0.6% of the Settlement Fund.

Moreover, certification of the Settlement Classes (which are the same as the classes previously certified except that the settlement class period extends to the date of preliminary approval) is appropriate for the reasons previously articulated by this Court in its prior orders. Similarly, the appointments of Plaintiffs as the Settlement Class Representatives and of Class Counsel as Class Counsel for the Settlement Classes are appropriate, and this Court should affirm these appointments.

## II. PROPOSED SCHEDULE OF EVENTS

Assuming the Court grants this motion and grants preliminary approval by February 21, 2025,[2] and consistent with the provisions of the Settlement Agreement, Plaintiffs respectfully propose the following schedule for Settlement events:

---

[2] This proposed schedule, which includes a date certain for the final fairness hearing, is submitted following communication with the Court in which Court staff advised the proposed date and time for the final approval hearing was available. This proposed schedule is contingent upon preliminary approval being granted on or before February 21, 2025. Should preliminary approval not be granted by that date, Plaintiffs propose they would submit a modified schedule to provide sufficient time to complete class notice.

| Event | Date |
|---|---|
| Deadline for Defendants to provide updated Settlement Class List to Epiq | 15 calendar days following entry of Preliminary Approval |
| Deadline for Settlement Website and IVR to go live | March 24, 2025 |
| Deadline to commence Notice Program ("Settlement Notice Date") | March 31, 2025 |
| Deadline for Motion for Final Approval and Application for attorneys' fees and expenses and service awards | March 31, 2025 |
| Deadline for opt outs and objections to be postmarked | April 30, 2025 |
| Deadline for any response to any timely and valid objections | May 8, 2025 |
| Final Fairness Hearing | May 15, 2025, at 11:00 a.m. |

### III.    **PROCEDURAL BACKGROUND**

Plaintiffs Keddrick Brown and Michelle Bost filed separate actions, which were consolidated in October 2022, alleging that Progressive breached its insurance policy by applying Projected Sold Adjustments. *See generally* ECF No. 50.

Progressive moved to dismiss the complaint filed by Plaintiff Brown, arguing Plaintiff's allegations failed to establish a breach of contract or breach of the covenant of good faith and fair dealing. ECF No. 22-1 at 2. Following full briefing, the Court denied Progressive's motion as to Plaintiff's common law breach of contract and good faith and fair dealing claims. ECF No. 43.

The parties then fully briefed Plaintiffs' motion for class certification, which was granted, and Progressive's motions to exclude Plaintiffs' experts, which were denied. ECF Nos. 109, 124. Following certification, Progressive petitioned the

Eleventh Circuit for interlocutory review of the Court's certification order pursuant to Rule 23(f). Plaintiffs opposed the petition, and it was denied. *Progressive Mtn. Ins. Co. v. Brown*, No. 23-90024-F, ECF No. 33-2 (11th Cir. Nov. 6, 2023).

Following the Eleventh Circuit's denial of Progressive's petition, Progressive filed a motion for summary judgment on all Plaintiffs' claims. ECF No. 117. The Court denied Progressive's motion and set the case for trial on Plaintiffs' claims for breach of contract. ECF No. 137. Thereafter, Plaintiffs filed motions to exclude Progressive's experts, Marc Spizzirri and Jonathan Walker. ECF Nos. 146, 148. After a hearing, the Court granted both motions, but later reconsidered the Order excluding Dr. Walker's opinions. ECF Nos. 178, 196.

The parties only reached agreement to settle the case after extensive negotiation, including two full-day, in-person mediation sessions on November 21, 2024, and December 18, 2024, and continued negotiation by phone and email thereafter. A final agreement was not reached until January 21, 2025, seven days before the start of trial, at which time a detailed term sheet was executed. By that time, the parties had fully briefed and received rulings on evidentiary motions, had submitted their proposed voir dire questions, jury instructions, verdict forms, witness lists, and exhibit lists. In short, this case was fully worked up for trial before an agreement was made.

IV.    **SUMMARY OF THE SETTLEMENT TERMS**

### A. The Settlement Classes Extend the Previously Certified Litigation Classes Through the Date of Preliminary Approval.

The Settlement defines the Settlement Classes as:

**Progressive Mountain Class**: All persons who made a first-party claim on a policy of insurance issued by Progressive Mountain Insurance Company to a Georgia resident where the claim was submitted from October 11, 2015, through the date of Preliminary Approval, and Progressive determined that the vehicle was a total loss and based its claim payment on an Instant Report from Mitchell where a Projected Sold Adjustment was applied to at least one comparable vehicle.

**Progressive Premier Class**: All persons who made a first-party claim on a policy of insurance issued by Progressive Premier Insurance Company of Illinois to a Georgia resident where the claim was submitted from June 8, 2016, through the date of Preliminary Approval, and Progressive determined that the vehicle was a total loss and based its claim payment on an Instant Report from Mitchell where a Projected Sold Adjustment was applied to at least one comparable vehicle.

Settlement Agreement at ¶¶ 1(c)–(d). Previously, on August 3, 2023, this Court entered an order (ECF No. 109) certifying two litigation classes: one against either Defendant, each of which ran through the date the order granting class certification was entered. ECF No. 108 at 35–36. The only substantive change between the certified litigation classes and the Settlement Classes is that the Settlement Classes run to and through the date of the order granting Preliminary Approval.

**B. The Settlement Benefits: $43,000,000.00 Common Fund**

Under the proposed Settlement, within fifteen business days after Preliminary Approval, Defendants will establish a cash Settlement Fund of $43,000,000.00 for the benefit of Settlement Class Members. Settlement Agreement at ¶ 7. This amount represents approximately 49% of the compensatory damages[3] alleged by Plaintiffs under the damages model they were prepared to present at trial. Bates Dec, at ¶ 22. There is no claims process. Instead, each Settlement Class Member who does not opt out will automatically receive a *pro rata* distribution tailored to the value of their loss vehicle and calculated consistent with Plaintiffs' damages model in this action.

The Settlement Agreement provides Class Counsel with the authority to propose, for Court approval, both the notice plan and plan of allocating the cash fund among the Settlement Class Members. Settlement Agreement, ¶ 4. Class Counsel's proposals are set forth below and in the Declaration of Hank Bates filed herewith.

**C. The Notice Program**

As set forth in paragraphs 28–34 of the Bates Declaration, Class Counsel propose that notice to Settlement Class Members be made by emailing the Email Notice (in the form attached as Ex. B to the Bates Declaration) to those Settlement Class Members for whom an email address is available in Defendants' records and mailing the Mail Notice (in the form attached as Ex. C to the Bates Declaration), by

---

[3] Compensatory damages is the difference between what each Class Member received in ACV benefits and what they would have received if the PSA deduction had not been applied.

first-class US mail to those Settlement Class Members for whom an email address is not available. Skip tracing will be performed by the Settlement Administrator for returned Mail Notices. To the extent it is reasonable to locate a more current mailing address using skip tracing, the Settlement Administrator will re-mail the returned Mail Notice to the particular Settlement Class Member by first-class US mail.

The Email Notice and Mail Notice will include a tailored estimate of the individual recovery amount that each Settlement Class Member is anticipated to receive and instructions for submitting a change of address. Additionally, the Mail Notice will inform Settlement Class Members that, if they want to redeem their recovery through an electronic payment option, they need to visit the Settlement Website and follow the instructions for providing an email address to the Settlement Administrator. The Email Notice and Mail Notice will also include: (1) a description of the class action and the proposed Settlement, (2) the rights of Settlement Class Members to request exclusion or to object to the Settlement and instructions about how to exercise those rights, (3) specifics on the date, time and place of the Final Fairness Hearing, and (4) information regarding Class Counsel's anticipated fee application and the anticipated request for the Class Representatives' service awards.

Both the Email Notice and the Mail Notice will include a link to the Settlement Website, www.GATotalLossClaim.com, which will include the following information: (1) a more detailed summary of the Settlement terms in the form

attached as Exhibit D to the Bates Declaration ("Long Form Notice"); (2) a "Contact Us" page with the Settlement Administrator's contact information; (3) the Settlement Agreement, motions for approval and for attorneys' fees, and all other important documents in the case; (4) important case dates and deadlines, including the deadlines to opt out and object; (5) a summary of Settlement Class Members' options; and (6) the date, time, and location of the Final Fairness Hearing. Bates Decl. at ¶ 33. The Notice Program will also establish a toll-free telephone line with an interactive voice response ("IVR") system to provide Settlement Class Members with responses to frequently asked questions and provide essential information regarding the litigation that is accessible 24 hours a day, 7 days a week. *Id.* at ¶ 34.

The Parties have agreed, subject to Court approval, that Epiq Class Action and Claims Solutions, Inc. ("Epiq") will serve as Settlement Administrator. Settlement Agreement at ¶ 1(w); Bates Decl. at ¶ 28. Epiq has ample experience in class action administration and was previously appointed by this Court as administrator of the court-approved notice program implemented in accord with this Court's Class Certification Order. *See* ECF No. 113, 114. Further, Epiq is currently implementing the settlement in *Volino, et. al. v. Progressive Cas. Ins. Co., et al*., No. 1:21-cv-06243-LGS (S.D.N.Y.), which is very similar to this settlement, including a similar notice plan and plan of allocation. Bates Decl. at ¶ 28. Epiq is thus intimately familiar with the data, data systems, and settlement procedures relevant to this Action.

9

### D. Plan of Allocation

Class Counsel proposes that unless a Settlement Class Member opts out, he or she automatically be issued a *pro rata* distribution from the Settlement Fund, less any court-approved attorneys' fees, litigation expenses, service awards, and all costs of notice and settlement administration (the "Distributable Settlement Amount"). Bates Decl. at ¶ 36. After payment of requested attorneys' fees, litigation expenses, settlement administration expenses, and service awards, the Distributable Settlement Amount is estimated to be approximately $28,030,667.00, yielding individual payments to the approximately 161,960 Settlement Class Members of approximately $173 on average.[4] Bates Decl. at ¶ 37.

Class Counsel proposes that Settlement Class Members' distributions be made under the following procedure, which tracks the damages model set forth in prior pleadings and that Class Counsel was prepared to present at trial. Under this procedure, each Settlement Class Member will be treated equitably, as each will receive the same pro rata percentage of their potential damages claim in this Action.

***First***, Class Counsel and their experts have determined the average impact of the PSAs on the Baseline ACV Valuations in WCTL Instant Reports from a review

---

[4] It is currently estimated that the Settlement Classes include approximately 161,960 members, based on claims data produced by Defendants through October 18, 2024. *See* Bates Decl. ¶ 37 n.1. The final size of the Settlement Classes will be ascertained once the updated Settlement Class data through the date of preliminary approval is obtained from Defendants in accord with the Settlement Agreement.

of the sample claim files in this Action and related actions involving Progressive entities (the "PSA Impact percentage"). To calculate the potential compensatory damages for each Settlement Class Member's claim, the PSA Impact percentage will be multiplied by (a) the WCTL Baseline Valuation of ACV, (b) the Total Tax Settlement Amount, and (c) the Condition Adjustment documented in Progressive's claims data for their insurance claim. To the sum of (a)–(c) is added prejudgment interest at a rate of 7%[5] simple per annum from the date of valuation to arrive at each Settlement Class Member's Damages. Lacey Rep., at 12–14; ECF No. 60-4 at 23–25 & Ex. 8 thereto, at Mitchell-Volino Subpoena 001701.

**Second**, Class Counsel will calculate the sum of all Settlement Class Members' Damages, which will be the Aggregate Damages. **Third**, Class Counsel will divide the Distributable Settlement Amount by the Aggregate Damages to calculate the Pro Rata Ratio. **Fourth**, the pro rata distribution to be paid to each Settlement Class Member will be calculated by multiplying the Pro Rata Ratio by each Settlement Class Member's Damages. Bates Dec. ¶¶ 39–42.

### E. Distribution of Payments to the Classes

Payments of each Settlement Class Members' pro rata portion of the Distributable Settlement Amount will be made within 90 days after the Final Judgment. Settlement Class Members for whom the Settlement Administrator does

---

[5] O.C.G.A. § 7-4-2.

not have an email address will automatically be issued checks. Within 45 days after Final Judgment, each Settlement Class Member for whom the Settlement Administrator has an email address will be emailed a link they can follow to choose whether to receive their recovery electronically—through, *e.g.*, Venmo, PayPal, or ACH transfer—or by check.[6] This link will remain active for 30 days. At the end of that period, any Settlement Class Member who did not elect to receive their recovery via an electronic payment option will be issued a check. To be clear, every Settlement Class Member will receive a recovery unless they submit a valid exclusion.

Checks that are not cashed within 90 days of issuance will be redistributed on a *pro rata*[7] basis to all Settlement Class Members who either cashed their initial checks or received electronic payments during the initial distribution. The Settlement Administrator will continue to make distributions to Settlement Class Members who either received their distribution electronically or who cashed the check sent in the prior distribution until Settlement Class Members receiving further distribution by check would receive less than $5.00 or a further distribution would otherwise not be feasible. Once either event occurs, the remaining funds will be

---

[6] This process is designed to encourage a higher rate of electronic payments, which cost less than issuing physical checks and will result in higher payouts.

[7] To determine the *pro rata* distribution in each subsequent distribution, the Settlement Administrator will, after first deducting any necessary settlement-administration expenses from such uncashed-check funds, re-run the calculations used in the initial distribution, using the modified Distributable Settlement Amount for only those Settlement Class Members who will receive the distribution.

distributed on a *pro rata* basis to Settlement Class Members who received their payments electronically (including subsequent electronic redistributions as needed), thus depleting the Settlement Fund and ensuring all Settlement Funds directly benefit Settlement Class Members. The distribution plan is designed to deplete itself solely through payments to Settlement Class members. Agreement at ¶ 10.b.[8]

### F. Release

In exchange for the consideration from the Defendants, the Action will be dismissed with prejudice upon Final Approval of the Settlement, and the Settlement Class Members will thereby release all claims against Defendants and the Released Parties through the date that the Court enters the Final Judgment, relating to Progressive's settlement of a total-loss property claim. *See* Settlement Agreement at ¶¶ 12–13. Released Claims do not include any claims for personal injury, medical payment, uninsured motorist or underinsured motorist. *See id.* at ¶ 12. So, the release is narrowly tailored to the precise claims at issue in this litigation.

### G. Applications for (i) Attorneys' Fees and Litigation Expenses, and (ii) Class Representatives' Service Awards.

The Settlement Agreement provides that, consistent with the common fund doctrine, Class Counsel may file a motion with the Court requesting an award of

---

[8] In the unlikely event (1) residual funds remain, (2) the Claims Administrator determines it is economically infeasible to continue making subsequent redistributions to Class Members, and (3) Class Counsel agrees with the Claims Administrator's determination, then any residual funds will be paid to Defendants. Settlement Agreement at ¶ 10.c.

attorneys' fees and out-of-pocket litigation expenses to compensate them for the work already performed in this case, all work remaining to be performed in connection with this Settlement, and the risks undertaken in prosecuting this case. Settlement Agreement at ¶ 11. Class Counsel's requests for attorneys' fees will not exceed one-third of the Settlement Fund ($14,333,333.33), and their request for litigation expenses will not exceed $380,000.00. The enforceability of the Settlement is not contingent on the Court's approval of Class Counsel's fee petition.

The Settlement Agreement further provides that Plaintiffs may request a service award for each Settlement Class Representative. Plaintiffs' requests will not exceed $10,000.00 per Settlement Class Representative or $20,000.00 collectively. Bates Decl. ¶ 48. These service awards, which amount in the aggregate to less than 0.1% of the Settlement Fund, will be paid out of the Settlement Fund and will compensate Plaintiffs for their time and effort serving as the Settlement Class Representatives through almost three years of litigation and up to the eve of trial. *Id.*

## V.  <u>ARGUMENT</u>

### A. Class Certification is Warranted

In deciding whether to grant preliminary approval, some courts have made a preliminary inquiry into whether the requirements of Fed. R. Civ. P. 23 for certification of a class for settlement purposes are satisfied. But, in amending Rule 23 in 2018, "the Advisory Committee made clear that if 'the court has already

certified a class, the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted.'" *Cook v. Gov't Emples. Ins. Co.*, 2020 U.S. Dist. LEXIS 111956 at *9 (M.D. Fla. Jun. 22, 2020) (quoting Fed. R. Civ. P. 23(e)(1)(B), Committee Notes on Rules—2018 Amendment). This Court previously granted class certification. ECF No. 109. And the only difference between the classes certified by this Court and the proposed Settlement Classes here is that the Settlement Classes run through the date of preliminary approval, rather than the date the litigated classes were certified. As such, for the same reasons outlined in the Order certifying the litigation classes, each Rule 23 requirement is satisfied for the proposed Settlement Class, defined above. *See supra* § III.A; ECF No. 109.

### B. Preliminary Approval is Warranted

Preliminary approval of a class action settlement "is not binding, and it is granted unless a proposed settlement is obviously deficient." *Covarrubias-Guerrero v. Bland*, 2012 U.S. Dist. LEXIS 10757, *10 (S.D. Ga. Jan. 30, 2012) (quotation omitted). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Agnone v. Camden Cty.*, 2018 U.S. Dist. LEXIS 175522, at *22 (S.D. Ga. Oct. 10, 2018). Preliminary approval should be granted where a court finds that it "will likely be able to" finally approve the

settlement under Rule 23(e)(2) and certify the class for settlement purposes. Fed. R. Civ. P. 23(e); *see also id.* 2018 Amendment Advisory Committee Notes. Finally, preliminary approval should be granted where the parties provide sufficient information to allow the Court to find that notice of the proposed settlement should be provided to class members to consider its terms and that, upon initial review, the Court will likely be able to approval the proposal. Fed. R. Civ. P. 23(e)(1)(B)(i).

These requirements are readily satisfied here, as demonstrated above and in the exhibits hereto. *See, e.g., id.* at *23 (granting preliminary approval of proposed class action settlement where settlement "was reached in the absence of collusion . . . after three mediations" and the proposed recovery was reasonable); *City of L.A. v. Bankrate, Inc.*, U.S. Dist. LEXIS 115071, *14-15 (S.D. Fla. Aug. 24, 2016) (similar).

As will be set forth in greater detail in the Motion for Final Approval of the Class Action Settlement—and as evidenced by the attached Agreement—all six factors used by courts to evaluate the fairness and adequacy of a settlement favor approval here. *See Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 n. 6 (11th Cir. 1994) (outlining the six relevant factors).

### i. Lack of Fraud or Collusion

First, this Settlement Agreement was achieved only after arm's length negotiations under the supervision of respected mediators Mark Helm and Niki Mendoza and was therefore not the product of fraud or collusion. *See* Bates Dec., ¶

14. Critically, the fact that negotiations were "conducted under the auspices of . . . a highly experienced mediator[] lends further support to the absence of collusion." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001); McLaughlin on Class Actions § 6:7 (12th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion."); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (similar).

Additionally, this Court has seen firsthand the contentious and extensive litigation in this matter, including completing both fact and expert discovery and reviewing voluminous discovery materials; engaging in substantial motions practice (including Defendants' motions to dismiss, Plaintiffs' motion for class certification, opposing Progressive's petition to appeal the certification decision, briefing on Progressive's motions for summary judgment, various *Daubert* motions, and motions *in limine*); conducting pre-trial preparations and engaging in pre-trial proceedings; and participating in several full-day mediations. That this matter was litigated extensively and settled on the eve of trial also demonstrates a lack of collusion. *See Ingram*, 200 F.R.D. at 693 (court had "no doubt that this case has been adversarial, featuring a high level of contention between the parties"); *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1338 (N.D. Ga. 2000) ("This was not a quick settlement, and there is no suggestion of collusion."). As such, this factor favors preliminary approval.

## ii. Complexity, Expense, and Duration of the Litigation

Rule 23(e)(2)(C)(i) requires courts to consider "the costs, risks, and delay of trial and appeal." This case is highly complex, involving issues related to contract interpretation, many experts, vast datasets (*i.e.*, Progressive's class data and J.D. Power's and Jeffrey Martin's market data) including millions of data points, regulatory requirements, Article III standing, class certification, and a bifurcated trial with liability and damages phases. *E.g.*, Bates Dec. at ¶¶ 12. These issues create numerous risks on appeal—risks avoided through the beneficial Settlement.

If the settlement were disapproved, complex, risky, and uncertain litigation would continue, likely for years, "in this Court and others, including appellate courts." *Gevaerts v. TD Bank, N.A.*, 2015 U.S. Dist. LEXIS 150354, at *17 (S.D. Fla. Nov. 5, 2015); *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (noting protracted litigation render "meaningful relief increasingly elusive"). Litigation inherently involves risks and uncertainty, which is especially true where, as here, proof of liability and damages hinge on a battle between expert witnesses. *See, e.g.*, *Goodman v. Columbus Reg'l Healthcare Sys.*, 2024 U.S. Dist. LEXIS 104859, at *12 (M.D. Ga. June 12, 2024) (recognizing expert discovery and *Daubert* challenges increased costs and risks of non-recovery).

In addition to a battle of the experts, Plaintiffs face the risk of maintaining class certification through trial and appeal. *Lunsford v. Woodforest Nat'l Bank*, No.

1:12-cv-103-CAP, 2014 U.S. Dist. LEXIS 200716, at *25–*26 (N.D. Ga. May 19, 2014) (risk attendant to defending post-trial appeals supported approval of settlement). Defendants have demonstrated their willingness to seek the Eleventh Circuit's intervention, filing a Rule 23(f) petition challenging the Court's Class Certification Order. Bates Decl. ¶ 9. Thus, a likely appeal by Defendants of any judgment favorable to Plaintiffs promised further expense and delay.

Though Plaintiffs believe in the merits of their case, by reaching a favorable settlement assisted by neutral mediators, they avoided significant expense and delay and the risks of trial and appeal and secured immediate benefits for the Settlement Classes. These factors sharply militate in favor of preliminary approval. *See Family Med. Pharm. LLC v. Impax Labs., Inc.*, No. 17-0053-WS-MU, 2018 U.S. Dist. LEXIS 36263, at *n.1 (S.D. Ala. Mar. 6, 2018) ("[B]y settling now, the parties avoided potentially years of additional expensive litigation proceedings[.]"); *Ingram*, 200 F.R.D. 691 (noting there is an "added benefit" to receiving payment "now" rather than delaying payment to after trial and appeal, even if successful).

### iii.  Stage of Proceedings

The "stage of proceedings" factor essentially addresses whether Class Counsel and Plaintiffs, as class representatives, secured sufficient discovery and knowledge of the claims at issue such that they can make an informed decision concerning the pros and cons of settlement. *See Lipuma v. Am. Express Co.*, 406 F.

19

Supp. 2d 1298, 1324 (S.D. Fla. 2005) (noting this factor "is evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation.").

Here, this case was litigated through the entirety of the discovery process and class certification, summary judgment, *Daubert* motions, and motions *in limine* had been adjudicated, extensive pre-trial filings were completed, and trial was imminent. Bates Decl. at ¶¶ 4–14. As such, Class Counsel and Plaintiffs had full knowledge of the claims and issues in this litigation such that they were able to meaningfully evaluate the benefits of settlement further litigation on appeal. *See Ingram*, 200 F.R.D. at 191 (holding class representatives had sufficient information to make a reasoned judgment about the merits of the case after fourteen months of litigation and discovery). As such, this factor weighs strongly in favor of preliminary approval.

### iv.  Probability of Success and Range of Possible Recovery

The next two factors are connected in that courts analyze the range of possible recovery given the probability of success in comparison to the benefits afforded by a settlement. *Palmer v. Dynamic Recovery Sols.*, LLC, No. 6:15-cv-59-Orl-40KRS, 2016 U.S. Dist. LEXIS 59229 (M.D. Fla. May 4, 2016) (comparing potential recovery versus risk and analyzing relief provided under proposed settlement).

The proposed settlement would create a common fund equivalent to 49% of compensatory damages that could have possibly been recovered at trial. This

20

recovery is eminently reasonable when considering the probability of success and the numerous hurdles Plaintiffs would have had to clear—at a liability trial, damages trial, and on appeal—to secure *any* recovery for the classes. The significant risks to Plaintiffs prevailing at trial are demonstrated by the years of intensive litigation of this matter, in addition to similar cases currently pending in various district and circuit courts throughout the country. In any event, securing 49% of potential damages is far more favorable than percentages other courts have found to be fair and adequate. *See Bennett v. Behring Corp.*, 737 F.2d 982, 987 n. 9 (11th Cir. 1984) (approved settlement providing 5.6% of the potential recoverable damages); *In re Domestic Air*, 148 F.R.D. 297, 325 (N.D. Ga. 1993) (approving settlement equal to between 12.7% and 15.3% of the potential recovery before trebling); *Goodman*, 2024 U.S. Dist. LEXIS 104859, at *7, *12 (approving settlement of between 23.8% and 26.7% of potential recovery); *Gevaerts*, 2015 U.S. Dist. LEXIS 150354, at *19 ("Approximately ten percent (10%) of the most probable sum Plaintiffs anticipated recovering at trial . . . constitutes a very fair settlement."); *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 324 (3rd Cir. 2011) (affirming settlement that "represented [as little as] 10.93%" of the damages recoverable at trial). As such, this factor weighs in favor of preliminary approval.

21

### v.  Opinions of Class Counsel and Representatives[9]

It is the reasoned opinion of Class Counsel and Plaintiffs that the Settlement Agreement provides benefits that are fair, reasonable, and in the best interests of the Settlement Classes. Bates Decl. at ¶¶ 23–27. This is critical because "absent fraud, collusion, or the like, the district court 'should be hesitant to substitute its own judgment for that of counsel.'" *Greco v. Ginn Dev. Co., LLC*, 635 F. App'x 628, 632 (11th Cir. 2015). Class Counsel's opinion is informed by years of litigation against Progressive in this Court and courts across the country challenging the PSAs at issue here. Accordingly, this factor too supports settlement approval. *See Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *26 ("The Court should give great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." (internal quotation omitted)).

For all the above reasons, and as will be more fully explained in the Motion for Final Approval, Plaintiffs and Class Counsel believe the Settlement Agreement is fair and reasonable to the Settlement Classes.

## VI.  THE NOTICE PROGRAM IS ADEQUATE AND FULFILLS ALL REQUIREMENTS OF RULE 23 AND DUE PROCESS

When a class settlement is proposed, the court "review[s] and approve[s] the proposed form of notice to the class" and directs "the best notice that is practicable

---

[9] The final element is the amount and substance of opposition to the proposed settlement. But that factor cannot be analyzed until after Notice is provided and Settlement Class Members are given the opportunity to lodge such opposition, if any.

under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Youngman v. A&B Ins. & Fin., Inc.*, No. 6:16-cv-1478-Orl-41GJK, 2018 U.S. Dist. LEXIS 65271, at *8 (M.D. Fla. Mar. 22, 2018) (first quote); Fed. R. Civ. P. 23(c)(2)(B) (second quote). The notice must include: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who request exclusions; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

Rule 23 "require[s] that class members be given information reasonably necessary to make a decision whether to remain a class member and be bound by the final judgment or opt out of the action, though the notice need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (quotations, citation, and original alterations omitted).

Here, the Class Notice meets all the requirements of Rule 23(c)(2)(B) by advising Settlement Class Members of the nature of the claims involved in the case; the essential terms of the Settlement, including the definition of the Settlement Classes and the estimated recovery for each Settlement Class Member; the rights of Settlement Class Members to participate in the Settlement, to request exclusion from

the Settlement Classes or to object to the Settlement, and specifics on the dates for exercising these rights; the requirements for opting out, for objecting, and for making an appearance at the Final Fairness Hearing; and the time and place of the Final Fairness Hearing. Thus, the Class Notice provides the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. The Class Notice also contains information regarding the anticipated amount of Class Counsel's requests for attorneys' fees and litigation expenses, and service awards for the Settlement Class Representatives.

Moreover, the proposed Settlement requires Plaintiffs to notify Settlement Class Members of the proposed Settlement by (i) emailing the Class Notice to those Settlement Class Members for whom an email address is available in Defendants' records and was made available as part of the Class Data, and (ii) mailing, by first-class US mail, the Class Notice to those Settlement Class Members for whom an email address is not available in Defendants' records. Thus, Settlement Class Members have been identified from Defendants' internal records and shall receive individual notice.

In addition to the emailed and mailed Class Notices, a Settlement Website will be established which will provide access to the Class Notice, as well as other key documents related to the Settlement, including the Settlement Agreement, the

Court's Preliminary Approval Order, and Class Counsel's application for attorneys' fees, litigation expenses, and service awards.

Accordingly, the form and manner of notice proposed here fulfills all the requirements of Rule 23 and due process. *See Blessinger v. Wells Fargo & Co.*, No. 8:22-cv-1029-TPB-SPF, 2023 U.S. Dist. LEXIS 189094, at *32 (M.D. Fla. Oct. 20, 2024) (finding notice program that included direct notice (by email and postcard) and long-form notice posted on dedicated website sufficient) (Report & Recommendation), *adopted*, 2023 U.S. Dist. LEXIS 215726 (M.D. Fla., Dec. 5, 2023); *Preman v. Pollo Ops., Inc.*, No. 6:16-cv-443-Orl-41GJK, 2018 U.S. Dist. LEXIS 79065, at *25–*26 (M.D. Fla. Apr. 12, 2019) (similar).

## VII.  <u>CONCLUSION</u>

For these reasons, Plaintiffs respectfully request the Court enter an order: (1) preliminarily approving the Settlement, (2) provisionally certifying the Settlement Classes, (3) appointing Plaintiffs Michelle Bost and Keddrick Brown as Settlement Class Representatives, (4) appointing Carney Bates & Pulliam, PLLC, Jacobson Phillips PLLC, Normand PLLC, Edelsberg Law, P.A., Shamis & Gentile, and Bailey Glasser LLP as Class Counsel for the Settlement Classes, (5) approving Epiq Class Action and Claims Solutions, Inc. as Settlement Administrator, (6) approving the form and manner of Class Notice to the Settlement Classes, (7) approving the proposed schedule of events, and (8) scheduling a Final Fairness Hearing.

Respectfully submitted this 14th day of February, 2025.

/s/ Jake Phillips
Jacob L. Phillips*
Joshua R. Jacobson*
JACOBSON PHILLIPS PLLC
478 E. Altamonte Dr., Ste. 108-570
Altamonte Springs, Florida 32701
Tel: (407) 720-4057
Email: jacob@jacobsonphillips.com
Email: joshua@jacobsonphillips.com

Hank Bates*
Lee Lowther*
CARNEY BATES & PULLIAM, PLLC
One Allied Drive, Suite 1400
Little Rock, Arkansas 72202
Tel: (501) 312-8500
Email: hbates@cbplaw.com
Email: llowther@cbplaw.com

Andrew J. Shamis
Georgia Bar No. 494196
SHAMIS & GENTILE, P.A.
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
Tel: (305) 479-2299
Email: ashamis@shamisgentile.com

Scott Edelsberg
EDELSBERG LAW, P.A.
20900 NE 30th Ave., Suite 417
Aventura, Florida 33180
Tel: (786) 289-9471
Email: scott@edelsberglaw.com

James L. Kauffman*
Brian A. Glasser*
Patricia M. Kipnis*
Bailey & Glasser LLP
1055 Thomas Jefferson St., N.W.

26

Washington, DC 20007
Tel: (202) 463-2101
Email: jkauffman@baileyglasser.com
Email: bglasser@baileyglasser.com
Email: pkipnis@baileyglasser.com

R. Brent Irby
Georgia Bar No. 224232
IRBY LAW, LLC
2201 Arlington Avenue S
Birmingham, Alabama 35205
Tel: (205) 545-8334
Email: birby@mhcilaw.com

Michael J. Lober
Georgia Bar No. 455580
William Greg Dobson
Georgia Bar No. 237770
LOBER & DOBSON, LLC
Robert E. Lee Building, Suite 201
830 Mulberry Street
Macon, Georgia 31201
Tel: (478) 745-7700
Email: wgd@lddlawyers.com
Email: mjlober@lddlawyers.com

*Admitted *pro hac vice*

*Counsel for Plaintiffs and the Proposed Class*

27

## <u>CERTIFICATE OF SERVICE</u>

I, Jacob L. Phillips, hereby certify that on this 14th day of February, 2025, I electronically filed the foregoing via the Court's CM/ECF system, which will provide electronic notification to all counsel of record.

*/s/ Jake Phillips*
Attorney for Plaintiffs

28