IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| KEDDRICK BROWN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PROGRESSIVE MOUNTAIN INSURANCE COMPANY,<br><br>Defendant. | Consolidated Case No.:<br>3:21-cv-00175-TCB |
| MICHELLE BOST, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PROGRESSIVE PREMIER INSURANCE COMPANY OF ILLINOIS,<br><br>Defendants. | |

**DECLARATION OF HANK BATES IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT**

I, Hank Bates, declare and state as follows:

1

1. I am a partner at Carney Bates & Pulliam, PLLC. My firm, along with Jacobson Phillips PLLC, Normand PLLC, Edelsberg Law, P.A., Shamis & Gentile P.A., Bailey Glasser LLP, Lober & Dobson, and Irby Law, LLC (collectively "Class Counsel") serve as co-counsel of record for Plaintiffs Keddrick Brown and Michelle Bost (Plaintiffs) against Defendants Progressive Mountain Insurance Company and Progressive Premiere Insurance Company of Illinois (collectively "Progressive" or "Defendants") in the above-captioned consolidated cases (the "Action").

2. I make this Declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. I have personal knowledge of the facts set forth in this Declaration based on active participation in all aspects of the prosecution and resolution of the Action. If called upon to testify, I could and would testify competently to the truth of the matters stated herein.

I. **Summary of the Action**

3. Before initiating the Action, Plaintiffs' counsel conducted a thorough investigation as to the factual and legal merits of and issues surrounding the claims and possible defenses, the proper measure of damages, and the likelihood Plaintiffs' motion for class certification would succeed, as well as the chances of success on appeal as to both class certification and the merits of Plaintiffs' claims.

4. In October 2021, Plaintiff Brown filed this Action alleging that Progressive breached its uniform insurance policy and violated Georgia law by

applying Projected Sold Adjustments as part of its calculation of the actual cash value of totaled vehicles. *See generally*, ECF No. 1 (Complaint) and 19 (Amended Complaint). Progressive moved to dismiss the Amended Complaint, ECF No. 23, to which Plaintiff Brown responded, ECF No. 30. Ultimately, this Court dismissed Plaintiff's claim of breach of contract to the extent it was based on incorporation of Georgia's Total Loss Regulation, as well as Plaintiff's equitable claims, and otherwise denied the Motion to Dismiss. ECF No. 43.

5. Meanwhile, Plaintiff Bost had subsequently filed a similar action, *Bost v. Progressive Premier Insurance Company of Illinois*, 4:22-cv-00127-TCB, which was similar to Plaintiff Brown's case except that Plaintiff Bost had not brought the counts that the Court had dismissed. So, Plaintiffs collectively moved for consolidation of the two actions, which this Court granted. ECF Nos. 45, 47. Plaintiffs then filed a consolidated Complaint, which Progressive collectively answered. ECF Nos. 50, 51.

6. On February 17, 2023, Plaintiffs filed their Motion for Class Certification (*see* ECF Nos. 59–61), which was followed by the filings of Progressive's opposition (*see* ECF Nos. 79–81) and Plaintiffs' reply (*see* ECF Nos. 88–89).

7. The Parties also briefed Progressive's motions to exclude Plaintiffs' experts. *See* ECF Nos. 75–78 and 87, 90–93.

8. On March 16, 2023, this Court entered an order granting class certification. ECF No. 109. The Court subsequently entered an order denying Progressive's *Daubert* motions. ECF No. 124. In its class certification order, this Court appointed Class Counsel and Plaintiffs to represent the Classes.

9. Following certification, Progressive petitioned the Second Circuit for an interlocutory review of this Court's certification order pursuant to Rule 23(f). Plaintiffs opposed the petition, and the Eleventh Circuit denied it. *Progressive Mtn. Ins. Co. v. Brown*, No. 23-90024-F, ECF No. 33-2 (11th Cir. Nov. 6, 2023).

10. Following the denial of Progressive's Rule 23(f) petition, Progressive filed a motion for summary judgment on all Plaintiffs' claims (*see* ECF Nos. 117-119), to which Plaintiffs timely responded (*see* ECF Nos. 128-130). On February 1, 2024, this Court denied Progressive's motion for summary judgment in its entirety. ECF No. 137.

11. Thereafter, Plaintiffs filed motions to exclude Progressive's experts, Marc Spizzirri and Jonathan Walker. ECF Nos. 146, 148. After a hearing on June 18, 2024, the Court granted both motions, but later reconsidered the Order excluding Dr. Walker's opinions. ECF Nos. 178, 196. Progressive also moved to exclude another of Plaintiffs' experts, Dr. Lacey (ECF No. 143), to which Plaintiffs responded (ECF No. 160). This Court denied Progressive's attempt to exclude Dr. Lacey's testimony. ECF No. 178.

12. The Parties then engaged in extensive and time-consuming pre-trial work. A joint pre-trial Order was filed, ECF No. 147, which included proposed jury questions and objections, outlines of the case, stipulated facts, witness lists and objections, exhibit lists and objections, deposition designations, evidentiary issues, and proposed verdict forms. Plaintiffs filed a brief responding to this Court's request regarding the use of 30(b)(6) deposition transcripts at trial, ECF No. 198, a memorandum concerning bifurcation and the use of two juries to decide liability and damages, ECF No. 201, a proposed bifurcated trial plan, ECF No. 210, motions in limine, ECF No. 209, a response to Progressive's motions in limine, ECF No. 215, and a modified proposed verdict form, ECF No. 224. Pursuant to this Court's requests, Plaintiffs also filed a memorandum addressing bifurcation, ECF No. 227, as well as *Baker v. State Farm*, ECF No. 233.

13. Pre-trial hearings, which addressed virtually all of the various trial filings, were conducted on September 12, 2024, and January 8, 2025.

14. On November 21 and December 18, 2024, the Parties participated in full-day mediation sessions with well-respected mediators Mark Helm and Niki Mendoza of Phillips ADR Enterprises, P.C. As a result of these mediation efforts, and continued negotiations via telephone and email, the Parties were able to reach an agreement and execute a detailed term sheet on January 21, 2025. On January 22, 2025, six days before trial, the Parties advised this Court that settlement on a class-

wide basis had been achieved.

15. The Parties have now memorialized the settlement terms in the executed Class Action Settlement Agreement, a true and correct copy of which is attached hereto as Exhibit A.

## II. Plaintiffs' and Class Counsel's Role in Prosecuting and Settling the Action

16. Plaintiffs and Class Counsel have zealously and skillfully represented the interests of the proposed Settlement Classes and committed substantial resources to the resolution of the Settlement Classes' claims.

17. Plaintiffs and Class Counsel performed significant work in identifying and litigating the claims of Plaintiffs and the Settlement Class Members prior to entering the Settlement, including engaging in extensive factual investigation; drafting the initial and amended complaints; completing both fact and expert discovery and reviewing voluminous discovery materials; engaging in substantial motions practice (including Defendants' motion to dismiss, Plaintiffs' motion for class certification, Progressive's petition for interlocutory review of the class certification order, motions for summary judgment, *Daubert* briefs, and various motions in limine); conducting pre-trial preparations and engaging in pre-trial proceedings; and participating in two full-day mediations. Indeed, this case was not successfully settled until the very eve of trial, after all pre-trial work had been conducted, and the Parties had already scheduled for and booked travel and lodging

arrangements for trial. Metaphorically, this case was an example of a "courthouse steps" settlement where all work other than trial had already occurred.

18. Thus, by the time the Settlement was reached, Plaintiffs and Class Counsel were well informed about the strengths and weaknesses of their claims and Defendants' defenses. This is especially true given that Class Counsel are simultaneously litigating virtually identical cases in approximately 20 other states, including one that was also settled on the eve of trial in the Southern District of New York (*Volino, et. al. v. Progressive Casualty Ins. Co., et al.*, (S.D.N.Y.), No. 1:21-cv-06243-LGS (hereinafter, "*Volino*")). Suffice it to say, Class Counsel have a meticulous and fulsome understanding of the issues in this case, the strengths and weaknesses of the claims and defenses, and the pros and cons of potential settlement terms.

19. In sum, the Parties agreed to the terms of the Settlement through experienced counsel who possessed all the information necessary to evaluate the case, determined the contours of the proposed Settlement Classes, and reached a fair and reasonable compromise after negotiating the terms of the Settlement at arm's length and with the assistance of neutral mediators.

20. Further, Plaintiffs and Class Counsel have vigorously represented the Settlement Classes in this Action and will continue to do so after preliminary and final approval of the Settlement (if approved).

21. Plaintiffs Brown and Bost have actively participated in this matter. Each provided relevant information regarding his or her total loss claim, worked with counsel to prepare and review the complaints and other pleadings, provided extensive deposition testimony, and met with trial counsel to prepare to testify at trial and were prepared and willing to do so. Each Plaintiff communicated regularly with counsel throughout the case, up to and including evaluation and approval of the proposed Settlement, and participated in mediation discussions.

### III. Recommendation of Class Counsel

22. The Settlement Fund of $43,000,000.00 represents approximately 49% of the compensatory damages alleged by Plaintiffs under the damages model they were prepared to present at trial. Compensatory damages are calculated as the difference between what each Class Member received in ACV benefits and what they would have received if the PSA deduction had not been applied. There is no claims process, which means that Members of the Settlement Classes who do not exclude themselves will automatically receive a settlement payment.

23. Based on our thorough examination and investigation of the facts and law relating to Plaintiffs' claims on behalf of the Settlement Classes and given the costs, risks, and delay of further litigation, Class Counsel believe the proposed Settlement is an excellent result and in the best interest of the Settlement Classes. Our extensive investigation and four years of hard-fought litigation—here and in

jurisdictions throughout the country—informed us about the strengths and weaknesses of Plaintiffs' claims, and allowed us to conduct an informed, fair, and objective evaluation of the value and risks of continued litigation.

24.     Class Counsel recognize that despite our belief in the strength of Plaintiffs' claims, the expense, duration, and complexity of protracted litigation would be substantial and the outcome uncertain.

25.     Class Counsel is also mindful that absent the proposed Settlement, Progressive would continue to challenge liability, would prepare a competent defense at trial, and would likely file a motion to decertify the Litigation Classes or appeal any judgment favorable to Plaintiffs, as well as appeal the Order granting class certification. There is a significant risk that the Eleventh Circuit would ultimately reverse this Court's ruling on summary judgment or any favorable verdict in Plaintiffs' and the Classes' favor.

26.     Based on the foregoing, it is Class Counsel's professional opinion that the relief provided by the proposed Settlement is fair, adequate, reasonable, and in the best interests of the Settlement Classes, and we respectfully recommend it to the Court for its preliminary (and, ultimately, final) approval.

27.     Class Counsel have conferred with Plaintiffs who also support the proposed Settlement.

IV.     **Selection of Settlement Administrator and the Proposed Notice Program**

28.     The Parties have agreed, subject to Court approval, that Epiq Class Action and Claims Solutions, Inc. ("Epiq") will serve as Settlement Administrator. Settlement Agreement at ¶ 1.w. Epiq has ample experience in class action administration and was previously appointed by this Court as administrator of the court-approved notice program implemented in accord with this Court's Class Certification Order. *See* ECF No. 227. Moreover, Epiq was the Settlement Administrator for the settlement in *Volino* which is very similar to this settlement, including a highly similar notice plan and plan of allocation. Accordingly, Epiq is intimately familiar with the data and data systems, as well as the settlement procedures, that are relevant to this Action.

29.     In its role as Settlement Administrator, Epiq shall be responsible for effectuating the Notice Program, described more fully in the contemporaneously filed Declaration of Cameron Azari.

30.     Pursuant to the Notice Program, the Settlement Administrator shall email the Email Notice (attached hereto as Exhibit B) to those Settlement Class Members for whom an email address is available in Defendants' records and mail the Mail Notice (attached hereto as Exhibit C), by first-class US mail to those Settlement Class Members for whom an email address is not available in Defendants' records or for which there is a undelivered email. Skip tracing will be

performed by the Settlement Administrator for all returned Mail Notices. To the extent it is reasonably able to locate a more current mailing address using skip tracing, the Settlement Administrator will re-mail the returned Mail Notice to the particular Settlement Class Member by first-class US mail.

31. The Email Notice and Mail Notice will include a tailored estimate of the individual recovery amount that each Settlement Class Member is anticipated to receive and instructions for submitting a change of address. Additionally, the Mail Notice will inform Settlement Class Members that, if they want to redeem their recovery through an electronic payment option, they need to visit the Settlement Website and follow the instructions for providing an email address to the Settlement Administrator.

32. The Email Notice and Mail Notice will also include the following information: (1) a description of the class action and the proposed Settlement, (2) the rights of Settlement Class Members to request exclusion from the Settlement Classes or to object to the Settlement and instructions about how to exercise those rights, (3) specifics on the date, time, and place of the Final Fairness Hearing, and (4) information regarding Class Counsel's anticipated fee application and the amount Class Counsel will seek and the anticipated request for the Class Representatives' service awards.

33. Both the Email Notice and the Mail Notice will include a link to the

Settlement Website, www.GATotalLossClaim.com. This is the website that was created to house information about the certified classes, and it will be updated to include the following information: (1) a more detailed summary of the Settlement terms (the "Long Form Notice") (attached hereto as Exhibit D); (2) a "Contact Us" page with the Settlement Administrator's contact information; (3) the Settlement Agreement, motions for approval and for attorneys' fees (once filed), and all other important documents in the case; (4) important case dates and deadlines, including the deadlines to opt out and object; (5) a summary of Settlement Class Members' options; and (6) the date, time, and location of the Final Fairness Hearing.

34. The Notice Program will also establish a toll-free telephone line with an interactive voice response ("IVR") system to provide Settlement Class Members with responses to frequently asked questions and provide essential information regarding the litigation that is accessible 24 hours a day, 7 days a week. Azari Decl., ¶ 28.

35. Settlement administrative costs are estimated not to exceed $236,000.00, which is less than 1% of the Settlement Fund. Epiq's estimate is attached as Exhibit E to this Declaration.

V. **The Plan of Allocation**

36. Class Counsel proposes that unless a Settlement Class Member submits a valid and timely Request for Exclusion, he or she automatically be issued a *pro*

*rata* distribution from the Settlement Fund less any court-approved attorneys' fees, litigation expenses, service awards, and all costs of notice and settlement administration (the "Distributable Settlement Amount").

37. After payment of requested attorneys' fees, litigation expenses, settlement administration expenses, and service awards, the Distributable Settlement Amount is estimated to be approximately $28,030,667.00, yielding individual payments to the estimated 161,960[1] Settlement Class Members of approximately $173 on average.

38. Class Counsel proposes that Settlement Class Members' distributions be made under the following procedure, which tracks the damages model set forth in prior pleadings and that Class Counsel was prepared to present at trial. Under this procedure, each Settlement Class Member will be treated equitably, as each will receive the same pro rata percentage of their potential damages claim in this Action.

39. **First**, Class Counsel and their experts have determined the average impact of the PSAs on the Baseline ACV Valuations in WCTL Instant Reports from a review of the sample claim files in this Action and related actions involving Progressive entities. This is the "PSA Impact percentage." To calculate the potential compensatory damages for each Settlement Class Member's claim, the PSA Impact

---

[1] According to claims data produced by Defendants through October 18, 2024, Class Counsel estimate the Settlement Classes include approximately 161,960 individuals.

13

percentage will be multiplied by (a) the WCTL Baseline Valuation of ACV, (b) the Total Tax Settlement Amount, and (c) the Condition Adjustment amount, documented in Progressive's claims data for their insurance claim.[2] To the sum of (a)–(c) is added prejudgment interest at a rate of 7% simple per annum from the date of valuation to arrive at each Settlement Class Member's Damages.

40. ***Second***, Class Counsel will calculate the sum of all Settlement Class Members' Damages, which will be the Aggregate Damages.

41. ***Third***, Class Counsel will divide the Distributable Settlement Amount by the Aggregate Damages to calculate the Pro Rata Ratio.

42. ***Fourth***, the pro rata distribution to be paid to each Settlement Class Member will be calculated by multiplying the Pro Rata Ratio by each Settlement Class Member's Damages.

## VI. Distribution of Payments to Members of the Settlement Classes

43. Payments of each Settlement Class Members' pro rata portion of the Distributable Settlement Amount will be made within 90 days after the Final Judgment. Settlement Class Members for whom the Settlement Administrator does not have an email address will automatically be issued physical checks. Within 45 days after Final Judgment, each Settlement Class Member for whom the Settlement

---

[2] Each of these amounts (WCTL Baseline Valuation, Total Tax Settlement Amount, and Condition Adjustment) are maintained by Progressive in its records. *See* ECF No. 59-5 at Exs. 6–7. This formulation tracks the damages calculations explained by plaintiffs' statistical expert Dr. Michelle Lacey in her expert reports. *See id.*

Administrator has an email address will be emailed a link they can follow to choose whether to receive their recovery electronically—through, e.g., Venmo, PayPal, or ACH transfer—or by check.[3] This link will remain active for 30 days. At the end of that period, any Settlement Class Member who did not elect to receive their recovery via an electronic payment option will be issued a check. To be clear, every Settlement Class Member will receive a recovery unless they submit a valid exclusion—either by check (if no selection is made) or by electronic payment (if that option is selected).

44. Checks that are not cashed within 90 days of issuance will be redistributed on a pro rata[4] basis to all Settlement Class Members who either cashed their initial checks or received electronic payments during the initial distribution. The Settlement Administrator will continue to make distributions to Settlement Class Members who either received their distribution electronically or who cashed the check sent in the prior distribution until Settlement Class Members receiving further distribution by check would receive less than $5.00 or a further distribution would otherwise not be feasible. Once either event occurs, the remaining funds will

---

[3] This process is designed to encourage a higher rate of electronic payments, which cost less than issuing physical checks and will result in higher payouts by lowering the Administration Costs.

[4] To determine the pro rata distribution in each subsequent distribution, the Settlement Administrator will, after first deducting any necessary settlement-administration expenses from such uncashed-check funds, re-run the calculations used in the initial distribution, using the modified Distributable Settlement Amount for only those Settlement Class Members who will receive the distribution.

be distributed on a pro rata basis to Settlement Class Members who received their payments *electronically*, thus depleting the Settlement Fund and ensuring all Settlement Funds directly benefit Settlement Class Members. The distribution plan is designed to deplete itself solely through payments to Settlement Class members. Settlement Agreement at ¶ 10.b.[5]

## VII. Roles and Qualifications of Class Counsel and the Settlement Class Representatives and Requests for Attorneys' Fees, Litigation Expenses, and Service Awards

45. As noted above, in its Class Certification Order and subsequent orders, this Court previously appointed Plaintiffs and Class Counsel to, respectively, represent the Classes as class representatives and Class Counsel.

46. For the same reasons previously espoused by this Court in its prior orders, this Court should (i) appoint Plaintiffs Brown and Bost as class representatives, and (ii) appoint Carney Bates & Pulliam, Jacobson Phillips, Normand, Edelsberg Law, Shamis & Gentile, Bailey Glasser, Logan and Dobson, and Irby Law as Class Counsel.

47. The Settlement Agreement provides that, consistent with the common fund doctrine, Class Counsel may file a motion with the Court requesting an award of attorneys' fees and out-of-pocket litigation expenses to compensate them for all

---

[5] In the unlikely event (1) residual funds remain, (2) the Claims Administrator determines it is economically infeasible to continue making subsequent redistributions to Class Members, and (3) Class Counsel agrees with the Claims Administrator's determination, then any residual funds will be paid to Defendants. Settlement Agreement at ¶ 10.c

16

the work already performed in this case, all of the work remaining to be performed in connection with this Settlement, and the risks undertaken in prosecuting this case. Settlement Agreement at ¶ 11.a. Class Counsel's requests for attorneys' fees will not exceed one-third of the Settlement Fund ($14,333,333.00), and their request for litigation expenses will not exceed $380,000.00. The enforceability of the Settlement is not contingent on the Court's approval of Class Counsel's application for an award of attorneys' fees or litigation expenses. The maximum amount Plaintiffs and Class Counsel will request will be communicated in the various Notices provided to Class Members, and the fee petition, once filed, will be posted to the Settlement Website in advance of the deadline to object.

48.  The Settlement Agreement further provides that Plaintiffs may request a service award for each Settlement Class Representative. *Id*. Plaintiffs' requests will not exceed $10,000.00 per Settlement Class Representative or $20,000.00 collectively. These service awards, which amount in the aggregate to less than 0.05% of the Settlement Fund, will be paid out of the Settlement Fund and will compensate Plaintiffs for their time and effort serving as the Settlement Class Representatives through almost three years of litigation and up to the eve of trial. The enforceability of the Settlement is not contingent on this Court's approval of Plaintiffs' requests for service awards.

I declare under penalty of perjury of the laws of the United States that the

foregoing is true and correct to the best of my knowledge.

Executed on this 14th day of February 2025, in Little Rock, Arkansas.

                                  */s/ Hank Bates*
                                   Hank Bates